IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EDWARD WATTERS, DEAN GUNDERSON, STEVEN FARNWORTH, MATTHEW ALEXANDER NEWIRTH, individuals, and OCCUPY BOISE, an Idaho unincorporated nonprofit association<br><br>        Plaintiffs,<br><br>  v.<br><br>C.L. (BUTCH) OTTER, in his official capacity as the Governor of the State of Idaho, TERESA LUNA, in her official capacity of the Director of the Idaho Department of Administration, and COL. G. JERRY RUSSELL, in his official capacity as the Director of the Idaho State Police,<br><br>        Defendants. | Case No. 1:12-CV-76-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Occupy Boise's motion for injunctive relief. The Court heard oral argument on the motion on February 24, 2012, and took the motion under advisement. For the reasons explained below, the Court will grant the motion, to the extent it seeks to enjoin the state from removing the symbolic tent city erected by Occupy Boise, but deny the motion, to the extent it seeks to enjoin the occupants from camping, sleeping or storing camping-related personal property at the site.

# SUMMARY

Occupy Boise's motion for injunction comes before the Court – as most injunction motions do – on a rushed schedule with expedited briefing. Hasty decisions are rarely wise decisions, and the law recognizes that fact: Preliminary injunctions are issued on a showing of a "likelihood" of success; there is no final resolution of any issue. The preliminary injunction lasts only until the Court can hold an evidentiary hearing and have the benefit of the considered arguments of counsel. Accordingly, the Court's findings here are not final and are subject to change after an evidentiary hearing.

Occupy Boise's tent city is a political protest of income inequality. As such, it is expressive conduct protected by the First Amendment. The State has the authority to regulate expressive conduct and can require reasonable time and place restrictions that are content neutral. But once a State law, or the State's enforcement of that law, targets certain speech for restriction because of its content – especially when the target is political speech in a public forum – the law is presumptively unconstitutional. When the restriction is content-based, the State bears an "extraordinarily heavy burden" of showing that the law or its enforcement is the least restrictive means to further a compelling State interest.

Here, there is evidence that the State's enforcement of the recently passed Idaho law banning camping on state grounds targeted Occupy Boise's expressive conduct protected by the First Amendment. The State's attorney in oral argument before this Court interpreted the law to permit a symbolic tent city that did not feature overnight

**Memorandum Decision & Order - 2**

sleeping.  This interpretation clearly comports with the language of the statute, which only prohibits "sleeping" and "camping" on state grounds and does not purport to ban the maintenance of a symbolic tent city which could be staffed 24 hours a day and 7 days a week.  Yet Governor Otter's letter announcing his signing of the legislation appears to require the removal of all tents, and that appears to be how the State Police are interpreting the law.  Such action is simply not authorized by the statute.  Because the reach of the State's enforcement may exceed the grasp of the statute, this creates the appearance that the State is stretching to suppress the core political message of Occupy Boise – its tents – as presented in a public forum.

These circumstances render the State's enforcement policy of removing Occupy Boise's tents presumptively invalid under the First Amendment. It is unlikely that the State can show that its enforcement policy is the least restrictive means to further a compelling state interest.  Unlike the circumstances in *Clark v. Community for Creative Non- Violence,* 468 U.S. 288 (1984), where the Supreme Court approved a ban on overnight sleeping that allowed the maintenance of a symbolic tent city, the State's enforcement policy here would ban such a symbolic display.  As such, it fails to use the least restrictive means.

Under *Clark*, however, the State's ban on overnight sleeping is proper, as is the ban on personal belongings related to camping, along with cooking and fire building materials.  Accordingly, those aspects of the ban will not be enjoined by the Court.

For all of these reasons, the Court will issue a preliminary injunction enjoining the

Memorandum Decision & Order - 3

State from removing Occupy Boise's tents. Occupy Boise can staff the site around the clock, but the ban on overnight sleeping will not be enjoined. Moreover, the ban on personal belongings related to camping, cooking and fire building shall also not be enjoined. The Court directs the State to delay until March 2, 2012, the seizure of any personal belongings at the encampment to give all parties a chance to read, understand and comply with this decision. The injunction will remain in place until the Court can hold an evidentiary hearing.

## LITIGATION BACKGROUND

As America slid into recession, income inequality rose. In protest, the Occupy Wall Street movement took over Zuccotti Park in New York's Wall Street financial district. That event spawned many local Occupy movements, including Occupy Boise.

In October of 2011, Occupy Boise formed "as an egalitarian non-violent, non-partisan movement in solidarity with Occupy Together and Occupy Wall Street with the mission of building community among the 99% to address the problems cause by the greed and corruption of the 1%." *See Amended Complaint (Dkt. No. 8)* at ¶ 20. On November 5, 2011, they began erecting a tent city on the grounds of the old Ada County Courthouse, a location across the street from the Idaho Statehouse where the Idaho Legislature meets and Governor Otter has his office.

There are about 25 tents in the encampment, and many of the members sleep overnight there. The Amended Complaint alleges that the site contains private property worth about $10,000. *Id*. at ¶ 33. The tent city is in an area of high visibility, and its

**Memorandum Decision & Order - 4**

presence generated a considerable amount of discussion, both at the site and in the media.

On January 18, 2012, a member of the Idaho House, Scott Bedke, sponsored a bill that would prohibit "camping" on state land, including the site of the Occupy Boise tent city. It would also authorize the State to "remove any unauthorized personal property" and consider it as "litter . . . [to] be disposed of . . . ." *See Idaho Code § 67-1613.* The bill contained an emergency clause declaring that an "emergency exist[ed]" and providing that it would go into "full force and effect on and after its passage and approval." The Amended Complaint alleges that when asked about the bill, Representative Bedke told the Associated Press that "the right place for people to exercise free speech is on the Capitol steps," not via a "tent city.' *See Amended Complaint* at ¶ 35.

The bill was signed into law by Governor Otter on February 21, 2012. On the same day, Governor Otter sent a letter to the Speaker of the Idaho House informing him of the signing and stating that "I will be communicating with the leadership and attorney from 'Occupy Boise' to let them know that I have received and signed the bill, and provide that they have a deadline of 5 pm on Monday February 27, 2012 to vacate the impacted state properties." *See Exhibit 1 (Dkt. No. 9-1).*

With regard to the enforcement of the statute and Governor Otter's edict that Occupy Boise "vacate" the premises, Idaho State Police Officer Sheldon Kelley filed his Declaration stating that the newly-passed statute "would require Idaho State Police to clear the Capital Mall of any camp or camping equipment." *See Kelley Declaration (Dkt. No. 15)* at ¶ 5. This would apparently involve removal of the tents as well as the eviction

of the Occupy Boise members. *Id*. at ¶ 7. It is somewhat unclear whether the protest signs would be removed given Officer Kelley's explanation that "[t]he only intent that the Idaho State Police has is to remove any evidence of camping on Capital Mall property, and not to remove, as Mr. Gunderson states, any sign of political protest." *Id*. at ¶ 12.

In any event, it appears that with regard to the enforcement of Idaho Code § 16-1613, the Governor and the State Police intend to oust Occupy Boise from the site entirely by removing the tents and belongings, and evicting the protestors. Whether such a step is justified by the statute requires a review of its language. Idaho Code § 67-1613 provides:

> CAPITOL MALL AND OTHER STATE PROPERTY AND FACILITIES – CAMPING PROHIBITED. No person shall camp on or in any state-owned or leased property or facility including, but not limited to, the capitol mall, except those that are designated as a recreational camping ground, area or facility. The provisions of this section shall not apply or affect policies, rules, statutes or leases on endowment lands, department of parks and recreation lands or department of fish and game lands. For the purposes of this section, the term "camp" or "camping" means to use as a temporary or permanent place of dwelling, lodging or living accommodation, and which indicia of camping may include, but are not limited to, storing personal belongings or for sleeping, carrying on cooking activities, laying out bedding or making any fire. Any person who violates the provision of this section shall be guilty of an infraction. State agency personnel or contractors may remove any authorized personal property used to camp or while camping in violation of the provisions of this section. Personal property removed pursuant to this section shall be considered litter and shall be disposed of by persons tasked with enforcing this section. Such authorized persons seizing or disposing of such property shall be immune from legal liability for the seizing and disposing of such property.

Idaho Code § 67-1613A provides:

> DISPOSITION OF PROPERTY. Any property remaining after issuance of a citation or any property left unattended shall be held by the agency or its agent

**Memorandum Decision & Order - 6**

removing the property in a secure location for a period of not less than ninety (90) days. Notice shall be posted and remain at the nearest reasonable location to the place of removal with the agency's or agent's contact information for the ninety (90) day period. If property is not claimed within the ninety (90) day period, the property shall be deemed abandoned and the agency shall have the right to dispose of the property. A reasonable storage fee as determined by the agency may be assessed at the time an owner claims the property. The individual claiming the property shall produce identification and shall sign a release form providing his or her name and contact information and swearing that the property belongs to the claiming party. If the provisions of this section are complied with, the state of Idaho, its agents, employees and contractors shall be immune from legal liability for the administration of this section.

The legislative history shows that the Statehouse, the Capitol Mall, and other state-owned and leased grounds "function as the vibrant core of Idaho State Government for Idaho citizens and, as such, require unobstructed grounds and convenient access to ensure the health and safety of all citizens including touring visitors and school children . . . ." *See* Idaho House Bill No. 404, 61st Legis., 2d Reg. Sess. 2012, § 1. The Legislature also found that the State "should always strive to maintain the highest aesthetic standards for the grounds of the Capitol Mall" and other state-owned grounds. *Id.*

The language of Idaho Code § 67-1613 applies only to the overnight sleeping that has occurred at the Occupy Boise encampment for the last 3 months. However, as discussed above, the State of Idaho apparently intends to require that Occupy Boise remove its tents and vacate the site.

## ANALYSIS

### Legal Standards

To obtain injunctive relief, Occupy Boise must show that (1) it is likely to succeed

on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor and (4) an injunction is in the public interest. See *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). The Court will determine first whether Occupy Boise is likely to show that its First Amendment rights have been violated. This requires the Court to (1) assess whether the conduct or speech at issue is protected by the First Amendment, (2) identify the nature of the forum in order to determine the extent to which the government may limit the conduct or speech, and then (3) assess whether the justifications for restricting the conduct or speech satisfy the requisite standard. *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 797 (1985).

**First Element – Protected Speech**

With regard to the first element, the Supreme Court when confronted with the issue, assumed without deciding that sleeping in a tent in a park opposite the White House to protest the treatment of the homeless was protected speech. *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293 (1984). More recently, at least four district judges have held that the Occupy movement's tent cities and overnight camping are protected speech under the First Amendment. *Occupy Columbia v Haley,* 2011 WL 6318587 (D.S.C. Dec. 16, 2011); *Freeman v. Morris*, 2011 WL 6139216 at *6 (D.Me. Dec. 12, 2011); *Occupy Minneapolis v. County of Hennepin*, 2011 WL 5878359 at *4 (D.Minn., Nov.23, 2011); *Occupy Ft. Myers v. City of Ft. Myers*, 2011 WL 5554034 at *5 (M.D.Fla., Nov.15, 2011). The Court agrees with the analysis of these decisions and

finds it likely that Occupy Boise will succeed in showing that its tent city and overnight camping constitute expressive conduct that is protected by the First Amendment.

**Second Element – The Forum**

The second element requires analysis of the forum where the speech takes place. Here, Occupy Boise's tent city is located on the grounds surrounding the old Ada County Courthouse, across the street from the Idaho Statehouse. This public open space is highly visible and physically close to the seat of State Government, making it a natural forum for political protests. As such, it is likely that Occupy Boise will be able to show that its expressive conduct is taking place in a "traditional public forum" that has "achieved a special status in our law; the government must bear an extraordinarily heavy burden to regulate speech in such locales." *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1022 (9th Cir. 2009) (quoting *NAACP v. City of Richmond*, 743 F.2d 1346, 1355 (9th Cir.1984)).

**Third Element – Whether State's Justifications Satisfy Requisite Standard**

The Court turns next to the third element, assessing whether the State's justifications for banning camping satisfy the requisite standard. The applicable standard turns on whether the tent city and overnight camping are expressive conduct: "The government generally has a freer hand in restricting expressive conduct than it has in restricting the written or spoken word." *Texas v. Johnson*, 491 U.S. 397, 406 (1989). But even here, the government may not "proscribe particular conduct *because* it has expressive elements." *Id*. (emphasis in original). It is the government's purpose that

Memorandum Decision & Order - 9

controls. *See Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989). "[A] content-based restriction on political speech in a public forum . . . must be subjected to the most exacting scrutiny." *Long Beach*, 574 F.3d at 1024 (quoting *Boos v. Barry*, 485 U.S. 312, 321 (1988). Content-based regulations are presumptively unconstitutional. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992). Content-based exemptions may pass constitutional muster only if they are the least restrictive means to further a compelling interest. *See Hoyle v City of Oakland*, 653 F.3d 835, 853 (9th Cir. 2011).

**Content-Based Enforcement**

Thus, the Court must determine first whether it is likely that Occupy Boise can show that the threatened action under the statute is content-based. The State argues that there is nothing in the wording of the statutes that specifically targets the Occupy Boise protest based on the content of its political speech. That is true. However, content-based enforcement is just as pernicious as content-based wording. *See Hoyle*, 653 F.3d at 853 (holding that city's enforcement of ordinance was based on content of speech and therefore presumptively invalid). Here there is evidence to support a finding of content-based enforcement. One reasonable interpretation of Idaho Code § 67-1613 is that it would permit erection of a symbolic tent city that did not feature overnight sleeping. Indeed, at oral argument, the State's counsel interpreted the statute in this very manner, arguing that it is the campers, not the tents, that frustrate the State's stated goals of maintaining aesthetics and providing unobstructed grounds.

But Governor Otter's edict, and the stated intention of the State Police, is to

Memorandum Decision & Order - 10

remove Occupy Boise entirely – tents and all.  In other words, the State's enforcement will remove tents on the basis of a statute that their own attorney says would allow Occupy Boise to maintain a symbolic tent city.

This creates a number of problems for the State.  First, it is not clear what legal basis the State is relying on to remove the tents.  The statute does not authorize such action.  Second, for purposes of the First Amendment, the enforcement appears content-based because its reach exceeds the grasp of the statute.  This creates the appearance that the State is stretching to shut down a political message – a tent city – presented in a public forum.

Accordingly, it is likely Occupy Boise can show that the State's enforcement policy – that Idaho Code § 16-1613 bans even a symbolic tent city without overnight sleeping – is presumptively unconstitutional, and it is unlikely the State can meet its "extraordinarily heavy burden" of showing that it is the least restrictive means of serving a compelling State interest.  *Hoye*, 653 F.3d at 853.  One need not look far for less restrictive means.  For example, the permit in *Clark* banned overnight sleeping but permitted a symbolic tent city, and it passed constitutional muster.  *Clark*, 468 U.S. at 292.  While the State is rightly concerned about a long-term encampment damaging the grounds and foreclosing use by other groups, these concerns could have been satisfied with simple time and place restrictions that would restrict damaging activity.

Given this, it is likely that the State will not be able to satisfy its "extraordinarily heavy burden" of showing that its enforcement policy is the least restrictive alternative to

advance a "compelling" State interest. Laws subject to strict scrutiny "almost always violate the First Amendment." *Al Haramain Islamic Foundation, Inc. v. U.S. Dept. of Treasury*, 660 F.3d 1019, 1051 (9th Cir. 2011).

**Content-Neutral Enforcement**

Given the hasty nature of this injunction proceeding, it may be that the Court has misunderstood the State's enforcement policy. If the State is in fact willing to allow a symbolic tent city, the State's enforcement policy becomes more content-neutral as it aligns with the interpretation of the statute offered by its own attorney. Because that may be the case, the Court examines Occupy Boise's likelihood of success assuming the law and the State's enforcement policy are content-neutral. With this assumption, the case looks very much like *Clark*. And the closer the facts in this case get to the facts in *Clark*, the weaker Occupy Boise's case becomes.

Even if the State enforces the statute according to its terms, and does not attempt to remove the symbolic tent city, the Court must still consider Occupy Boise's further claim that the ban on overnight sleeping violates their First Amendment rights. The act of sleeping in the tents conveys a message of personal commitment and sacrifice to the political cause that is not conveyed by the tent city alone. Political messages gain power by virtue of personal commitment and sacrifice. And while sleeping isolated from context is perhaps the least expressive activity imaginable, it becomes imbued with great meaning as used by Occupy Boise. The Court therefore disagrees with Justice Scalia that sleeping can never be expressive conduct, *Community for Creative Non–Violence v. Watt*,

Memorandum Decision & Order - 12

703 F.2d 586 (D.C.Cir.1983) (Scalia, J., dissenting), rev'd, *Clark,* 468 U.S. at 292. Instead, the Court finds it likely that Occupy Boise will prevail on its argument that sleeping, in the context here, is expressive conduct protected by the First Amendment. *See Occupy Fort Myers v. City of Fort Meyers*, 2011 WL 5554034 at *5 (M.D.Fla. Nov.15, 2011).

Nevertheless, *Clark* held that overnight sleeping could be banned so long as the tent city remained. Here, the Court has enjoined removal of the tents, and so the tent city will remain – at least for now. Under *Clark*, the State has the right to ban overnight sleeping as a reasonable time and place restriction. Accordingly, the Court will deny Occupy Boise's motion to the extent it seeks to enjoin the ban on overnight camping.

The regulations upheld in *Clark*, like the statutes here, banned cooking, making fires, and storing personal belongings related to camping. As in *Clark*, the State here has the right to ban those things and so Occupy Boise's motion will be denied to the extent it seeks to enjoin the State from banning those matters. The State Police do intend, however, to seize these items on Monday February 27, 2012, the same day this decision is issued. While Occupy Boise has been on notice for some time that their personal belongings could be seized, it is only fair now to give them until the end of the week – March 2, 2012 – to remove their personal belongings related to camping, along with any cooking or fire building materials, and the Court will so direct the State. This should make moot the dispute over the seizure, storage, and disposition of personal belongings related to camping because it will ensure that no seizure occurs in the first place.

**Memorandum Decision & Order - 13**

**Further Injunction Requirements**

Turning to the second requirement set forth in the *Winter* test for injunctive relief, the Court must determine if Occupy Boise is likely to suffer irreparable harm if no injunction is issued to stop the removal of tents. The loss of First Amendment freedoms, for even minimal periods of time, "unquestionably constitutes irreparable injury," especially where a plaintiff seeks to engage in political speech. *Farris v. Seabrook*, 2012 WL 149486 (9th Cir. January 19, 2012). Accordingly, the Court finds this requirement satisfied.

Finally, the Court finds that the equities weigh in favor of Occupy Boise and the public interest demands injunctive relief. There is no evidence of any health or safety concerns from a symbolic tent city, and no evidence that Occupy Boise is keeping other groups from using the area as a protest site. Moreover, the Court's injunction will only be in effect until the Court can hold an evidentiary hearing and rule at that time.

**Conclusion**

For all of these reasons, the Court will grant in part and deny in part Occupy Boise's motion. The Court will grant the motion to the extent it seeks to enjoin the State from enforcing Idaho Code § 67-1613 by removing tents from the Occupy Boise encampment. Occupy Boise may staff the site around the clock, but the Court will deny the request to enjoin the ban on overnight sleeping, the storage of personal belongings related to camping, making fires, and cooking. Finally, the Court will direct the State to delay seizing any personal belongings related to camping, and cooking and fire building

materials, until March 2, 2012.

# ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for injunctive relief (docket no. 4) is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED, that the defendants, as well as their officers, agents, employees, attorneys, and all persons who are in active concert or participation with them, are prohibited from enforcing I.C. §§ 67-1613-1613A to remove tents from the Occupy Boise encampment at the old Ada County Courthouse or to prevent Occupy Boise from staffing the tent city around the clock.

IT IS FURTHER ORDERED, that the motion is denied to the extent it seeks to enjoin the ban on overnight sleeping, the storage of personal belongings related to camping, making fires, and cooking.

IT IS FURTHER ORDERED, that the State is directed to delay seizing any personal belongings related to camping, and cooking and fire building materials, until March 2, 2012.

IT IS FURTHER ORDERED, that the bond requirement of Rule 65 is deemed waived at this time.

IT IS FURTHER ORDERED, that counsel contact the Court's Staff (Dave Metcalf 208-334-9025) to set up a date and time for an evidentiary hearing on Occupy Boise's motion for injunctive relief.

**Memorandum Decision & Order - 15**

IT IS FURTHER ORDERED, that this injunction shall be in full force and effect until the Court rules after the evidentiary hearing referred to above.

DATED: **February 26, 2012**



_____
Honorable B. Lynn Winmill
Chief U. S. District Judge