**BRYAN K. WALKER, ESQ.**
**OBSIDIAN LAW, PLLC**
Idaho State Bar no. 5155
walkeresq.bk@gmail.com
2712 West Jefferson Street
Boise, Idaho 83702
Telephone:    (208) 275-0090
Facsimile:    (208) 275-0095

**Richard Alan Eppink**
**AMERICAN CIVIL LIBERTIES UNION**
**OF IDAHO FOUNDATION**
Idaho State Bar no. 7503
reppink@acluidaho.org
P.O. Box 1897
Boise, Idaho  83701
(208) 344-9750, ext. 206
(208) 344-7201 (fax)

*Attorneys for the Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| EDWARD WATTERS *et al.*, | CASE NO.  1:12-cv-00076-BLW |
| Plaintiffs, | |
| vs. | **RESPONSE TO THE DEFENDANTS'** |
| | **MOTION FOR PARTIAL SUMMARY** |
| C.L. (BUTCH) OTTER, in his official capacity | **JUDGMENT FILED ON DEC. 12, 2012** |
| as the Governor of the State of Idaho, *et al.*, | |
| Defendants. | |

## I.  INTRODUCTION

Given a full opportunity to show that their plans for enforcing 2012 House Bill 404

("H0404") against Occupy Boise were not unconstitutional, and having had months to assemble

evidence that H0404 is necessary to advance some substantial government interest, the

defendants ("State") have come forward with nothing.  Instead, the record now shows that the

RESPONSE TO THE DEFENDANTS' MOTION FOR PARTIAL S.J. – Page 1

State was indeed planning to evict Occupy Boise, "tents and all,"[1] and that it was only this Court's preliminary injunction that prevented the State from stretching H0404 to oust the protest completely. The record also now shows that H0404 does not actually advance the interests the State claims it does, and that the seizures authorized by I.C. § 67-1613A could not comport with *Fourth*, *Fifth*, and *Fourteenth Amendment* protections. The State is not entitled to judgment.

## II. STANDARDS FOR DECISION

A movant is entitled to summary judgment only if it is entitled to judgment as a matter of law and there is no genuine issue of material fact. F.R.C.P. 56(a). Where the moving party is also the party who will bear the burden of proof at trial, such as the State in an action challenging government restrictions on *First Amendment* activity, the movant must establish its proof with its opening motion. *See UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1995); *United States v. Playboy Entm't Group*, 529 U.S. 803, 816 (2000) ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions."). Thus, at summary judgment, when "the *moving party* bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992).

A main purpose of summary judgment proceedings "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). If there is no genuine dispute that facts essential to the movant's case have not been proved, this Court can grant summary judgment to the non-moving party. *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir. Cal. 1982). This Court must view the evidence in the light most favorable to the non-

---

[1] Mem. Decision and Order 10–11 (Dkt. 17).

moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). It must believe the

non-movants' testimony. *Leslie v. Group ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).

### III. ARGUMENT[2]

**A.**    **Since *Clark*, the Supreme Court has Clarified that the Government Must have Evidence—More than Mere Conjecture—that *First Amendment* Restrictions Actually Advance State Interests.**

The State has the burden of proving that H0404 advances government interests, and it

must do so affirmatively. *See Cincinnati v. Discovery Network*, 507 U.S. 410, 416 (1993). Laws

that may be valid in one case, where the government has proved facts showing how restrictions

advance its interests, may be invalid in view of a different record. *Id.* at 428 ("[W]e do not reach

the question whether, given certain facts and under certain circumstances, a community might be

able to justify differential treatment of commercial and noncommercial newsracks. We simply

hold that on this record Cincinnati has failed to make such a showing.").

Thus "mere conjecture" is not enough to satisfy the State's *First Amendment* burdens,

and instead the State must affirmatively "demonstrate that the recited harms are real." *Nixon v.*

*Shrink Mo. Gov't PAC*, 528 U.S. 377, 392 (2000). This Court's obligation is "to exercise

independent judgment when First Amendment rights are implicated" and "to assure that, in

formulating its judgments, [the State] has drawn reasonable inferences *based on substantial*

*evidence*." *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 666 (1994) (emphasis added). In other

words, the State's "*evidence* must fairly support its rationale . . . ." *City of L.A. v. Alameda*

*Books*, 535 U.S. 425, 438 (2002) (emphasis added). In particular, in determining whether a law

---

[2] The plaintiffs, in their submissions during the preliminary injunction phase of this case, have already briefed the issues that the State's summary judgment motion raises. They incorporate into this brief the arguments and authorities in those briefs (Dkts. 2-1, 4-2, 13, 25, 42), and will try to use this opportunity to respond specifically to the State's latest arguments.

regulating speech is narrowly tailored to serve a substantial government interest, this Court must

actually "examine evidence" to see "whether the [State] can demonstrate a connection between

the speech regulated" and "the secondary effects that motivated the adoption" of the regulation.

*Id.* at 441. The State's obligation to affirmatively proffer evidence to demonstrate that

connection is an "evidentiary requirement." *Id.* at 439. The State must do more than "assert[]

interests [that] are important in the abstract" or "posit the existence of the disease sought to be

cured." *Turner Broad. Sys.*, 512 U.S. at 664.

All of these cases, decided after *Clark v. Community for Creative Non-Violence*,

articulate the government's evidentiary burden in *First Amendment* cases—a question the Court

was struggling with at the time of the *Clark* decision. *Compare Clark*, 468 U.S. 288, 311 (1984)

(Marshall, J., dissenting) (noting that the majority decision was not "supported by a factual

showing that evinces a real, as opposed to a merely speculative, problem") *with Members of City

Council v. Taxpayers for Vincent*, 466 U.S. 789, 828 (1984) (Brennan, J., dissenting) ("a court

should require the government to provide tangible proof of the legitimacy and substantiality of

its aesthetic objective"). The struggle has since resolved in favor of evidentiary review when

determining whether the government's justifications in *First Amendment* cases have factual

support. *See Citizens United v. FEC*, ___ U.S. ___, ___, 130 S. Ct. 876, 910–911 (2010)

(comparing legislative justifications with underlying evidence to detect any "asymmetr[y]").[3]

_____

[3] Although the cases first clearly establishing the government's evidentiary burden involved
commercial speech, the Supreme Court has repeatedly made clear that the government has an
even higher burden to surmount when regulating political speech. *See, e.g., Cent. Hudson Gas &
Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 562–563 (1980) ("The  Constitution therefore
accords a lesser protection to commercial speech than to other constitutionally guaranteed
expression."); *Meyer v. Grant*, 486 U.S. 414, 420 (1988) ("unlike [a prior case], which involved
only commercial speech, this case involves 'core political speech'"). Accordingly, the Court has

RESPONSE TO THE DEFENDANTS' MOTION FOR PARTIAL S.J. – Page 4

**B.**  **The State Has Offered No Evidence that H0404 Actually Advances Substantial Government Interests.**

Now having had the chance, after months of discovery, to present its proof that camping or sleeping on the Capitol Mall actually advances some governmental interest, the State has offered no evidence at all.  To satisfy its "extraordinarily heavy burden" of showing that a restriction on speech and assembly in a traditional public forum is narrowly tailored to advance a substantial government interest, *Long Beach*, 574 F.3d at 1022, the State "must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree."  *Edenfield v. Fane*, 507 U.S. 761, 770–771 (1993).  The *First Amendment* requires the State to show "tangible evidence" that the restriction is "necessary" to advance its interests.  *Edwards v. City of Coeur d'Alene*, 262 F.3d 856, 863 (9th Cir. 2001).

**1.**  **Occupy Boise's Camping and Sleeping are Powerful Forms of Expression.**

Sleeping and camping can be expressive activity protected by the Speech Clause of the *First Amendment* if they are "inten[ded] to convey a particularized message" and "the likelihood [is] great that the message would be understood to those who viewed it."  *Spence v. Washington*, 418 U.S. 405, 410–411 (1974).  The State urges this Court to reject that long-established test.[4]

Neither the Supreme Court nor the Ninth Circuit, however, has adopted the views of Justices Burger or Scalia on this issue.  Instead, federal courts have recognized again and again that the government cannot prohibit conduct that is expressive in some contexts, even if the same conduct would be "nothing more than bizarre behavior" in other contexts.  *Spence*, 418 U.S. at

---

employed a similar, searching evidentiary analysis when reviewing restrictions on political speech.  *See Citizens United*, ___ U.S. at ___, 130 S. Ct. at 910–911.

[4]  Mem. in Supp. of Mot. for Partial Summ. J. 8 (Dkt. 82-1) [hereinafter State's Br.] (quoting dissenting and concurring opinions of Burger, C.J., and Scalia, J., from three different decisions).

409.  "[D]istinguish[ing] between expressive and non-expressive conduct involving precisely the same activity"[5] is not contrary to Speech Clause analysis, as the State suggests, but instead a necessary distinction under the *First Amendment*—and one that H0404's total ban does not allow for.  Otherwise, governments could apply jaywalking laws to street marches, a form of expressive conduct to which the *First Amendment* "applies with particular force."  *Seattle Affiliate v. City of Seattle*, 550 F.3d 788, 797 (9th Cir. 2008) (quoting *United States v. Baugh*, 187 F.3d 1037, 1042 (9th Cir. 1999)).  Otherwise, the State could oust protesters staging a silent sit-in by using general statutes "deliberately and purposefully applied" only to evict the demonstrators.  *Brown v. Louisiana*, 383 U.S. 131, 142 (1966) (plurality opinion).

Instead, the Supreme Court has explicitly instructed government to examine context to "distinguish between expressive and non-expressive conduct,"[6] holding that the "context in which a symbol is used for purposes of expression is important, for the context may give meaning to the symbol." *Spence*, 418 U.S. at 410.  Occupy Boise intended both its camp and those sleeping at it to convey particularized messages: that the people's disquiet would not go away, but instead would persevere despite inclement conditions throughout the winter, especially where what the President called "the biggest financial crisis since the Great Depression"[7] had left many with no other place to go but tent cities.[8]  Those messages were more than merely "likel[y]" to be understood by those who viewed them, *Spence*, 418 U.S. at 410–411, they were

---

[5]  State's Br. at 8 (Dkt. 82-1).

[6]  *Id.*

[7] Michael A. Memoli, *Obama: Occupy Wall Street protests show Americans' frustration*, L.A. TIMES, Oct. 6, 2011.

[8] Decl. Neiwirth ¶¶ 9, 10 (Dkt. 2-2); Decl. Farnworth ¶¶ 6–7 (Dkt. 4-4).

unmistakable.[9]  *See also Kaahumanu v. Hawaii*, 682 F.3d 789, 798 (9th Cir. 2012) ("A narrow, succinctly articulable message is not required." (internal quotation marks omitted)).  In the surrounding circumstances of Occupy Wall Street camps ongoing throughout the United States and across the globe,[10] the likelihood that those who viewed the camp would understand the messages was at an apex.[11]  This Court understood them, noting that Occupy Boise's camping "conveys a message of personal commitment and sacrifice to the political cause that is not conveyed by the tent city alone" and that the act of sleeping "becomes imbued with great meaning as used by Occupy Boise."[12]  In fact, Occupy Boise's "protest by silent and reproachful presence," *Brown*, 383 U.S. at 142, actually reached legislators, including the Senate Majority Leader, who agreed during a committee hearing that the Occupy Boise camp "is speech."[13]

Moreover, the plaintiffs also challenge H0404 under the Assembly Clause of the *First Amendment*, a challenge that this Court has so far not expressly addressed.  Speech and assembly are distinct in the text of the *First Amendment*.  They were distinct parts of the plaintiffs' activities as well.  Assemblies, unlike some forms of speech, by their nature alone "interfere[]

---

[9] Decl. Neiwirth ¶ 2 (Dkt. 2-2); *see* David Weigel, *Poll: Occupy Wall Street Starts Off With Favorable Ratings*, SLATE, Oct. 5, 2011, http://slate.me/nTWfOC; *Idaho House drafting measure to boot Occupy Boise*, IDAHO STATE JOURNAL, Jan. 17, 2012, http://bit.ly/wGkJ7B;

[10]  Decl. Neiwirth ¶ 2 (Dkt. 2-2); Arun Gupta, *Fear and occupation in red America*, SALON, Dec. 8, 2011, http://bit.ly/u2Bw6N; Eduardo M. Peñalver, *Occupy's new tactic has a powerful past*, CNN.com, Dec. 16, 2011, http://bit.ly/wjABBI.

[11] Decl. Neiwirth ¶ 8 (Dkt. 2-2).

[12] Mem. Decision and Order 12 (Dkt. 17); *cf. id.* at 8 (citing *Occupy Columbia v Haley*, 2011 WL 6318587 (D.S.C. Dec. 16, 2011); *Freeman v. Morris*, 2011 WL 6139216 at *6 (D.Me. Dec. 12, 2011); *Occupy Minneapolis v. County of Hennepin*, 2011 WL 5878359 at *4 (D.Minn., Nov.23, 2011); *Occupy Ft. Myers v. City of Ft. Myers*, 2011 WL 5554034 at *5 (M.D.Fla., Nov.15, 2011).

[13] Decl. Blurton ¶ 3 and ex. B; 3d Decl. Eppink ex. F (remarks of Sen. Davis, internal page 4).

with the rights of others to use [public property]."[14]  In *Clark*, sleeping and camping were mostly "facilitative" of the expressive conduct involved there.  468 U.S. at 296.  With Occupy Boise, sleeping and camping are both the primary expressive conduct and a core component of the ongoing assembly.[15]  The Assembly Clause provides protections distinct from the freedom of speech. *See Johnston v. Koppes*, 850 F.2d 594, 596 (9th Cir. 1988); *De Jonge v. Oregon*, 299 U.S. 353, 364 (1937); *Chandler v. McMinnville School Dist.*, 978 F.2d 524, 531 (9th Cir. 1992) (deciding speech claim but remanding for consideration of assembly claim). Where a legislature meets for months at a time,[16] meaningful assembly must include the right to continue for extended periods—regardless whether an assembly also qualifies as speech.

2.    **The Public Spaces near the Capitol are Archetypes of Traditional Public Forums.**

The State concedes that H0404 restricts the kinds of *First Amendment* forums to which this Court must apply "strict scrutiny."  *Pleasant Grove City v. Summum*, 555 U.S. 460, 470 (2009); *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1022 (9th Cir. Cal. 2009) (holding that *First Amendment* protections are at their strongest in these forums and that government must overcome an "extraordinarily heavy burden" to regulate speech in them). It argues, however, that the Statehouse and Capitol Mall grounds are only "designated" public

---

[14]  State's Br. at 8 (Dkt. 82-1) (quoting *Clark*, 468 U.S. at 300 (Burger, C.J., concurring)).  The plaintiffs do not concede Chief Justice Burger's implication that assembly and expression are not among the purposes for which traditional and designated public forums were created.  *See Lederman v. United States*, 291 F.3d 36, 42 (D.C. Cir. 2002) ("the primary purpose for which the Capitol was designed—legislating—is entirely consistent with the existence of all parades, assemblages, or processions which may take place on the grounds").

[15]  2d Decl. Gunderson ¶ 2; Decl. Farnworth ¶ 5–6 (Dkt. 4-4).

[16]  2d Decl. Eppink ex. I (Dkt. 84-28) (listing meeting dates of recent Idaho legislatures).

forums that it could close to speech and assembly at its discretion.[17]  Yet, these grounds are public open spaces[18] to which the State allows free public access[19] and have been open for decades.[20]  *See Wright v. Incline Village General Improvement Dist.*, 665 F.3d 1128, 1135 (9th Cir. 2011) (listing factors for identifying traditional public forums). The Supreme Court has acknowledged that *First Amendment* activity "at the site of the State Government" is its "most pristine and classic form." *Edwards v. South Carolina*, 372 U.S. 229, 235 (1963).

### 3.    The State Has Not Met its Heavy, Evidentiary Burden to Regulate Those Forums.

The State's only evidence supporting its motion for summary judgment has to do with the dimensions, use, and acquisition of grounds and buildings on the Capitol Mall.[21]  None of that evidence tends to prove that any of the concerns recited in H0404 are "real" or that the statute will "in fact alleviate them to a material degree." *Edenfield*, 507 U.S. at 770–771.  There are only three interests the State claims H0404 is meant to serve—consistent use guidelines, aesthetic interests, and preventing obstructions[22]—and none qualify as substantial,[23] especially

---

[17] State's Br. at 9 (Dkt. 82-1).

[18] Decl. Howard ex. C (Dkt. 84-14, 84-15); Decl. Blurton ex. C; Decl. Neiwirth ¶¶ 4, 6 (Dkt. 2-2); 2d Decl. Neiwirth ¶¶ 5, 6 (Dkt. 84-5); Decl. Perry ¶ 2 (Dkt. 84-9); *see* Dep. Johnston (2d Excerpt) 98:18–102:24 (discussing public use of the grounds); Dep. Rice 61:2 – 64:9 (Dkt. 84-17) (same); 2d Decl. Eppink exs. N, O (Dkt. 84-33, 84-34) (same).

[19] Decl. Eppink ex. B; *ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1101 (9th Cir. 2003).

[20] Decl. Eppink ex. B.  The grounds of the Capitol Annex were formerly the public plaza surrounding the former Ada County Courthouse.  Decl. Mason ¶ 2 (Dkt. 82-4); Stmt. of Materials Facts Not in Dispute ¶ 6 (Dkt. 83).

[21] *See* 2d Decl. Johnston (Dkt. 82-3); Decl. Mason (Dkt. 82-4).

[22] H0404, ch. 17, § 1, 2012 Idaho Sess. Laws 35 (filed at 3d Decl. Eppink ex. A).

[23] The plaintiffs have already explained why these interests do not qualify as substantial, as well as why H0404 does not advance them.  (Dkt. 2-1, 4-2, 13, 25, 42).  The plaintiffs incorporate

now in light of the State's lack of proof. *Landmark Communications v. Virginia*, 435 U.S. 829,

843 (1978) ("Deference to a legislative finding cannot limit judicial inquiry when First

Amendment rights are at stake.").  Even if the State's attorneys could engraft additional state

interests onto H0404, as they have tried in the State's brief,[24] their new concerns that camping

might interfere with grounds maintenance or state business are likewise unsupported by any

evidence at all.[25]  The maintenance concerns, which the State urged previously in this case,

turned out to be greatly exaggerated.[26]  As for the State's unsupported claim about disruption of

---

those arguments and authorities into this brief.  In its latest brief, the State only contends that
camping might "potentially" compromise aesthetics.  State's Br. at 13.

[24] The State must be held to the interests stated in H0404 itself.  *See Edenfield*, 507 U.S. at 768.

[25] The State also contends in its brief that "[n]o decisional authority supports the proposition that
the narrowly-tailored element forces legislative bodies to fine-tune" a speech or assembly
restriction to particular locations.  State's Br. at 13 (Dkt. 82-1).  The Ninth Circuit, however,
recently held that courts may not "simply assume" that a *First Amendment* restriction justified in
one particular location is also justified in others.  *Comite de Jornaleros v. City of Redondo
Beach*, 657 F.3d 936, 949 (9th Cir. 2011).  Despite that the city there had offered evidence of
problems in certain places, that it provided "no evidence" for other places meant that the
restriction was "geographically overinclusive."  *Id.*  Here, the State has not offered evidence of
problems in *any* location.

[26] As explained in an earlier brief (Dkt. 87-1), the State told this Court that it would take "about
two weeks" just to assess the damage and $2,500 to $15,000 for to repair it.  Decl. Johnston ¶¶
13, 16 (Dkt. 24-4).  In fact, however, the State assessed the damage in "[l]ess than an hour," and
the entire repair cost only $175 for supplies and $282 for labor.  Dep. Garcia 34:7–35:10 (Dkt.
84-18); 2d Decl. Eppink ex. L (Dkt. 84-31); Dep. Garcia 40:11–41:25 (Dkt. 84-18) (noting that
cost of labor was $12 per hour).  It was mostly a "pretty easy operation,' the Landscape
Superintendent testified.  Dep. Garcia at 38:13–25 (Dkt. 84-18). A former State Facilities
Manager observes that the State "tried to ensure that Occupy Boise's use of the Capitol Annex
was as big of a grounds maintenance crisis as possible."  Decl. Despot ¶ 13 (Dkt. 84-3).  He
describes the impact on the grounds from Occupy Boise's tent city as "so miniscule" that it
couldn't have materially affected the State's budget or workload.  *Id.* at ¶¶ 7–10.

RESPONSE TO THE DEFENDANTS' MOTION FOR PARTIAL S.J. – Page 10

state business,[27] even if the Capitol grounds were only a limited public forum, the *First Amendment* would still so "tightly constrain[] the government's power" that "speakers may be removed only if they are *actually* disruptive." *Norse v. City of Santa Cruz*, 629 F.3d 966, 979 (9th Cir. 2010) (en banc) (Kozinski, J., concurring); *see Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011) ("only a real, not imagined disruption might outweigh the expressive interests"). Without "concrete evidence that use for expressive activity would significantly disrupt the principal uses," a restriction should not withstand *First Amendment* scrutiny. *ACLU of Nevada*, 333 F.3d at 1101–1102 (citing *Lederman*, 291 F.3d at 42 (D.C. Cir. 2002) ("the primary purpose for which the Capitol was designed—legislating—is entirely consistent with the existence of all parades, assemblages, or processions which may take place on the grounds")).

The State, in other words, has had its opportunity to show this Court that its situation is like the National Park Service's in *Clark* and that the Capitol Mall "would be more exposed to harm without [H0404] than with it." 468 U.S. at 297. It has offered no such evidence. Indeed, the State Landscape Superintendent admits that he could not detect any difference between the impact of symbolic tents and those where people actually slept or camped.[28] The State has not met its burden to prove that H0404 is narrowly tailored to advance any substantial state interest in a "direct and effective way". *Edenfield*, 507 U.S. at 773 (internal quotation marks omitted).

**4.    H0404 is Too Vague for Even the Idaho State Police Captain in Charge to Determine Whether it Applies to Occupy Boise.**

A statute is too vague if it allows for "arbitrary and discriminatory enforcement" or "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it

---

[27] State's Br. at 13.

[28] Dep. Garcia 37:10–39:25 (Dkt. 84-18); *cf.* Decl. Neiwirth ¶¶ 7, 14 (Dkt. 2-2).

prohibits." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Vagueness is objectionable because it fails to provide fair warning, delegates discretion to lower level officials for *ad hoc* resolution, and inhibits the exercise of *First Amendment* freedoms. *Cal. Teachers Ass'n v. Bd. of Educ.*, 271 F.3d 1141, 1150 (9th Cir. 2001). Accordingly, vagueness review "should be applied with special exactitude where a statute might impinge on basic First Amendment freedoms." *Sharkey's Inc. v. City Waukesha*, 265 F. Supp. 2d 984, 990 (E.D. Wis. 2003) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972)).

The testimony of the Idaho State Police Captain in command of the entire district in which the Capitol Mall sits[29] best illustrates why H0404 fails under the "heightened vagueness scrutiny" applicable when *First Amendment* activity is involved. When presented with photographs of the Occupy Boise encampment itself, ranging from signs to large gathering tents to personal camping tents, the Captain could not determine whether *any* of them showed "indicia of camping"[30] or "property left unattended"[31] within the scope of H0404.[32]

This is not a case, either, like *Bell v. City of Boise*, where officer discretion is limited by additional instructions. 834 F. Supp. 2d 1103, 1111, 1114 (D. Idaho 2011). In *Bell*, a written Special Order clarified ordinance language. *Id.* at 1111. This Court determined the ordinance was not too vague only after analyzing it as "[c]ombined with the Boise Police Special Order . . .

---

[29] Dep. Richardson 15:4–19:17. Captain Richardson is also the Idaho State Police officer who spent the most time working on Occupy Boise matters during the time that enforcement of H0404 was anticipated. *Id.* at 54:4–8.

[30] I.C. § 67-1613.

[31] I.C. § 67-1613A.

[32] Dep. Richardson ex. 85 and 101:12–108:5; Decl. Blurton ¶ 6 (stating that all photos in Exhibit 85 to Captain Richardson's deposition are photos of the Occupy Boise protest camp).

." *Id.* at 1114.   As there was no *First Amendment* issue in *Bell*, the Court also never applied the heightened vagueness scrutiny applicable here.  *See id.* at 1115.

Instead, in this case, those in charge of enforcing H0404 are unable to determine whether *First Amendment* camping is proscribed by the statute or not.  There is no Special Order or any other authoritative instructions to cabin officers' discretion in enforcing H0404.[33]  The statute is too vague[34] to survive the "more stringent" *First Amendment* vagueness standard, at least in this context, and the State's motion should be denied.  *Cal. Teachers Ass'n*, 271 F.3d at 1150.

**5.    Only this Court's Injunction Has Prevented the State from Stretching H0404 into an Excuse for Evicting Occupy Boise.**

This Court already determined that "it is likely that the State will not be able to satisfy its extraordinarily heavy burden" of justifying its enforcement policy for H0404.[35]  The Court then reserved the possibility that it had "misunderstood the State's enforcement policy."[36]  It did not.

The Court's earlier decision was based on Governor Otter's "edict" and the State Police's intention to remove Occupy Boise, "tents and all."[37]  Discovery has revealed additional evidence corroborating that this was the State's enforcement plan.  When asked what the State intended to communicate with notices delivered to Occupy Boise prior to this Court's injunction, instructing the protesters to "remove themselves and all personal belongings," the State's Facilities Services

---

[33] Dep. Richardson 100:2–101:5; Dep. Johnston (2d Excerpt) 168:14–169:1; *cf.* Dep. Rice 40:15–19 (Dkt. 84-17).

[34] The plaintiffs' earlier briefing (Dkt. 4-2) outlines specific vagueness problems with H0404.

[35] Mem. Decision and Order 11 (Dkt. 17) (internal quotation marks omitted).

[36] *Id.* at 12.

[37] *Id.* at 10–11.  The Otter edict is in the record at Decl. Withroe ex. A (Dkt. 9-1).  The State Police statements are at Decl. Kelly ¶¶ 6–7 (Dkt. 15).

Manager confirmed what the State meant: "You have to go."[38] Captain Richardson of the Idaho

State Police confirmed that until this Court issued its injunction, the State's "Operation De-

Occupy Boise"[39] planned to remove the tents, including the large tents used for assemblies rather

than camping.[40]  Verbal police orders were developed that would have closed the entire protest

area and forced protesters to leave their belongings and be cited or arrested across the street.[41]

       The State targeted Occupy Boise specifically and were chomping at the bit to evict the

group and all of the tents.  The Director of the Department of Administration testified before a

legislative committee that her Department had searched Idaho laws, rules, and policies to find

anything that would allow it to keep Occupy Boise's protest camp off of state property and,

finding nothing, therefore supported H0404.[42]  In fact, the Idaho State Police had been planning

to evict Occupy Boise long before H0404 had been passed.[43]  Plans for enforcing the then-non-

existent law were in discussion before the legislature even convened—something that the State

Police Captain in charge cannot remember ever happening in his 29-year career.[44]

---

[38] Dep. Johnston (2d Excerpt) 163:18–164:14 and ex. 20.

[39] Dep. Richardson 51:21–25; Exs. to Order re: Privilege Documents (Dkt. 72-1 through 72-6); 3d Decl. Eppink ex. C.

[40] Dep. Richardson 96:13–25; *cf.* Decl. Neiwirth ¶¶ 7, 14 (Dkt. 2-2).

[41] Dep. Richardson 81:4–83:7 and exs. 78, 79.

[42] Decl. Blurton ¶ 2 and ex. A.

[43] Dep. Richardson 54:4–56:20.

[44] Dep. Richardson 54:18–55:11; 10:12–16.  What's more, the State Police unsuccessfully lobbied for camping on state property to be a misdemeanor, so that they could arrest Occupy Boise members.  *Id.* at 46:9–49:21 and exs. 68, 69.  But the State was so eager to evict Occupy Boise that when H0404 passed containing only an infraction penalty, the State made plans to exploit the statutory trespassing crime so that it could arrest Occupy Boise protesters, even though its prior review of state laws had found no specific laws prevented the tent city protest.

The only reason that the State abandoned its plan to remove Occupy Boise, "tents and all," was because of this Court's preliminary injunction. It was not until February 28, 2012, the day after the injunction became available, that the State Police "scrubbed" its "Operation De-Occupy Boise" plan.[45] The reason why "Operation De-Occupy Boise" could not continue as planned after the injunction, according to Captain Richardson, was because this Court ruled that "the tents could remain there as part of the protest . . . ."[46]

Moreover, this case also presents a different case than *Clark*, where that anti-camping law was "not being applied because of disagreement with the message presented." *Clark*, 468 U.S. at 295. After this Court's injunction, the State allowed others to camp and sleep on the Capitol grounds—directly adjacent to the main entrance to the Statehouse.[47]

As this Court has already held, "content-based enforcement is just as pernicious as content-based wording."[48] Only a preliminary injunction prevented content-based enforcement of H0404. The Court should make its injunction permanent and deny the State's motion.

---

*Id.* at 35:4 – 36:25, 28:19–30:23 and exs. 39, 66; 3d Decl. Eppink ex. C at AGO-002251; *see also* Dep. Richardson 44:19–45:4; Dep. Rice (2d Excerpt) 93:21–94:5.

[45] Decl. Eppink ex. C at AGO-002245, AGO-002248; *see also id.* (Feb. 22, 2012, email describing an "operation to *remove the Occupy Boise encampment*" (emphasis added)); *id.* at exs. D and E (stating that "the judicial ruling will likely now put off any LE operation . . . .").

[46] Dep. Richardson 77:16–79:4.

[47] 2d Decl. Perry ¶¶ 2–3 and ex. A; Decl. Perry ¶¶ 4, 7–8 (Dkt. 84-9).

[48] Mem. Decision and Order 10 (Dkt. 17) (citing *Hoye v. City of Oakland*, 653 F.3d 835, 853 (9th Cir. 2011)).

**C.    The Property Takings that H0404 Authorizes are Also Constitutionally Unsound.**

**1.    Due Process Requires at Least Some Opportunity for a Hearing, Yet H0404 Provides None Whatsoever.**

The State concedes that the Due Process Clause applies to personal property, but then glosses over the fact that H0404 offers no opportunity for a hearing—whether before or after seizure—at all.  Due process, however, requires *both* notice and an opportunity for a hearing. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("The fundamental requisite of due process of law is the opportunity to be heard.").  Usually, the hearing must be available before the seizure; only in "extraordinary situations" can it be postponed until after the taking.  *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993).

Even in the case that the State relies on, *Miranda v. City of Cornelius*, the property owners had an opportunity to request a "hearing to contest the impoundment." 429 F.3d 858, 868 (9th Cir. 2005).[49]  Under H0404, however, property owners are relegated to merely reclaiming their property after paying for storage costs, regardless whether the seizure was proper in the first place.[50]  The government must "give the property owner a chance to argue against the taking," *Clement v. City of Glendale*, 518 F.3d 1090, 1093 (9th Cir. 2008), yet none of H0404's provisions provide that chance.  *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1033 (9th Cir. 2012) (reh'g denied Nov. 30, 2012) (holding that failure to provide "any meaningful opportunity to be heard before or after" property seizure violated *Fourteenth Amendment*).[51]

---

[49] The *Miranda* court also held that pre-seizure hearings may be required, even in towing cases, if the *Fourth Amendment* community caretaking exception does not apply. 429 F.3d at 867.

[50] I.C. § 67-1613A.

[51] A pre-deprivation hearing is not necessarily unreasonable in this case.  Captain Richardson of the State Police testified that waiting two days to remove property the State wants to seize under I.C. § 67-1613A would not necessarily be unreasonable.  Dep. Richardson 70:4–21.  *See Fuentes*

Even had the State provided the "strong justification" necessary to justify post-deprivation notice[52] and hearing, *Clement*, 518 F.3d at 1094, H0404 cannot comply with the requirements of the Due Process Clause until it provides an opportunity for a hearing.  *Draper v. Coombs*, 792 F.2d 915, 923 (9th Cir. 1986); *Styppman v. City of San Francisco*, 557 F.2d 1338, 1343–1344 (9th Cir. 1977) (holding towing ordinance unconstitutional where "there is no provision that would mitigate the loss [of temporary use and of assessed storage fees] if the detention is unlawful or fraudulent").  Here, had Occupy Boise not obtained a preliminary injunction, the State would have seized property not even within H0404's scope.[53]  Not only that, but the State was planning to use unbounded officer discretion to deem some property "trash" and dispose of it on the spot, without notice or hearing of any kind.[54]  Neither the face of nor the enforcement plan for H0404 are constitutional under the *Fourteenth Amendment*.

**2.    The Text of H0404 Itself Establishes that I.C. § 67-1613A Authorizes Taking for Public Use.**

The State suggests that *Fifth Amendment* protections cannot apply to I.C. § 67-1613A because it does not authorize a permanent taking.  Yet, as the Supreme Court recently made clear, "if government action would qualify as a taking when permanently continued, temporary actions of the same character may also qualify as a taking."  *Arkansas Game and Fish Comm'n*

---

*v. Shevin*, 407 U.S. 67, 92 n.22 (1972) (noting that additional time and expense of pre-deprivation hearings does not mean they should not be required).

[52] Because I.C. § 67-1613A authorizes the State to take "property left unattended" without first issuing an I.C. § 67-1613 citation, it allows officers to take property without pre-deprivation notice.  *See* Dep. Richardson 104:2–13.

[53] That "Operation De-Occupy Boise" would have evicted Occupy Boise "tents and all" is explained and supported in Part III.B.5, above.

[54] Dep. Richardson 76:20–77:15 and ex. 24.

*v. United States*, ___ U.S. ___, ___, 133 S. Ct. 511, 515, 519 (2012) (holding that a temporary

takings claim may be maintained where the government takes temporary possession of property).

Instead, the State's real argument seems to be that H0404 does not authorize taking

property for "public use."[55]  But public use is a broad concept that affords state legislatures

"broad latitude in determining what public needs justify the use of the takings power."  *Kelo v.*

*City of New London*, 545 U.S. 469, 483 (2005).  The test is whether the "exercise of the eminent

domain power is rationally related to a conceivable public purpose" *Hawaii Housing Auth. v.*

*Midkiff*, 467 U.S. 229, 241 (1984). The "Legislative Intent" section of H0404[56] solidly

establishes that the Idaho legislature intended I.C. § 67-1613A to be related to what it purported

to be public purposes.  The plaintiffs do agree that H0404 does not actually advance any public

purposes.  In the alternative, however, the State owes the plaintiffs just compensation and due

process before it can take the plaintiffs' property.  The statute provides the opposite: requiring

the plaintiffs to pay the State.  The Court should deny the State's motion.

**3.     The State Cannot Meet its Burden to Show that Seizing Camping Tents while
        Leaving Symbolic Tents Standing has any Nexus with Community Caretaking.**

The State does not argue that *Fourth Amendment* protection against unreasonable

seizures does not apply to H0404 (which was the issue in *Lavan*, 693 F.3d at 1027).  The

question here, therefore, is whether the seizures that H0404 authorizes fall within one of the few

exceptions to *Fourth Amendment* protections.

Seizure without a warrant is presumed unreasonable. *Miranda*, 429 F.3d at 862 (quoting

*United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001)).  The State has the burden to show

that a seizure falls within one of the limited exceptions to the warrant requirement.  *Miranda*,

---

[55] *See* State's Br. at 18.

[56] H0404, ch. 17, § 1, 2012 Idaho Sess. Laws 35 (filed at 3d Decl. Eppink ex. A).

429 F.3d at 862.  The only exception that the State points to is the "community caretaking" exception.[57]  That exception, however, requires the State to prove some nexus between the seizure and the "safety of the general public who might be endangered . . . ."  *Cady v. Dombrowski*, 413 U.S. 433, 447 (1973); *United States v. Cervantes*, 678 F.3d 798, 805 (9th Cir. 2012) (holding that government could not invoke the community caretaking exception where it "presented no evidence" of vulnerability or a safety hazard).  Because H0404 does not prohibit symbolic tent cities and displays of camping equipment for expressive purposes, the State's claims—that the same tents or equipment, in the same place, would "jeopardize public safety" if actually used for camping—ring hollow.  *Miranda*, 429 F.3d at 864.  Plus, in this case the State planned to seize even symbolic tents and equipment that H0404 could not ban.[58]  The State's seizure authority in I.C. § 67-1613A thus falls outside any exception and its plan to use it against Occupy Boise would violate the *Fourth Amendment*.  The Court must deny the State's motion.

**D.**    **Pre-Enforcement, As-Applied Challenges to the Entirety of H0404 are Especially Important because of the Statute's Impact on *First Amendment* Activities.**

Despite the State's contention that there are "no First Amendment considerations . . . involved"[59] with the parts of H0404 that allow the government to seize protesters' belongings, the plaintiffs do challenge those provisions on *First Amendment* grounds, among others.  The entirety of H0404, including both I.C § 67-1613 and § 67-1613A, operates together to not only totally ban some forms of expressive activity and protected assemblies, but also to chill speech and assembly by placing participants' property at risk of seizure and destruction.  Pre-enforcement challenges to statutes like this one are permitted, and they are especially important

---

[57] State's Br. at 16 (Dkt. 82-1).

[58] *See* Part III.B.5, above.

[59] Memo. in Supp. Of Mot. for Partial Summ. J. 6 (Dkt. 82-1).

because constitutional liberties are at stake. *See Wolfson v. Brammer*, 616 F.3d 1045, 1059–

1060 (9th Cir. 2010) ("The Supreme Court has repeatedly pointed out the necessity of allowing

pre-enforcement challenges to avoid the chilling of speech."); *Bland v. Fessler*, 88 F.3d 729,

736–737 (9th Cir. 1996) ("That one should not have to risk prosecution to challenge a statute is

especially true in First Amendment cases . . . ." ).  A plaintiff "does not have to await the

consummation of threatened injury to obtain preventive relief," *Babbitt v. United Farm Workers*,

442 U.S. 289, 298 (1979), even to bring an as-applied challenge, *Gonzales v. Carhart*, 550 U.S.

124, 167 (2007).  *See also Daien v. Ysursa*, 711 F. Supp. 2d 1215, 1228 (D. Idaho 2010).

Here, the State tries to argue that I.C. § 67-1613A "has never been applied to Occupy

Boise's activity or more generally"[60] despite that it was planning for months to enforce that

section specifically against Occupy Boise,[61] and scrapped those plans only because this Court

enjoined them.[62]  The plaintiffs intend to continue with similar protests and are fearful of arrest,

citation, and losing their property.[63]  This Court should enjoin both the unconstitutional aspects

of H0404 and the unconstitutional reach of the State's enforcement plans as well.

## IV.  CONCLUSION

The Court should deny the State's motion and permanently enjoin enforcement of H0404.

DATED this 13th day of January, 2013, at Boise, Idaho.

/s/ Richard Alan Eppink

Attorneys for Plaintiffs

---

[60]  Memo. in Supp. Of Mot. For Partial Summ. J. 6 (Dkt. 82-1).

[61]  Dep. Richardson 54:4–56:20; Decl. Blurton ¶ 2 and ex. A.

[62]  *Supra* notes 40–41 and accompanying text.

[63]  2d Decl. Watters 2–3; 3d Decl. Neiwirth 2–3; 2d Decl. Gunderson 3.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 13th day of January, 2013, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Clay Smith            clay.smith@ag.idaho.gov
Carl J. Withroe        carl.withroe@ag.idaho.gov
Michael S. Gilmore    mike.gilmore@ag.idaho.gov
OFFICE OF THE ATTORNEY GENERAL OF IDAHO

Thomas C. Perry        tom.perry@gov.idaho.gov
OFFICE OF THE GOVERNOR OF IDAHO
*Attorneys for Defendants*

Bryan K. Walker        walkeresq.bk@gmail.com
OBSIDIAN LAW, PLLC
*Attorney for Plaintiffs*

DATED this 13th day of January, 2013.

/s/ Richard Alan Eppink