**BRYAN K. WALKER, ESQ.**
**OBSIDIAN LAW, PLLC**
Idaho State Bar no. 5155
walkeresq.bk@gmail.com
2503 West State Street
Boise, Idaho 83702
Telephone: (208) 275-0090
Facsimile: (208) 275-0095

**Richard Alan Eppink**
**AMERICAN CIVIL LIBERTIES UNION**
**OF IDAHO FOUNDATION**
Idaho State Bar no. 7503
reppink@acluidaho.org
P.O. Box 1897
Boise, Idaho 83701
(208) 344-9750, ext. 206
(208) 344-7201 (fax)

*Attorneys for the Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF IDAHO**

EDWARD WATTERS *et al.*,

Plaintiffs,

vs.

C.L. (BUTCH) OTTER, in his official capacity as the Governor of the State of Idaho, *et al.*,

Defendants.

CASE NO. 1:12-cv-00076-BLW

**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I. ARGUMENT

### A. Rules That Single out Speech and Protest for Restriction are What Facial *First Amendment* Challenges were Made for.

Some facial *First Amendment* challenges, as the State points out, are special. But the faults in the Rules are of the very kinds that are *per se* constitutionally invalid. *See Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130, 133 n.10 (1992) (holding that if a restriction

on speech "delegates overly broad discretion to the decisionmaker," then "every application creates an impermissible risk of suppression of ideas"); *Gaudiya Vaishnava Soc. v. San Francisco*, 952 F.2d 1059, 1065 (9th Cir. 1991) ("Time, place and manner restrictions are valid *only if* they are content-neutral, narrowly tailored to serve a significant government interest, and retain ample alternative channels of communication." (emphasis added)). This is especially so here because the Rules are "specifically addressed to speech or conduct necessarily associated with speech (such as picketing or demonstrating[1])." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).

The State's reliance on *Washington State Grange* to contend that facial challenges are disfavored forgets that, in that case involving associational rights in primary elections, narrow tailoring scrutiny was not even applicable. 552 U.S. 442, 451, 458 (2008). It also forgets that the Court there took pains to distinguish its analysis from that where a "substantial number" of applications are unconstitutional. *Id.* at 449–450 n.6. Under that standard, parties need only "describe the instances of arguable overbreadth of the contested law." *Id.*; *Comite de Jornaleros v. City of Redondo Beach*, 657 F.3d 936, 944, 949 n.7 (9th Cir. 2011) (en banc) ("If the suggested examples fall within the plain language of the statute, the Plaintiffs have met their burden."); *Hoye v. City of Oakland*, 653 F.3d 835, 850 (9th Cir. 2011) ("questions about a general policy are, by their very nature, always hypothetical").[2] Thus, despite the Supreme Court's occasional pronouncements otherwise, facial challenges—especially involving the Speech Clause—are routinely successful. Richard H. Fallon, Jr., *Fact and Fiction about Facial*

---

[1] The Rules are so specifically addressed to this kind of speech that they target it for restriction explicitly. *See* IDAPA 38.04.06.010.07 and IDAPA 38.04.08.010.05 (defining restricted "[e]vent[s]" expressly to include "demonstration[s]" and "protest[s]").

[2] Challenges to certain parts of larger regulatory schemes are not the kind of facial challenges that *Washington State Grange* was about, anyhow. *See Hoye*, 653 F.3d at 857.

*Challenges*, 99 CALIF. L. REV. 915, 937, 941 (2011). Overbreadth challenges are also appropriate because the Rules "unquestionably attach[] sanctions to protected conduct," I.C. § 67-5709(1), and "may inhibit the constitutionally protected speech of third parties." *Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 798, 801 n.19 (1984). And despite the State's contention, it is the government that has the burden—an "extraordinarily heavy burden"—to prove the Rules are constitutional, not the plaintiffs. *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1022 (9th Cir. 2009).

**B. The Rules' Content-Based Distinctions are Yet More Vague under the State's View.**

In arguing that the "recreational use" and "public business" exemptions are not vague, the State demonstrates that it cannot figure out what they cover, either. On the one hand, it argues that "picketers taking a break to have lunch or play cards"[3] may qualify as recreational use, yet a page later it contends that the public use exceptions are "determined in large measure by what [they are] *not*," such as "events." But the definitions of "event" include *any* gathering of two or more people, and the State has no explanation for why two or more people gathering to "have lunch or play cards" qualifies as a public use despite that it is also an "event."

The State goes on to contend that the "public business" exception is mostly intended to protect "the need for ingress to and egress from the Capitol Mall buildings,"[4] despite that such a construction would collapse the exemption into redundancy with the exception for "transit of individuals through the State Facilities."[5] Yet, again, just a few pages later, the State purports another meaning for "public business": one that "explicitly" protects the right to "lobby

[3] State's Opp'n Br. at 7 (Dkt. 94-1).

[4] State's Opp'n Br. at 8 (Dkt. 94-1).

[5] IDAPA 38.04.06.13.a and 38.04.08.10.a.

legislators."[6] Why is a meeting with a legislator about a pending bill on the grounds of the Capitol Annex (obviously a gathering of two or more people) not an "event"? And if it is not, is a protester standing next to that meeting holding a sign about the same pending bill an "exhibit," or instead exempt as "public business"? If a leisurely picnic for 40 is both "brief" and "without consequential impact,"[7] what is not? Rather than answering these questions, the State's arguments muddy them even further. The State's only remaining argument seems to be that because the impact of these vague Rules on speech is not quite as total as that in *Board of Airport Commissioners v. Jews for Jesus, Inc.*, this Court should ignore the vagueness problems. That doesn't mean the Rules are not still vague. This Court should accordingly invalidate them.

**C. The State Does Not Explain How the Hours Restrictions Do Not Single out Speech.**

The State also has no answer for what compelling government interest is advanced by banning even incidental, short-term political speech and assembly while "incidental, short-term recreational use" at the same time is fine.[8] It offers no explanation for how its personnel could determine whether a gathering or sign is "public business" without examining its content. Its argument that the holding, in *Grossman v. City of Portland*, that distinctions like these are "absolutely empty" does not apply here is that the ban in *Grossman* was only a limited ban because a permit was available during park hours. 33 F.3d 1200, 1207 (9th Cir. 1993). The Rules are harsher because no permit is available at all. This Court should declare them invalid.

---

[6] State's Opp'n Br. at 11–12 n.5 (Dkt. 94-1).

[7] State's Oppn' Br. at 7 (Dkt. 94-1).

[8] The only explanation the State has is a conclusory statement, lacking any foundation, that "activity implicating security concerns is disproportionately correlated to hours of darkness." 2d Decl. Rice ¶ 8 (Dkt. 92-2). That evidence is inadmissible. Pls.' F.R.C.P. 56(c) Objections 2 [appended]. Even if this Court overrules that objection, the evidence still utterly fails to suggest why it is *First Amendment* activity but not recreational use that must be restricted.

**D. The State Cannot Amend the Plain Text of the Duration Restriction by its Brief.**

Although the State now says that "[n]othing precludes an Event's organizers from moving their activities from [one] facility to another upon completion of the seven-day period,"[9] the Rules clearly say the opposite: a 7-day event or exhibit can only return "if the Event or Exhibit *does not use* the State Facilities [or State Capitol Exterior] for twenty-four (24) hours . . . ."[10] The Rules define "State Facilities" and "State Capitol Exterior" to include everything on the grounds.[11] The State's argument itself shows that the durational limits are too broad.

**E. The State Cannot Manufacture "Harm" from Sidewalk Chalk by Citing the Cost of Enforcing Unnecessary Regulations.**

Even though "[n]o reasonable person could think that writing with chalk would damage a sidewalk," the State offers reports of personnel washing away chalk messages to justify its total ban on them. *Mackinney v. Nielsen*, 69 F.3d 1002, 1005 (9th Cir. 1995). Although these reports show, unsurprisingly, that there would be some cost to enforcing the chalking Rules, they do not demonstrate any actual harm from chalking itself. By the State's logic, it would also advance a compelling state interest to ban all forms of assembly altogether, merely because of the time and expense required to have law enforcement disperse crowds. Instead, as to any actual "harm" from chalking, the incident reports themselves state that "[t]here was no visible damage to . . . anything . . . ."[12] The out-of-circuit decision in *Mahoney v. Doe* has a fundamental flaw: it is based on *Taxpayers for Vincent*, which had to do with *nonpublic* forums, where restrictions on

[9] State's Opp'n Br. at 10 (Dkt. 94-1).

[10] IDAPA 38.04.06.201 and 38.04.08.201 (emphasis added).

[11] IDAPA 38.04.06.010.16 and 38.04.08.010.13.

[12] 3d Decl. Johnston ex. E (Dkt. 92-1 at 53).

speech are subject only to minimal scrutiny. 466 U.S. at 814–815. The State offers no reason why the rule that groups clean up after themselves[13] is not adequate to advance its interests.

**F. The Rules Let Maintenance Cancel Protests without Requiring Explanation.**

The State complains that the risk that the discretion to conduct maintenance at anytime could be used to cancel protests is only theoretical. It is just such theoretical possibilities that the doctrine against excessive discretion in *First Amendment* regulation is meant to eliminate. *Long Beach*, 574 F.3d at 1044. As the State points out, that discretion includes a wildcard, "other causes"[14] clause that leaves discretion unlimited and, therefore, invalid.

**G. "State Events" Allow the State to Discriminate in Favor of Whatever it Wants.**

The State tries to explain away the preference it gave to the Fallen Soldiers Memorial ceremony, but its argument is circular. Its logic is that the ceremony must have been "initiated and controlled" by the State because the Rules otherwise would have prohibited the ceremony to cover up parts of the Memorial; thus, it argues, because parts of the Memorial were in fact covered up as part of the ceremony, the ceremony was State initiated and controlled. The same circular logic, of course, could apply to any activity that breaks the Rules: "because we allowed that event to break the Rules, and only *we* can allow an event to break the Rules, the event was State initiated and controlled." This is precisely the problem here: nothing guides or constrains a State entity in selecting which events or exhibits it will "initiate[] and control[]."[15]

The email chain that the State submitted with its opposing brief illustrates this. A Deputy Attorney General first points out that only with State agency sponsorship could the group "have

---

[13] IDAPA 38.04.06.317.01 and 38.04.08.317.01.

[14] IDAPA 38.04.06.302.04 and 38.04.08.302.01.e.

[15] IDAPA 38.04.06.010.15 and 38.04.08.010.14.

a priority of use and allow banners or coverings (to hide the names until revealed);" the Facilities Manager then lobbies the agency director for State sponsorship; and then Director Luna responds simply by saying "Admin can sponsor… absolutely."[16] Nothing in the Rules or elsewhere instructs Director Luna, or any other State entity, about what events may receive State sponsorship and thus apparently become State "initiated and controlled."[17] Had Occupy Boise notified the Department of Administration that it would be covering up the Memorial (or intending to break other rules), nothing would prevent Director Luna from denying State sponsorship merely because she disfavored the group's message. Nothing would have guided her decision, either, and nothing would require her to make a record for judicial review: the only record might be an email stating "Admin can sponsor… absolutely" for one group and "Admin will not sponsor… absolutely not" for another.[18] The Rules are therefore invalid.

### H. Nothing Prevents the State from Waiving or Imposing Costs to Discriminate, Either.

Likewise, no matter how they're construed, the costs rule lacks any standards or written decision requirements. Rules, like IDAPA 38.04.08.400.07, that grant discretion (1) "must

---

[16] 3d Decl. Johnston ex. D (Dkt. 92-1 at 32); *see also generally id.*

[17] The State offers no factual support for its contention that the ceremony was "controlled" by the Department of Administration. To the contrary, it was the event organizers who were sending instructions to the State, not the other way around. *Id.* (Dkt. 92-1 at 20, 21) (informing State personnel that panels "will be removed" and that "we'll need to coordinate" sprinkler shutoff, flag access, power sources, and parking); *cf. id.* (Dkt. 92-1 at 42). The event was not "initiated" by the State, by any stretch of that term's meaning. *Id.* (Dkt. 92-1 at 20, 32, 36) (notifying the State that "[w]e will conduct another ceremony" *two weeks* before Department of Administration sponsorship or the Governor's and First Lady's attendance was confirmed).

[18] The plaintiffs do not want to shut down ceremonies at the Fallen Soldiers Memorial. Rather, the plaintiffs see no justification for the barriers that the Rules impose for groups like the organizers of the 9/11 ceremony. If the State's interests can so easily be waived and maintenance so easily postponed, the same should be available to all, regardless of content.

contain narrow, objective, and definite standards," (2) "must require the official to provide [an] explanation for his decision," and (3) "must be sufficient to "render [the official's decision] subject to effective judicial review." *Long Beach*, 574 F.3d at 1025. Moreover, "whether to charge at all" is also "left to the whim of the administrator" under the Rules. *Forsyth County*, 505 U.S. at 133; IDAPA 38.04.08.400.07 ("organizations *may*[19] be charged" (emphasis added)). Thus, the Rules do not "prevent[] the official from encouraging some views and discouraging others through the arbitrary application of fees." *Forsyth County*, 505 U.S. at 133. That determining the amount to assess requires content analysis has already been decided: "[i]n order to assess accurately the cost of security for parade participants, the administrator must necessarily examine the content of the message that is conveyed." *Id.* at 134.

**I. Permits Can be Denied, Conditioned, or Revoked For Unjustifiable Reasons, Too.**

The State contends that it is "patently wrong" to say that permits may be denied without explanation.[20] However, the Rules expressly allow the State to deny an application by utterly ignoring it: "The failure of the Department to issue a Permit within (2) State Business Days of the submission of a complete application shall be deemed a denial of the application."[21] Not only does denying an application by ignoring it violate the Constitution, *Long Beach*, 574 F.3d at 1025, but, as the State recognizes, it violates Idaho statute as well, I.C. § 67-5248.

---

[19] In Idaho law, as in federal law, "the use of the permissive word 'may' denotes the exercise of discretion." *Selkirk Seed Co. v. Forney*, 134 Idaho 98, 104 (2000); *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994) ("The word 'may' clearly connotes discretion.").

[20] State's Opp'n Br. at 24 n.7 (Dkt. 94-1).

[21] IDAPA 38.04.08.401.01. The State cites IDAPA 38.04.08.403.01.a for its contention that denials must be in writing, yet in that same subsection, at IDAPA 38.04.08.403.01.c, the Rules clearly anticipate, again, that the State may instead completely ignore an application under IDAPA 38.04.08.40[1].01 (although the reference is actually to "Subsection 402.01 of these rules," that subsection does not exist and was probably meant to be to IDAPA 38.04.08.401.01).

Nothing whatsoever in the Rules about revocation,[22] charging of costs,[23] or imposition of conditions[24] suggests that a written decision is required. Although the State wishes that it could "presume[]" written decisions would be issued,[25] such a "presumption that [an] official 'will act in good faith and adhere to standards absent from the ordinance's face . . . is the very presumption that the doctrine forbidding unbridled discretion disallows.'" *Long Beach*, 574 F.3d at 1044 (quoting *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 770 (1988)).

**J. The Indemnity and Liability Provisions are the Broadest of All Those Cited.**

Among the indemnity and liability provisions in *Long Beach*, *Kaahumanu v. Hawaii*, and the Rules, those in the Rules are the broadest of them all. Those in *Kaahumanu* applied only to acts and omissions "*on the part of* the permittee." 682 F.3d 789, 810 (9th Cir. 2012) (emphasis added). Those in *Long Beach* applied to liability "*caused* by the conduct of the event." 574 F.3d at 1039 (emphasis added). Yet those in the Rules extend to harm "*in any way connected* with the use."[26] If the *Long Beach* provisions were invalid, so are the Rules.

**K. If the Permit Scheme Works Like the State Says it Does, there are More Problems.**

For the first time, the State now contends that its permitting scheme imposes "no limitations on the number of permits that will issue for a given period."[27] This does not square with the plain text of the Rules, which gives a permit-holder "priority for use of the area" and

---

[22] IDAPA 38.04.08.402.

[23] IDAPA 38.04.08.400.07.

[24] IDAPA 38.04.08.400.08.

[25] State's Opp'n Br. at 24 n.7 (Dkt. 94-1).

[26] IDAPA 38.04.06.400.03 and 38.04.08.500.03 (emphasis added).

[27] State's Opp'n Br. at 21 (Dkt. 94-1).

limits all others to a blanket "first-come, first used" restriction if an event or exhibit uses just part of the steps.[28] If the Rules do, in fact, allow the State discretion to grant multiple permits for the steps, then there is another excessive discretion problem because nothing provides guidance about when a permit "may be denied"[29] because part of the steps have already been reserved. The point here is not that it might not make sense to reserve exclusive use to very large groups, but rather that the reach of the Rules ensnares small events, and even lone individuals with signs, who could be ousted from the steps because another small group got there first.[30] This is why a reasonable fit between the size of the forum (here, quite large) and the sizes of groups regulated (here, as small as one or two people) is required. *Long Beach*, 574 F.3d at 1034.[31] In this case, the State's new interpretation would allow it to deny a reservation to (and then ticket and evict) three protesters who applied to gather on the steps to protest a dozen people holding a small press conference on a portion of the steps, but at the same time leave a group of three supporters, who spontaneously gather to cheer the announcement, unmolested.[32] The Rules are thus invalid.

## II. CONCLUSION

The Court should grant the plaintiffs' motion.

---

[28] IDAPA 38.04.08.400.01; *cf.* IDAPA 38.04.08.401.02.a (authorizing denial of a permit if another permit has been granted for just "part of the requested location").

[29] IDAPA 38.04.08.401.02.

[30] This problem is compounded because the Rules also completely prohibit standing or sitting on the east, west, and north steps of the Capitol. IDAPA 38.04.08.302.02; *see also Idaho Atheists, Inc., v. Mason*, No. 05-168-S-BLW, slip op. at 7 (D. Idaho May 4, 2005) [appended].

[31] Note 5 of the State's brief (Dkt. 94-1 at 12) suggests that counsel misread the pinpoint citation, on page 14 of the opening brief (Dkt. 87-1), to 574 F.3d at 1034 of the *Long Beach* decision. That citation was, in fact, to *Long Beach* (not to *Food Not Bombs*, as the State thought).

[32] Because the State's arguments about the staking rules and the content-based grounds for denial raise nothing not already addressed in the plaintiffs' opening brief, they are not covered here.

DATED this 31st day of January, 2013, at Boise, Idaho.

AMERICAN CIVIL LIBERTIES UNION
OF IDAHO FOUNDATION

/s/ Richard Alan Eppink

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 31st day of January, 2013, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Clay Smith clay.smith@ag.idaho.gov
Carl J. Withroe carl.withroe@ag.idaho.gov
Michael S. Gilmore mike.gilmore@ag.idaho.gov
OFFICE OF THE ATTORNEY GENERAL OF IDAHO

Thomas C. Perry tom.perry@gov.idaho.gov
OFFICE OF THE GOVERNOR OF IDAHO
*Attorneys for Defendants*

Bryan K. Walker walkeresq.bk@gmail.com
OBSIDIAN LAW, PLLC
*Attorney for Plaintiffs*

DATED this 31st day of January, 2013.

/s/ Richard Alan Eppink