UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EDWARD WATTERS, DEAN GUNDERSON, STEVEN FARNWORTH, MATTHEW ALEXANDER NEWIRTH, individuals, and OCCUPY BOISE, an Idaho unincorporated nonprofit association,<br><br>          Plaintiffs,<br><br>     v.<br><br>C.L. (BUTCH) OTTER, in his official capacity as the Governor of the State of Idaho, TERESA LUNA, in her official capacity of the Director of the Idaho Department of Administration, and COL. G. JERRY RUSSELL, in his official capacity as the Director of the Idaho State Police,<br><br>          Defendants. | Case No. 1:12-cv-00076-BLW<br><br>MEMORANDUM DECISION AND ORDER |

The Court has before it the State's motion for partial summary judgment. The Court heard oral argument on February 26, 2013, and took the motion under advisement. For the reasons set forth below, the Court will grant the State's motion, to the extent it asks the Court to find the state's no-camping statute, Section 67-1613, Idaho Code, is facially constitutional. The Court further finds that section 67-1613A, which governs the

disposition of any "property remaining after issuance of a citation or any property left unattended," is also facially constitutional.[1]

## INTRODUCTION

Occupy Boise's tent city is a political protest of income inequality. As such, it is expressive conduct protected by the First Amendment. The State has the authority to regulate expressive conduct and can require reasonable time and place restrictions that are content neutral.  The no-camping statute at issue in this case, on its face, is a reasonable time, place, and manner restriction .  It is therefore facially constitutional.

If the State enforces a law in a manner that targets certain speech for restriction because of its content – especially when the target is political speech in a public forum – it will be taken to task. When a restriction is content-based, the State bears an "extraordinarily heavy burden" of showing that the law or its enforcement is the least restrictive means to further a compelling State interest.  Here, however, the State ceased its initial enforcement efforts, which appeared to exceed the grasp of the statute, after the Court issued its initial injunction prohibiting the State from forcibly removing Occupy Boise's symbolic tent city; the Court therefore finds no evidence that the State's current

---

[1] Occupy Boise also filed a motion for partial summary judgment challenging the constitutionality of certain temporary administrative rules governing use of the Capitol grounds.  Since filing that motion, the Idaho legislature has enacted new rules.  The parties have agreed to allow Occupy Boise to amend their motion for partial summary judgment to address the changes made to the rules.  Thus, Occupy Boise's original motion for partial summary judgment is moot (Dkt. 84).

effort at enforcing the camping ban has unconstitutionally targeted Occupy Boise's expressive conduct.

With respect § 67-1613A, which governs the disposition of any "property remaining after issuance of a citation or any property left unattended," the Court finds that the procedures it authorizes constitutes neither an unreasonable seizure under the Fourth Amendment nor an unconstitutional taking without just compensation under the Fifth Amendment.  Likewise, the Court finds that section 67-1613A does not violate the Fourteenth Amendment due process requirements.

## BACKGROUND

In November 2011, Occupy Boise, in solidarity with the Occupy Wall Street movement, erected a tent city on the Capitol Annex grounds to protest income inequality. Occupy Boise placed the tent city on a public plaza in direct view of the Idaho Statehouse, the Idaho Supreme Court building, and other nearby government buildings. As part of their protest, Occupy Boise participants camped on the Annex grounds round-the-clock – cooking, eating, and sleeping there.

On February 21, 2012, Governor Otter signed into law a bill banning "camping" on state grounds, including  the site of the Occupy Boise tent city. I.C. § 67-613.  The law also authorizes the State to "remove any unauthorized personal property" and consider it as "litter…[to] be disposed of…" *Id.* Upon signing the bill into law, Governor Otter immediately issued a directive requiring Occupy Boise to remove the symbolic tent city from the Capitol Annex grounds by 5 p.m., on February 27, 2012.  To implement the

Governor's edict, the State Police developed a detailed plan called "Operation De-Occupy Boise" to remove the protesters and their tents, including the large assembly tents not meant for sleeping.

In response, Occupy Boise immediately moved to enjoin enforcement of the no-camping statutes, as well as the Governor's edict directing the occupants to permanently vacate the site. Occupy Boise argued that the new law and the Governor's edict requiring the removal of the symbolic tent city violated its First Amendment rights.

This Court agreed. *February 26, 2012 Memorandum Decision and Order* at 10, Dkt. 17.  It found that the State's enforcement of the law banning camping and requiring immediately removal of the tent city targeted Occupy Boise's expressive conduct protected by the First Amendment. The Court interpreted the law as permitting a symbolic tent city that did not feature overnight "sleeping" or "camping." Yet, Governor Otter's edict required removal of all tents.  Because the reach of the State's proposed enforcement appeared to exceed the grasp of the statute, the Court found that the State was "stretching to suppress the core political message of Occupy Boise–its tents–as presented in a public forum," and these circumstances rendered the State's enforcement policy of removing the tents presumptively invalid under the First Amendment.  The Court therefore concluded it was unlikely that the State could show that its enforcement policy was the least restrictive means to further a compelling state interest.

The Court, however, agreed with the State that the ban on "camping" or "sleeping" was a reasonable time, place, and manner restriction. It also found ban on

personal belongings related to camping, along with cooking and fire building materials was proper.

For all these reasons, the preliminary injunction entered by the Court on February 26, 2012 enjoined the State from removing the tents. The injunction, however, allowed Occupy Boise to staff the site around the clock. The Court ordered the preliminary injunction remain in place until it could hold an evidentiary hearing.

The Court later modified the injunction at the State's request. The modified injunction required Occupy Boise to temporarily vacate the Capitol Annex grounds to allow for repairs and maintenance of the property. The Court's order allowed Occupy Boise to resume its vigil after eight weeks with the caveat that Occupy Boise would have to grant the State unobstructed access to water and mow the lawn at scheduled times.

Now the State seeks summary judgment on Occupy Boise's claims directed to the no-camping statutes. Occupy Boise opposes the motion, renewing its arguments that the no-camping statutes impermissibly restrict their First Amendment rights to expressive activity, assembly, and association on the grounds around Idaho's Capitol building.

## ANALYSIS

**1. First Amendment Framework**

Certain general principles of First Amendment law guide the Court's analysis. The First Amendment prohibits Congress from enacting laws "abridging the freedom of speech, ... or the right of the people peaceably to assemble." U.S. Const. amend. I. The

Supreme Court has extended the protection of the First Amendment to the states. *Edwards v. South Carolina*, 372 U.S. 229, 235 (1963).

The First Amendment affords certain types of speech greater protection. *See, e.g., Nat'l Adver. Co. v. City of Orange*, 861 F.2d 246, 248 (9th Cir. 1988) ("The first amendment affords greater protection to noncommercial than to commercial expression."). Political speech is core First Amendment speech, critical to the functioning of our democratic system. *Carey v. Brown*, 447 U.S. 455, 467 (1980). "[T]he practice of persons sharing common views banding together to achieve a common end is deeply embedded in the American political process." *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 907(1982) (quoting *Citizens Against Rent Control/Coal. for Fair Hous. v. City of Berkeley*, 454 U.S. 290, 294 (1981)). For this reason, the First Amendment applies with particular force to marches and other protest activities. *U.S. v. Baugh*, 187 F.3d 1037, 1042 (9th Cir. 1999)

The Supreme Court also affords different protections to First Amendment activities depending on the location of the activities. To account for these differences, the Court has developed an analysis that examines the location of the speech to determine the level of scrutiny the courts must give to any state-imposed restrictions on that speech. According to this analysis, the restrictions on speech in a traditional public forum are examined under the strictest scrutiny. *United States v. Kokinda*, 497 U.S. 720 (1990). In a public forum, the State may not impose a blanket prohibition on speech, and may enforce a content-based exclusion only if it is narrowly drawn to achieve a compelling

state interest. *A.C.L.U. of Nevada v. City of Las* Vegas, 333 F.3d 1092 (9th Cir. 2003). However, the State may enforce time, place, and manner restrictions that are content-neutral, narrowly tailored to serve a significant government interest, and leave open alternative channels of communication. *Id.*

"When the Government restricts speech or other First Amendment rights, the Government bears the burden of proving the constitutionality of its actions." *United States v. Playboy Entm't Grp., Inc*., 529 U.S. 803, 816 (2000).

## 2. Section 67-1613, Idaho Code

Occupy Boise argues that section 67-1613 is facially unconstitutional. There are two types of facial constitutional challenges. "First, a plaintiff seeking to vindicate his own constitutional rights may argue that an ordinance 'is unconstitutionally vague or ... impermissibly restricts a protected activity.' " *See Santa Monica Food Not Bombs v. City of Santa Monica,* 450 F.3d 1022, 1033 (9th Cir. 2006) (quoting *Foti v. City of Menlo Park,* 146 F.3d 629, 635 (9th Cir. 1998)). "Second, 'an individual whose own speech or expressive conduct may validly be prohibited or sanctioned is permitted to challenge a statute on its face because it also threatens others not before the court.'" *Santa Monica Food Not Bombs,* 450 F.3d at 1033 (quoting *Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 503 (1985)). The Court understands Occupy Boise to be raising the first type of facial challenge.

Section 67-1613 forbids any person from camping "on or in any state-owned or leased property or facility including, but not limited to, the capitol mall, except those that

**MEMORANDUM DECISION AND ORDER - 7**

are designated as a recreational camping ground, area or facility." I.C. § 67-1613.  Under section 67-1613,  "the term 'camp' or "camping' means to use as a temporary or permanent place of dwelling, lodging or living accommodation, and which indicia of camping may include, but are not limited to, storing personal belongings or for sleeping, carrying on cooking activities, laying out bedding or making any fire." *Id.* Persons who violate this provision are guilty of an infraction.  *Id.*

### A. *Occupy Boise's Tent City and Overnight Camping Constitute Expressive Conduct Taking Place in a "Traditional" Public Forum.*

First, the Court reaffirms its finding that Occupy Boise's tent city and overnight camping constitute expressive conduct protected under the First Amendment.  *Watters v. Otter*, 854 F.Supp.2d 823, 828 (D.Idaho February 26, 2012).  In *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293 (1984), the Supreme Court assumed without deciding that sleeping in a tent in a park opposite the White House to protest the treatment of the homeless was protected speech. More recently, other courts have recognized that the Occupy movement's tent cities likely amount to expressive conduct. *See, e.g., Occupy Columbia v. Haley,* 866 F.Supp.2d 545, 557 (D.S.C. 2011) (citing cases).  As noted in its decision on Occupy Boise's motion for a preliminary injunction, the Court agrees with the analysis of these decisions and finds here that Occupy Boise's tent city is expressive conduct.

Second, the Court finds that sleeping, in this context, is also expressive conduct, "The act of sleeping in the tents conveys a message of personal commitment and sacrifice to the political cause that is not conveyed by the tent city alone." Feb. 26, 2012

*Memorandum Decision and Order* at 12, Dkt. 17 .  Although sleeping isolated from context may seem the least expressive activity imaginable, it becomes imbued with great meaning when it is used by Occupy Boise members to show their personal commitment and sacrifice. The Court therefore disagrees with Justice Scalia that sleeping can never be expressive conduct.  *Community for Creative Non–Violence v. Watt*, 703 F.2d 586 (D.C.Cir.1983) (Scalia, J., dissenting), *rev'd, Clark*, 468 U.S. at 292. Instead, the Court finds that sleeping, in the context here, is expressive conduct protected by the First Amendment. *See Occupy Fort Myers v. City of Fort Meyers*, 2011 WL 5554034 at *5 (M.D.Fla. Nov.15, 2011).  Cooking or making fires, however, is not expressive conduct and therefore not subject to First Amendment protection.

　　Finally, the Court reaffirms its finding that the expressive conduct was taking place in a "traditional public forum" that has "achieved a special status in our law." *Id.* at 829. Before vacating premises to allow for the repair and maintenance of Capitol grounds, Occupy Boise's tent  city was located on the grounds surrounding the old Ada County Courthouse, across the street from the Idaho Statehouse. This public open space is highly visible and physically close to the seat of State Government, making it a natural forum for political protests. Assembling and expressing grievances "at the site of the State Government" is the "most pristine and classic form" of exercising First Amendment freedoms. *Edwards v. South Carolina*, 372 U.S. 229, 235 (1963).

**MEMORANDUM DECISION AND ORDER - 9**

### B. Section 67-1613's No-Camping Ban Is a Reasonable Time, Place, and Manner Restriction.

Because the Ordinance regulates protected speech in a public forum, the Court applies the "time, place, and manner" test: "the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.' " *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quoting *Clark*, 468 U.S. 288, 293 (1984)). Unlike even other traditional public forums like streets, the open spaces around the Capitol grounds "are uniquely suitable for public gatherings and the expression of political or social opinion." *ACORN v. City of Phoenix*, 798 F.2d 1260, 1267 n.5 (9th Cir. 1986). Given the elevated status of traditional public forums such as the Capitol grounds, the State bears "an extraordinarily heavy burden to regulate speech" in this arena. *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1022 (9th Cir. 2009)(citation omitted).

With these guiding principles in mind, the Court will now proceed to the "time, place, and manner" analysis described in *Ward*.  The Court acknowledged in its prior decision that nothing in the no-camping statutes targeted Occupy Boise's political speech, but it found evidence to support a finding of content-based enforcement. *Memorandum Decision and Order* at 11, Dkt. 17. The stated intention of Governor Otter's edict and the State Police's "De-Occupy Boise" operation plan was to remove Occupy Boise entirely.

For this reason, the Court found it "likely Occupy Boise [could] show that the State's enforcement policy – that Idaho Code § 16-1613 bans even a symbolic tent city without overnight sleeping – is presumptively unconstitutional, and it [was] unlikely the State [could] meet its 'extraordinarily heavy burden' of showing that it is the least restrictive means of serving a compelling State interest." *Id.* Assuming the State still intends to use the no-camping statutes to evict Occupy Boise – "tents and all" – the Court would find such content-based enforcement unconstitutional.

However, since the Court issued its injunction barring the State from removing Occupy Boise's tent city, it seems the State Police have scrapped their initial enforcement plan. If the State does not use the no-camping statutes to target Occupy Boise's political speech, it stands on much better footing, and this case starts to resemble *Clark* and other Occupy movement cases.

Most courts that have considered similar no-camping provisions have found they are content-neutral on their face. *See, e.g., Occupy Fresno v. County of Fresno*, 835 F.Supp.2d 849 (E.D.Cal. December 13, 2011). Idaho's no-camping statute, like other no-camping laws, does not describe speech by content on its face, and it does not distinguish favored speech from disfavored speech. Nor does the statute require an administrative officer or the police to necessarily examine the content of the message conveyed to determine whether conduct violates the statute. The Court therefore finds that the no-camping statute is content-neutral and subject to intermediate scrutiny.

Content-neutral laws need only be "narrowly tailored to serve a significant government interest, and leave open alternative channels of communication." *Ward*, 491 U.S. at 791.  The no-camping ban need not be the least restrictive or intrusive means of serving those interests so long as the interests would be achieved less effectively absent the law.  *Id.* at 798-99.  But the statute must not "burden substantially more speech than is necessary to further the government's legitimate interests." *Id.* at 799.

Even finding that the ban on overnight sleeping violates Occupy Boise's First Amendment rights, the Court finds the camping restriction is a reasonable time, place, and manner restriction. Under *Clark*, the State has the right to ban overnight sleeping as a reasonable time and place restriction. 468 U.S. at 294-95.  According to the Supreme Court, a sleeping ban "clearly" limits the manner in which a demonstration may be carried out, which the Constitution permits so long as the limitations is narrowly tailored to serve a substantial government interest. *Id.*  And a ban on camping or sleeping in a public park or other public area "narrowly focuses on the Government's substantial interest in maintaining the parks in the heart of our Capital in an attractive and intact condition." *Id.* at 296.  What the Supreme Court said in *Clark*, regarding our nations' capital applies with equal force to the area surrounding Idaho's Capitol building.  The State has a substantial interest in maintaining the Capitol grounds in an attractive and intact condition, and a ban on camping serves this interest.  The State also has an interest in ensuring the health and safety of its citizens, and providing unobstructed grounds and convenient access to the Capitol Mall area.  The camping ban promotes those interests.

Occupy Boise argues that since *Clark*, the Supreme Court has "clarified" that the State must have evidence – not mere conjecture – that a challenged regulation actually advances the State's interests. According to Occupy Boise, the State has failed to meet this burden of proving the connection between the camping prohibition and the State's justifications. This is not so.

First, the Supreme Court "has never accepted mere conjecture as adequate to carry a First Amendment burden." *Nixon v.Shrink Mo. Gov't PAC*, 528 U.S. 377, 392 (2000). This was true before *Clark*, and it was true after *Clark*. So Occupy Boise's basic premise – that the Supreme Court used to accept "mere conjecture" in First Amendment cases and now it doesn't – is flawed.

Second, the "quantum of empirical evidence needed to satisfy heightened judicial scrutiny of legislative judgments" is not fixed in every case; instead, it varies "up or down with the novelty and the plausibility of the justification raised." *Id.* at 391. And, in this case, the interests the State seeks to further– advancing the aesthetic interests of the Capitol grounds and promoting public safety – are neither novel nor implausible. This means that the "quantum of evidence" needed to challenge required here falls on the lower end of the scale.

Indeed, in *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425 (2002), the Supreme Court stated, in essence, that empirical evidence was *not* necessary to show a connection between the regulation and the justification:

> In effect, Justice Souter asks the city to demonstrate, not merely by appeal to common sense, but also with empirical data, that its ordinance will

MEMORANDUM DECISION AND ORDER - 13

>successfully lower crime. Our cases have never required that municipalities make such a showing, certainly not without actual and convincing evidence from plaintiffs to the contrary.

*Id.* at 439. This case – decided after *Clark* –undermines Occupy Boise's theory that the Supreme Court has heightened the government's evidentiary burden in First Amendment cases. The Court is convinced that the Supreme Court would not decide *Clark*, nor this case, differently today.

This conclusion is bolstered by the multiple Occupy Movement-related cases involving similar no-camping regulations on state property. In every Occupy-Movement related case of which the Court is aware, the deciding court has followed *Clark* in upholding similar no-camping bans. None of these cases even suggests that the evidentiary burden attendant to the narrowly-tailored element has been modified since *Clark*, or otherwise cast doubt on *Clark's* continued viability.

For all these reasons, the Court finds no reason to deviate from *Clark's* holding. It therefore finds that Idaho's no-camping statute is narrowly tailored to further the State's significant interests in maintaining the attractiveness of government-owned property and promoting public safety. Moreover, ample alternative channels exist for Occupy Boise to convey its message. The Court has allowed the tent city to remain so long as it does not interfere with the State's maintenance of the property. Manning the symbolic tent city 24 hours a day, every day, conveys Occupy Boise's message of personal commitment and sacrifice, even without allowing sleeping or allowing other indicia of camping to remain.

As in *Clark*, the State here has the right to ban camping, cooking, making fires, and storing personal belongings related to camping. Section 67-1613 is therefore constitutional on its face. Occupy Boise may maintain its symbolic tent city on the Capitol Mall grounds so long as it complies with all constitutional rules and regulations.

**3.  Section 67-1613A, Idaho Code**

Occupy Boise claims that the property seizures authorized by section 67-1613A do not comport with the Fourth, Fifth, and Fourteenth Amendment protections.

Section 67-1613 provides that any person who violates the camping prohibition "shall be required to remove all [his or her] personal property from the state-owned or leased property." Section 67-1613A governs the disposition of any "property remaining after issuance of a citation or any property left unattended." This section requires that any such property "be held by the agency or its agent removing the property in a secure location for a period of not less than ninety (90) days." *Id.* It further requires that notice "be posted and remain at the nearest reasonable location to the place of removal with the agency's or agent's contact information for the ninety (90) day period." *Id.*

But if property is not claimed within the ninety-day period, the property is "deemed abandoned and the agency shall have the right to dispose of the property." The section allows a "reasonable storage fee as determined by the agency" to be assessed at the time an owner claims the property. *Id.* This section also immunizes any state agents, employees, or contractors who administer the section so long as they comply with all provisions. *Id.*

### A. *The Seizures Authorized by Section 67-1613A Do Not Violate the Fourth Amendment*

Under the Fourth Amendment prohibition of "unreasonable searches and seizures," U.S. Const. amend IV, a seizure has been found to occur whenever "there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook County*, 506 U.S. 56, 62 (1992). "No more is necessary to trigger the Fourth Amendment's reasonableness requirement." *Lavan v. City of Los Angeles*, 693 F.3d 1022 (9th Cir. 2012*), reh'g pet*. filed (Sept. 19, 2012) (No. 11-56253). A seizure is deemed unreasonable if the government's legitimate interest in the search or seizure does not outweigh the individual's interest in the property seized.

In *Lavan*, the Ninth Circuit held that the City of Los Angeles's seizure and immediate destruction of unabandoned personal possessions temporarily left on public sidewalks by nine homeless people was unreasonable. According to the Circuit, the city did not have a good faith belief that the individuals' possessions, which ranged "from personal identification documents and family memorabilia to portable electronics, blankets, and shelters," were abandoned when the City "summarily destroyed" them. The Circuit criticized the seizure of the homeless persons' property, finding that the city employee's immediate destruction of the property, without first providing notice or opportunity to be heard, rendered an otherwise lawful seizure unreasonable. *Id.* at 1030-1032. Thus, the seizure was lawful but the immediate destruction of the property was not.

Here, as in *Lavan*, the initial seizure of "property remaining after issuance of a citation or any property left unattended" authorized by section 67-1613A is lawful. The community caretaking exception to the Fourth Amendment allows for the seizure of unattended property on public lands when the seizure is made to protect the property rather than to investigate a crime. Here, there is no evidence that section 67-1613A authorizes seizures for the purpose of investigating crimes. *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1477 n.4 (9th Cir. 1993). Instead, section 67-1613A authorizes seizures to protect the unattended property from vandalism or theft and to ensure that the remaining property does not continue to interfere with the use of state lands. Thus, the seizures section 67-1613A authorizes fit within the community caretaking exception and are therefore lawful.

Unlike the city's policy in *Lavan*, section 67-1613A provides for pre-deprivation notice where the property owner is present and posting a notice of removal when the owner is absent or cannot be identified. A fee for storage may be imposed but is not mandatory. If a fee is charged, the owner has the right to initiate a contested case under the Idaho Administrative Procedure Act, Idaho Code §§ 67-5740 to -5752, through a petition directed to the Department. IDAPA 04.11.01.152 and 04.11.01.230.01.c; *see Laughy v. Idaho Dep't of Admin.*, 243 P.3d 1055, 1060 (2010). Section 67-1613A also provides for 90-day storage period before the property is destroyed. Section 67-1613A thus differs markedly from the city's policy in *Lavan*. Because section 67-1613A

MEMORANDUM DECISION AND ORDER - 17

provides for notice and some opportunity to be heard, as well as a 90-day storage period, the seizures the statute authorizes would not violate the Fourth Amendment.

### B. Section 67-1613A Does Not Violate the Fifth Amendment

The Fifth Amendment provides, "nor shall private property be taken for public use, without just compensation." There are two types of "per se" takings: "(1) permanent physical invasion of the property; and (2) a deprivation of all economically beneficial use of the property." *Laurel Park Cmty., LLC v. City of Tumwater*, 698 F.3d 1180 (9th Cir. 2012)(citations omitted).  In some instances, "if government action would qualify as a taking when permanently continued, temporary actions of the same character may also qualify as a taking." *Arkansas Game and Fish Comm'n v. United States,* ___ U.S. ___, ___, 133 S. Ct. 511, 515, 519 (2012) (holding that a temporary takings claim may be maintained where the government takes temporary possession of property for public use).

Occupy Boise argues that section 67-1613A authorizes a taking of personal property for public use without just compensation.  This is simply not true. Section 67-1613A does not provide for the seizure of any property for *use* by the State or private parties.  Instead, the statute provides for the storage of the property so that it may be retrieved by its owner.  If the owner does not retrieve the property within 90 days, it is destroyed.  Nothing about section 67-1613A custody provisions resemble either a physical or regulatory taking, and Occupy Boise cites no apposite authority for a contrary conclusion.  The Court will therefore grant the State's motion for summary judgment on this claim.

### C. Section 67-1613A Fails to Provide an Opportunity to Be Heard

Occupy Boise argues that section 67-1613A also violates due process because property owners are not provided a pre-deprivation hearing before their property is removed and taken into custody by state officials.

Under the Fourteenth Amendment to the United States Constitution, "[n]o state shall... deprive any person of life, liberty, or property, without due process of laws." U.S. Const. amend. XIV. Due process requires both notice and an opportunity for a hearing. *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).. "The government may not take property like a thief in the night; rather, it must announce its intentions and give the property owner a chance to argue against the taking." *Clement v. City of Glendale*, 518 F.3d 1090, 1093 (9th Cir. 2008).  The Ninth Circuit has made clear that it "assess[es] due process case-by-case based on the total circumstances." *Miranda v. City of Cornelius*, 429 F.3d 858, 866 (9th Cir. 2005).

Section 67-1613A provides for pre-deprivation notice where the property owner is present and posting a notice of removal when the owner is absent or cannot be identified. Thus, the notice requirement is satisfied where the owner can be readily identified.

In addition, the Court finds no due process violation for failure to provide a post-deprivation hearing.  Section 67-1613A authorizes temporary seizures of property pursuant to the state's community caretaking function.  To claim property seized under the statute, the property owner must only go pick it up where it is being held within 90 days, and the state must return it.  And, if a storage fee is charged, the property owner

may contest it.  Assuming the state follows these procedures outlined in the statute, Occupy Boise cannot show that the state has deprived them of a constitutionally-protected interest in life, liberty, or property based on such a hypothetical loss.

## ORDER

**IT IS ORDERED that:**

1. Defendants' motion for partial summary judgment (Dkt. 82) is **GRANTED**;

2. Occupy Boise's first motion for partial summary judgment (Dkt. 84) is deemed **MOOT.**

DATED: June 26, 2013

B. Lynn Winmill  
Chief Judge  
United States District Court