IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EDWARD WATTERS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> C.L. (BUTCH) OTTER, et al., <br><br> Defendants. | Case No. 1:12-CV-76-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion to dismiss filed by the State and a motion for partial summary judgment filed by plaintiffs (referred to collectively as Occupy). The Court heard oral argument on June 10, 2014, and took the motions under advisement. For the reasons explained below, the Court will grant both motions.

## ANALYSIS

### Motion to Dismiss

In December of 2013, this Court ruled that seven rules targeting Occupy violated the First Amendment. *See Memorandum Decision (Dkt. No. 122).* A few months later – while this case was pending and before any judgment was entered – the 2014 Idaho Legislature struck down all seven rules finding that they were "not consistent with legislative intent and should be rejected." *See* H. Concurrent Resolution Nos. 47 & 48 (62nd Legis., 2d Reg. Sess. 2014).

The State now seeks to dismiss Occupy's challenge to these seven rules on the ground that the dispute is moot. The precise issue arose earlier when the 2013 Legislature struck down the hours-limitation rule, and the Court declared the dispute moot:

> In this case, the Legislature has rejected the hours-limitation provision outright. Thus, the likelihood that the Department will reinstate the hours' limitations is almost nil. Therefore, Occupy Boise's challenge to the hours-limitation provisions is moot.

*Memorandum Decision, supra,* at p. 37; *see also Bell v. City of Boise,* 709 F.3d 890, 899 (9th Cir. 2013) (holding that "a statutory change . . . is usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed").

The same analysis applies to these seven rules.[1] Occupy's challenge to them is now moot because the Legislature has struck them down. Thus, the motion to dismiss must be granted.[2]

**Motion for Partial Summary Judgment**

Occupy seeks a partial judgment declaring that (1) the State's policy of enforcing Idaho Code §§ 67-1613 and 67-1613A to remove Occupy's tents violates Occupy's First

---

[1] Occupy argues that even after the Legislature rejected a rule banning protests lasting longer than a week in the same place, the Department reinstated it, demonstrating that no rule is ever dead. The Court is confident, however, that its declaratory judgment – discussed further below – will prevent such a revival.

[2] The parties briefed the issue of whether the Court's opinion should be withdrawn or vacated. The Court understands that the State is not seeking vacatur but only dismissal of Occupy's claims regarding the seven rules. The Court's prior opinions will not be withdrawn.

**Memorandum Decision & Order – page 2**

Amendment rights, and (2) in the future, the State must enforce the statutes consistently with the Court's interpretation of the statutes.

The State characterizes Occupy's motion as a pre-enforcement challenge based on hypothetical assumptions, and urges the Court to decline to rule until a concrete dispute is before the Court. Occupy responds that harm is present now because its members are chilled in their plans to conduct future tent city protests due to their fear of being cited and having their tents and personal effects seized. *See e.g. Bolognino Declaration (Dkt. No. 126-3)* at ¶¶ 4, 5 (expressing reluctance to engage in further tent city protests because of fear of being cited).

The first part of the motion asks the Court to declare that the State's policy – as found in the Court's past decisions – violated Occupy's First Amendment rights. For example, upon signing the statutes into law, Governor Otter immediately issued a directive requiring Occupy to remove the symbolic tent city by 5 p.m., on February 27, 2012. *See Memorandum Decision (Dkt. No. 115)* at p. 3-4. To implement the Governor's edict, the State Police developed a detailed plan called "Operation De-Occupy Boise" to remove the protesters and their tents, including the large assembly tents not meant for sleeping. *Id.* This policy targets political speech for suppression, and Occupy is entitled to a declaration that it violates the group's First Amendment rights.

The second part of Occupy's motion seeks prospective relief. It asks the Court to require the State to enforce the statutes consistently with the Court's opinion. State's counsel responds that there are no plans to enforce the statute inconsistently with the Court's opinion. The State points out that once this Court set the constitutional

**Memorandum Decision & Order – page 3**

boundaries of the statutes – and Occupy members adhered to that Court interpretation – the State did not cite the Occupy members or attempt to remove the tents despite their continued occupation of the grounds across from the Statehouse. Until a concrete dispute comes before the Court – that is, an enforcement action against a tent city – this is merely a hypothetical dispute of the type courts avoid, argues the State.

To obtain prospective relief, Occupy "must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Libertarian Party v. Bowen,* 709 F.3d 867, 870 (9th Cir. 2013). But it need not have to "await the consummation of threatened injury to obtain preventive relief." *Id.* "[W]here a plaintiff has refrained from engaging in expressive activity for fear of prosecution under the challenged statute, such self-censorship is a constitutionally sufficient injury as long as it is based on an actual and well-founded fear that the challenged statute will be enforced." *Id.* In evaluating whether a claimed threat is genuine, the Court must examine three factors: (1) whether Occupy has "articulated a 'concrete plan' to violate the law in question," (2) whether the prosecuting authorities have communicated a "specific warning or threat," and (3) the history of past prosecution or enforcement under the challenged statute. *Id.* at 870.

As discussed above, Occupy plans to erect more tent city protests. While they do not plan to conduct their protests inconsistently with the Court's interpretation of the statutes, they complain about the State's narrow interpretation of what the Court deemed protected speech. Occupy asserts that after the Court issued its decision, the State threatened to shut down a protest if staffers unfurled a sleeping bag or brought a book to

**Memorandum Decision & Order – page 4**

read. The State responds that their comments were misinterpreted and that no citations were issued in any event after the Court's decision.

The issue here is whether there is an "actual and well-founded fear" that the State will cite the protestors under the statutes when they set up a tent city in the future. As discussed above, the State did attempt to suppress Occupy's protests in the past, a fact the State candidly admits: "To be sure, the Governor's signing statement satisfied this factor [i.e., a credible threat of prosecution] . . . ." *See State Response Brief (Dkt. No. 131)* at p. 9.

The State explains, however, that the threat is gone because the State's counsel, Clay Smith, agrees with the Court's interpretation that the statutes prohibit only overnight sleeping and camping. *See Smith Declaration (Dkt. No. 131-1)* at ¶ 10. With all due respect to State's counsel, he does not direct the State's affairs. There is nothing in the record from the Governor's Office or the Idaho State Police stating that they are disclaiming their prior plan to use the statutes to suppress Occupy's political protest. State's counsel infers that the Idaho State Police will follow the Court's decision but provides nothing definitive from the agency itself to confirm that inference. *State Brief (Dkt. No. 67-1)* at 7 n.3 (statement by State's counsel that "by necessary inference, the [Idaho State Police] will adjust implementation of any future removal plans to [follow the Court's decision]").

Importantly, the Court's decisions did not – and could not – anticipate and cover each enforcement issue. Going forward, the State has a great deal of discretion in enforcing the statutes. Given the State's history of targeting Occupy, and no definitive

**Memorandum Decision & Order – page 5**

statement from the agencies of any change in that policy, there is a real threat that the State could use that discretion to undermine Occupy's protests even while ostensibly following the general dictates of the Court's decisions.

A recent Ninth Circuit case gives some guidance here. In *Rosebrock v. Beiter,* 745 F.3d 963 (9th Cir. 2014), the Veteran's Administration (VA) suppressed plaintiff Rosebrock's protest, violating his First Amendment rights. The district court granted Rosebrock's request for a declaratory judgment that the VA had violated his First Amendment rights. *Rosebrock v. Beiter,* 788 F.Supp.2d 1127 (C.D.Cal. 2011). But the district court denied Rosebrock's request for a "preventative injunction" forbidding the VA from committing viewpoint discrimination against him in the future. *Id.* at 1144. On that point, the district found that the VA had changed its policy to accord with the First Amendment. *Id.* On appeal, the Circuit agreed. *Rosebrock,* 745 F.3d at 974. In response to Rosebrock's argument that the VA could revert back to its suppressive ways, the Circuit noted that "[i]f it does, Rosebrock is well-armed with his declaratory judgment and can pursue relief in a new suit." *Id.* at 974.

Unlike the agency in *Rosebrock,* the agencies here have not definitively disclaimed their past policy of suppressing protected speech. Moreover, the State's substantial enforcement discretion has a real chilling effect, given the history of suppression here. The leading treatise on federal procedure states that the declaratory judgment procedure "permits actual controversies to be settled before they ripen into violations of law . . . ." *See* 10B Wright, Miller and Kane, *Federal Practice & Procedure,* § 2751 p. 458 (3d ed. 1998). Occupy, like the plaintiff in *Rosebrock,* needs to

**Memorandum Decision & Order – page 6**

be "well-armed with [a] declaratory judgment" before engaging in another protest and risking citation and seizure. *Rosebrock,* 745 F.3d at 974

After considering the three factors listed above in *Bowen,* and the analysis in *Rosebrock*, the Court finds that Occupy's motion for declaratory judgment should be granted.

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to dismiss (docket no. 133) is GRANTED, and the plaintiffs' challenges to the following rules promulgated by the Idaho Department of Administration are DEEMED MOOT:

1. § 38.04.06.200.03 (state events, capitol mall properties);
2. § 38.04.08.200.03 (state events, capitol);
3. § 38.04.08.400.07 (costs, capitol)
4. § 38.04.06.201 (duration, capitol mall properties);
5. § 38.04.08.201 (duration, capitol);
6. § 38.04.06.400.01 & .03 (liability and indemnification, capitol mall);
7. § 38.04.08.500.01 & .03 (liability and indemnification, capitol).

IT IS FURTHER ORDERED, that the plaintiffs' third motion for partial summary judgment (docket no. 126) is GRANTED, and that the Court hereby declares that:

1. The defendants' policy of enforcing I.C. §§ 67-1613–1613A to remove symbolic and assembly tents on State grounds or to prevent protesters from staffing tent protests around the clock violates the First Amendment.

2. The defendants and their officers, agents, employees, attorneys, and all persons who are in active concert or participation with them shall enforce I.C. §§ 67-

1613–1613A consistently with this Court's decisions (docket nos. 17, 53, 115, 122).

DATED: June 11, 2014

_____
B. Lynn Winmill
Chief Judge
United States District Court