# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

**Watters, et al.**

v

**Otter, et al.**

**BILL OF COSTS**

Case # **1:12-cv-00076-BLW**

**7/1/2014** against **Defendants**

Judgment having been entered in the above entitled action on the Clerk is requested to tax the following as costs:

| | |
|---|---|
| **1. Clerks and Service Fees** - removal fees, filing fees. The cost of private process servers is NOT ALLOWED. Only Marshal's service fees allowed. | **350.00** |
| **2. Trial Transcripts** - furnished upon request of court, or prepared pursuant to stipulation | |
| **3. Deposition Costs** - original of noticing party and prevailing party's copy of depositions used in the case; reasonable fees of notary and deposition reporter of noticing party; video depositions costs. Deposition summaries or counsel's fees NOT ALLOWED | **2,011.75** |
| **4. Witness Fees** - at statutory rate (28 USC § 1821). Mileage outside the district limited to 100 miles each way absent prior court order. Expert witness fees at the same rate as other witness fees. Complete the worksheet on the reverse of this form, and enter the total here. | **20.00** |
| **5. Copies of Papers and Exhibits** - Cost of exhibits attached to documents required to be filed and served; exemplification fees; copies of preparing clerks record on appeal. Copies of motions, pleadings and other routine case papers NOT ALLOWED. | |
| **6. Maps, Charts, Models, Photographs, Computations and Summaries** - Reasonable costs if admitted into evidence. NO enlargements great than 8" x 10" allowed unless approved by the court. NO models allowed absent an order of the court.  Cost of compiling summaries, computations and statistical comparisons is NOT TAXABLE. | |
| **7. Interpreter and Translator Fees** - reasonable fees of interpreter allowed if the fee of witness is taxable. Translator fee allowed if document is necessarily filed or admitted in evidence. | |
| **8. Docket Fees** - Docket fees pursuant to 28 U.S.C. § 1923 | |
| | |
| **Attach to your to cost bill an itemization and documentation for requested costs in all categories.**   TOTAL | **2,381.75** |

I declare under penalty of perjury that the foregoing costs are correct and were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed.  A copy of this bill was mailed to:

*by ECF to Defendant's Counsel*

Signature of Attorney: _____   Name of Attorney: **Richard Alan Eppink**

For: **Plaintiffs**   Date: **07/15/2014**
Name of Claiming Party

COSTS ARE TAXED IN THE AMOUNT OF _____ AND INCLUDED IN THE JUDGMENT.

Clerk of Court   By: _____   Date: _____
Deputy Clerk

| | ATTENDANCE | | SUBSISTENCE | | MILEAGE | | |
|---|---|---|---|---|---|---|---|
| **WITNESS FEES (computation, cf. 28 U.S.C. 1821 for statutory fees)** | | | | | | | |
| NAME AND RESIDENCE | Days | Total Cost | Days | Total Cost | Miles | Total Cost | Total Cost Each Witness |
| **Mike Dooley** | 1 | 20.00 | | | | | 20.00 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | TOTAL | 20.00 |

## NOTICE

**Section 1924, Title 28, U.S. Code (effective September 1, 1948) provides:**

"Sec. 1924. Verification of bill of costs."

"Before any bill of costs is taxed, the party claiming any item of cost or disbursement shall attach thereto an affidavit, made by himself or by his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed."

**See also Section 1920 of Title 28, which reads in part as follows:**

"A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree."

**The Federal Rules of Civil Procedure contain the following provisions:**

Rule 54 (d)

"Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs, but costs against the United States, its officers, and agencies shall be imposed only to the extent permitted by law. Costs may be taxed by the clerk on one day's notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court."

Rule 6(e)

"Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon him and the notice or paper is served upon him by mail, 3 days shall be added to the prescribed period."

Rule 58 (In Part)

"Entry of the judgment shall not be delayed for the taxing of costs."

**Richard Alan Eppink**
**AMERICAN CIVIL LIBERTIES UNION**
**OF IDAHO FOUNDATION**
Idaho State Bar no. 7503
reppink@acluidaho.org
P.O. Box 1897
Boise, Idaho  83701
(208) 344-9750, ext. 1202
(208) 344-7201 (fax)

*Attorneys for the Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| EDWARD WATTERS *et al.*, | CASE NO.  1:12-cv-00076-BLW |
| Plaintiffs, | |
| vs. | **DECLARATION OF RICHARD EPPINK IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY FEES AND COSTS** |
| C.L. (BUTCH) OTTER, in his official capacity as the Governor of the State of Idaho, *et al.*, | |
| Defendants. | |

I, Richard Eppink, declare under penalty of perjury as follows:

1.  I have been one of the lawyers assisting the plaintiffs in this case since it began and I make this declaration from my own personal knowledge.

2.  I make this Declaration in support of plaintiffs' motion for attorney fees and costs. Attached to this Declaration as "Exhibit A" are my time records, which I kept contemporaneously.  I have carefully reviewed these records and attest that these charges are accurate for the dates claimed, and reflect time that was reasonably spent in litigating this case.

3.  I have been a lawyer assisting the plaintiffs in this case since attorney work began on it in January 2012.  I was a primary author of virtually all of the papers that the plaintiffs have

DECLARATION OF RICHARD EPPINK – Page 1

filed in this case, including the complaints and the motion and briefs seeking preliminary relief. I did not formally appear in this case until May 2012 because, prior to that time, I was providing *pro bono* assistance to the plaintiffs, unaffiliated with my firm at that time, Idaho Legal Aid Services. This case was not an Idaho Legal Aid Services case so, accordingly, I did not formally appear, but nevertheless served as co-counsel with Bryan Walker throughout this case from its inception. In May 2012 the ACLU of Idaho Foundation (ACLU of Idaho) accepted this case and, as Legal Director of the ACLU of Idaho, I formally entered my appearance. I have served formally as lead counsel for the plaintiffs ever since.

4. I graduated from the University of Idaho College of Law in 2006 and was admitted to practice law in Idaho in September 2006. I graduated from law school *summa cum laude*, ranked first in my class. I was a managing editor of the Idaho Law Review. Following graduation I was awarded a Fulbright Fellowship to study innovative poverty law and community legal education initiatives in Canada, based at the University of Alberta Faculty of Law in Edmonton, Alberta.

5. Since completion of the Fulbright Fellowship in May 2007, I have been practicing in the areas of civil rights law and poverty law on behalf of indigent or marginalized individuals and groups.

6. From 2007 until 2010 I was employed as a Staff Attorney with Idaho Legal Aid Services. During that time I was the only Staff Attorney at Idaho Legal Aid Services based in two offices—both Boise and Nampa—and the only Staff Attorney handling matters throughout two judicial districts—the Third and Fourth Judicial Districts of the State of Idaho—spanning ten counties.

7. From 2010 until 2012 I was employed as the Justice Architect for Idaho Legal Aid Services. The core responsibility of that position was handling major litigation with the

DECLARATION OF RICHARD EPPINK – Page 2

Litigation Director, as well identifying, strategizing, and pursuing new major litigation and advocacy projects.  In that position I also provided training and coordination for Idaho Legal Aid Services attorneys throughout the State of Idaho and collaborated with litigators, policy specialists, and state and federal agency officials throughout the nation.

8.  I am the current Chair of the bench-bar Pro Bono Committee of the Fourth Judicial District in the State of Idaho and a past Chair of the Young Lawyers Section of the Idaho State Bar.  I am also a Barrister member of American Inn of Court no. 130, an appointed member of the Law Related Education Committee of the Idaho Law Foundation, and a member of the Federal Bar Association and Idaho Trial Lawyers Association.

9.  I am admitted to practice before Idaho state courts, the U.S. District Court for the District of Idaho, and the U.S. Court of Appeals for the Ninth Circuit.  I have served as the only handling attorney, as lead counsel, or as co-counsel in major litigation in areas of significant public interest or developing law, in both state and federal court.  Recent examples of results I have helped to obtain as plaintiffs' counsel include a $1 million jury verdict against the City of Boise on federal Fair Housing Act claims, an order holding the Corrections Corporation of America in contempt of court concerning its operation of Idaho's largest prison (*Kelly v. Wengler*, 979 F. Supp. 2d 1104 (D. Idaho 2013)), a preliminary injunction on freedom of speech claims resulting in the repeal of an unconstitutional City of Boise ordinance, and a class action preliminary injunction against Idaho Department of Health and Welfare officials ensuring procedural due process protections for adults with developmental disabilities.  I am currently the Legal Director of the American Civil Liberties Union of Idaho Foundation and practice exclusively in the areas of constitutional and civil liberties law, and I handle only civil rights cases with major societal significance.

DECLARATION OF RICHARD EPPINK – Page 3

10.  The agreement that I have with my clients in this litigation is that they will not be charged for my services if we do not prevail, and that if we do prevail, attorney's fees will be sought from the defendants under fee-shifting provisions of the law.

11.  Attached to this Declaration as "Exhibit B" is a breakdown of the costs my office incurred in connection with this litigation, followed by receipts or related documentation about each of those costs.  All of these costs were necessary in order for me to adequately represent my clients and prosecute this case.

12.  I have carefully scrutinized all of my time records, both at the time I made them and at least three separate times recently, exercising billing judgment to deduct time from the fees we now seek.  For example, I have deducted the time I spent on a number of phone calls and emails to co-counsel or opposing counsel about general or miscellaneous issues that have come up during this litigation.  I have also deducted time spent attending, observing, and reviewing legislative committee hearings where defendant Teresa Luna and opposing counsel testified, despite that information and evidence from several of those hearings has been introduced and argued about by both the plaintiffs and the defendants in this case.  I have also deducted some time spent preparing for oral argument, and even some of the time spent attending oral argument in this case.

13.  Altogether, in exercising billing judgment in the ways described in the previous paragraph, I have deducted over 61 hours spent in this case, or over 10% of the total hours I actually spent litigating this case.

14.  It is also my habitual practice to exercise contemporaneous billing judgment when making time records each day, in two ways.  First, I do not record time spent reading and answering an email or listening to a voicemail, or on other brief tasks, if it takes five minutes or

DECLARATION OF RICHARD EPPINK – Page 4

less.  This happens frequently, and has occurred often during this litigation.  Second, when recording time for any task, I round *down* to the nearest tenth of an hour.  So, for example, if I spend 16 minutes on a task, I will record that time as only 0.2 hour, or 12 minutes.

15.  To assist me in researching and litigating this case, I retained the services of two law student clerks: Lauren Guicheteau, a third-year law student at the University of Washington School of Law at the time she worked on this case, and Andrew Masser, a second-year law student at the University of California–Davis School of Law at the time he worked on this case. Both of these law students acted in the capacity of a paralegal or law clerk when they assisted with this litigation.

16.  Ms. Guicheteau spent 31.0 hours conducting legal research and investigation in this case.  Mr. Masser spent 24.7 hours doing legal research in this case.  I supervised and directed their work, which I would have otherwise had to do myself, and I believe their time was reasonably spent in litigation this case.  Nevertheless, in exercising billing judgment, I have voluntarily decided not to seek an award for their time, which would, at the reasonable rate of $75 for Ms. Guicheteau and $55 for Mr. Masser, amount to $3,645 in additional fees.

17.  This case presented a number of difficulties and involved important, publicly high-profile issues somewhat novel to *First Amendment* jurisprudence.  The case arose in an emergency setting and involved both initial claims and supplemental pleadings, after the defendants tried a Plan B—using administrative rules rather than an anti-camping statute—to try to oust Occupy Boise after their initial plan was halted by this Court's preliminary injunction. The defendants consistently targeted the plaintiffs with efforts to make it difficult for them to exercise their *First Amendment* rights, and refused to provide information about their extensive eviction plan, called "Operation De-Occupy Boise," forcing the plaintiffs to litigate their right to

DECLARATION OF RICHARD EPPINK – Page 5

see that information and obtain a Court order for its redacted disclosure.  Immediately after oral argument on the plaintiffs' first summary judgment motion, the State rewrote some of the administrative rules, requiring the plaintiffs to file yet another motion to explain why the rewritten rules remained unconstitutional.  The litigation spanned over two years and more than four summary judgment motions.

18.  I do not believe any of the plaintiffs, including Occupy Boise, had the financial means to pay any attorney by the hour to handle this case.  Because this was not a damages case, the likelihood that the plaintiffs could have retained any lawyer to take their case under a contingent fee agreement is close to zero.  Because this case sought only injunctive relief, and sought that relief at an early, nearly pre-enforcement stage, the likelihood that any lawyer outside of a nonprofit public interest firm would have taken the plaintiffs' case except on a *pro bono* basis probably *is* zero in Idaho.

19.  Not only does this case seem especially undesirable for a private practitioner, the capacity of the ACLU of Idaho to handle lengthy litigation of this kind is quite limited.  Although I have some very limited success referring certain kinds of damage claims—such as employment discrimination, medical malpractice, and prisoner injury cases—to private attorneys, I have yet to successfully refer an affirmative freedom of speech claim, seeking only equitable relief, to any private attorney in Idaho for lead counsel work.  Many lawyers who are competent to handle such claims and interested in doing them are unable to commit to the hundreds of *pro bono* hours necessary to properly litigate these cases.  Other lawyers competent to handle these claims have conflicts or potential conflicts of interest due to other work they or their firms do for the State or related government entities.  On the other hand, I have received a number of requests from individual and groups, as well as referrals from other lawyers, asking

DECLARATION OF RICHARD EPPINK – Page 6

whether I (or the ACLU of Idaho generally) would take on an affirmative freedom of speech case seeking injunctive relief.  More often than not, the ACLU of Idaho cannot take these referrals due in part to its finite capacity and existing caseload.

20.  I am the only lawyer employed by the ACLU of Idaho.  Our legal staff consists entirely of paralegal Ingrid Andrulis and myself.  Ms. Andrulis provided occasional assistance to me during the proceedings in this case, but her chief responsibilities are reviewing, investigating, researching, and responding to the hundreds of complaints and correspondence seeking the ACLU of Idaho's assistance that we receive from Idahoans every year. Even when litigation activity is slow in our open cases, Ms. Andrulis and I do not have the time or resources to investigate hardly any of the colorable claims that complainants write to us about, despite that Ms. Andrulis typically spends the overwhelming majority of her time handling those complaints. Yet because of the ACLU of Idaho's nonprofit, public interest mission, Ms. Andrulis and I have the responsibility of at least reviewing and responding to every complaint we receive.

21.  I know several lawyers who are solo practitioners in Boise and I am familiar with their practices from speaking with them.  From that knowledge, I know that I work like other solo practitioners.  I file my own pleadings on ECF always, I type my own notes and letters almost all of the time, I make my own copies almost all of the time, and I draft my own pleadings and papers.  I do not have a secretary or receptionist who screens my phone calls (unless the caller does not know my phone extension and also does not use the automated directory to dial my desk directly).  Ms. Andrulis simply does not have the time to do any of those things for me most of the time.  Although the ACLU of Idaho sometimes has law student interns or volunteer attorneys to assist its legal staff, those interns and volunteers also must provide substantial assistance to Ms. Andrulis and her primary job of handling incoming

DECLARATION OF RICHARD EPPINK – Page 7

complaints.

22. This case required seeking immediate, emergency preliminary relief to protect the plaintiffs' protest from the defendants' imminent, express threat to evict Occupy Boise. After granting a preliminary injunction, the Court then set a date for an evidentiary hearing concerning extended preliminary relief, which I undertook considerable effort to help prepare for, but the defendants ultimately agreed to entry of extended preliminary relief shortly before that hearing was scheduled to begin. The case involved a discovery dispute over the disclosure of records about the defendants' plans to evict Occupy Boise's protest, which had to be litigated and resulted in disclosure of the "Operation De-Occupy Boise" plan which the plaintiffs used to their favor in showing how the State had targeted their speech for suppression. The defendants seemed to contest nearly every legal issue in the case, including whether elements of the plaintiffs' protest were even protected by the *First Amendment* and whether the Capitol Mall is a traditional public forum for *First Amendment* activity, major issues on which the plaintiffs prevailed.

23. Quite early in the case, in August 2012, I extended an offer to defendants' counsel to resolve the plaintiffs' as-applied challenges to the camping statute. "Exhibit C" to this declaration is a true copy of a letter I sent opening discussions about such a resolution. However, the defendants would agree to resolve the case only if the plaintiffs would withdraw their as-applied challenges. The defendants rejected any resolution that would involve a declaration, injunction, or decree requiring the State to hew their enforcement of the camping statute to this Court's preliminary injunction decision.

24. Earlier this year, in January 2014, I extended yet another offer to defendants' counsel to resolve the plaintiffs' as-applied challenges to the camping statute. This time, the plaintiffs

DECLARATION OF RICHARD EPPINK – Page 8

offered to resolve those challenges if the defendants would merely issue written instructions to enforcement officers requiring that they follow this Court's preliminary injunction decision when enforcing the camping statute.  A true copy of the letter I sent with that offer is at Dkt. 126-7 and a true copy of defendants' counsel's letter rejecting that offer is at Dkt. 126-8.

25.   Throughout these proceedings, this litigation has been of substantial public interest, evidenced by frequent and extensive coverage in the mass media.  Idaho newspapers, television and radio stations, and online news outlets have published reports and stories about nearly every decision in this case.  The press has hailed some of the plaintiffs' results in this case as "landmark," George Prentice, *Occupy Boise Wins Landmark Federal Court Ruling*, BOISE WEEKLY, Nov. 5, 2013, http://bit.ly/1qWdRXx, and flagship Idaho newspapers have carried editorials and op-eds praising this Court's decisions and Occupy Boise's victories, *e.g.,* David Adler, *Winmill gives powerful defense of First Amendment*, IDAHO STATESMAN, Nov. 7, 2013, http://bit.ly/1eFateG ("Citizens who are committed to freedom of speech will welcome Winmill's ruling."); *Our View: Freedom, if We Agree*, MAGIC VALLEY TIMES-NEWS, June 15, 2014, http://bit.ly/1jqLzlN ("Quite frankly, the state's behavior in 2012 was and always will be unacceptable, as was the push within the executive branch to continue fighting for the wrong side."); *Our View: Occupy Boise: A nuanced yet strong defense of dissent*, IDAHO STATESMAN, Feb. 29, 2012 ("On constitutional grounds, the state took a well-deserved shellacking.").  The case has garnered national press attention as well, with coverage in the *Wall Street Journal*, *Salon*, and international wire services.

26.   Not counting time for work on this case that the plaintiffs are not requesting a fee award for, I have spent a total of 503.6 billable hours in this matter.  Particularly considering the complexity of the legal issues involved in this case; the preliminary relief obtained; significant

DECLARATION OF RICHARD EPPINK – Page 9

holdings that Occupy Boise's tent city and sleeping are protected expressive conduct and that the Capitol Mall is a traditional public forum; the holdings that the most restrictive of the administrative rules were unconstitutional (resulting in their repeal); the final declaration and permanent injunction; the nature of the plaintiffs; and the special focus and abilities of my law practice and experience, I believe that the hourly rate that the plaintiffs are requesting for my work—$275—is appropriate.

27.  The most recent fee award I have received is form this Court, which awarded fees for my services at the rate of $276.90 per hour for work I did in 2013.  "Exhibit D" is a true copy of that decision.

28.  As required by 28 U.S.C. § 1924 and the District of Idaho Local Civil Rules, I make this Certificate of Counsel, that such items identified in this declaration and its exhibits as attorney fees and costs are correct and were actually and necessarily performed and incurred in this action.

29.  "Exhibit E" to this declaration is a copy of the minutes of the January 27, 2014, meeting of the State Affairs Committee of the Idaho House of Representatives, downloaded from the official website of the Idaho Legislature.

30.  "Exhibit F" to this declaration is a copy of the minutes of the January 17, 2014, meeting of the State Affairs Committee of the Idaho Senate, downloaded from the official website of the Idaho Legislature.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED ON this 15th day of July, 2014.

/s/ Richard Alan Eppink

DECLARATION OF RICHARD EPPINK – Page 10

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 15th day of July, 2014, I caused the foregoing to be personally delivered, and transmitted by electronic mail the foregoing as well, to:

Clay Smith          clay.smith@ag.idaho.gov
Carl J. Withroe     carl.withroe@ag.idaho.gov
Michael S. Gilmore  mike.gilmore@ag.idaho.gov
OFFICE OF THE ATTORNEY GENERAL OF IDAHO
954 W. Jefferson St.
Boise, Idaho  83702
*Attorneys for Defendants*

Tom Perry          tom.perry@gov.idaho.gov
OFFICE OF THE GOVERNOR OF IDAHO
Idaho State Capitol Building
700 W. Jefferson St.
Boise, Idaho
*Attorney for Defendant C.L. "Butch" Otter*

DATED this 15th day of July, 2014.

/s/ Richard Alan Eppink

*Watters v. Otter*
**ACLU of Idaho Foundation Costs**

| Date | Description | Total |
|------|-------------|-------|
| 2/17/2012 | Filing fee | $350.00 |
| 9/25/2012 | Deposition of Ric Johnston | $795.70 |
| 9/26/2012 | Deposition of April Rice | $554.65 |
| 11/9/2012 | Deposition of Stephen Richardson | $484.15 |
| 11/14/2012 | Deposition of Michael Garcia | $177.25 |
|  | **TOTAL EXPENSES:** | **$2,361.71** |

**From:**      Bryan K. Walker
**To:**        Ritchie Eppink
**Subject:**   FW: Pay.Gov Payment Confirmation
**Date:**      Friday, July 11, 2014 5:35:38 PM

-----Original Message-----
From: paygovadmin@mail.doc.twai.gov [mailto:paygovadmin@mail.doc.twai.gov]
Sent: Friday, February 17, 2012 5:12 PM
To: walkeresq.bk@gmail.com
Subject: Pay.Gov Payment Confirmation

THIS IS AN AUTOMATED MESSAGE.  PLEASE DO NOT REPLY.


Transaction Summary

Application Name: IDD CM ECF
Pay.gov Tracking ID: 255PUBFB
Agency Tracking ID: 0976-849815
Transaction Type: Sale
Transaction Date: Feb 17, 2012 7:12:15 PM

Account Holder Name: Bryan Walker
Transaction Amount: $350.00
Billing Address: P.O.Box 4691
City: Boise
State/Province: ID
Zip/Postal Code: 83711
Country: USA
Card Type: Visa
Card Number: ***********8514



# Court Reporting, LLC

**QnA Court Reporting, LLC**
Tax ID No. 20-4965730  .  DUNS No. 614501620
776 East Riverside Drive, Suite 200  .  Eagle, Idaho 83616
Phone:  208.484.6309  .  Fax:  208.286.7426
realtimeQnA@msn.com  .  www.QnAcourtreporting.com



## INVOICE NO. LP-12-0224
Owner:  Lori A. Pulsifer, CSR, CCR, RDR, CRR, CLR
Idaho CSR No. 354  .  Washington CCR No. 3221  .  Utah Certified Court Reporter 7609959-7801

MR. RICHARD ALAN EPPINK
ATTORNEY AT LAW
AMERICAN CIVIL LIBERTIES UNION OF IDAHO FOUNDATION
POST OFFICE BOX 1897
BOISE, IDAHO 83702-1897                                   Invoice date:  October 11, 2012

| DATE | CASE INFORMATION | CHARGES |
|---|---|---|
| | **EDWARD WATTERS, ET AL. VS. C.L. "BUTCH" OTTER, ET AL., U.S. DISTRICT COURT CASE NO. 1:12-CV-00076-BLW** | |
| 09.25.12 | *DEPOSITION OF RIC JOHNSTON* | |
| | *Court Reporter:  Lori A. Pulsifer, CSR, CCR, RDR, CRR* | |
| | REPORTER'S APPEARANCE FEE, 6.0 HOURS, $25 PER HOUR | WAIVED |
| | REPORTER'S SERVICES RE: TRANSCRIPT PREPARATION, DEPOSITION OF RIC JOHNSTON, SIGNATURE REQUESTED, ORIGINAL + ONE COPY + ETRANSCRIPT + PDF, 218 PAGES, $3.65 PER PAGE | $795.70 |
| 09.2612 | *DEPOSITION OF APRIL RICE* | |
| | *Court Reporter:  Lori A. Pulsifer, CSR, CCR, RDR, CRR* | |
| | REPORTER'S APPEARANCE FEE, 4.0 HOURS, $25 PER HOUR | WAIVED |
| | REPORTER'S SERVICES RE: TRANSCRIPT PREPARATION, DEPOSITION OF RIC JOHNSTON, SIGNATURE REQUESTED, ORIGINAL + ONE COPY + ETRANSCRIPT + PDF, 119 PAGES, $3.65 PER PAGE | $434.35 |
| | EXHIBITS, 401 TOTAL PAGES, SCANNED, COPIED, INDEXED, BOUND, AND DELIVERED ON CD, .30 PER PAGE | $120.30 |

**BALANCE DUE:**                                                   $1,350.35
*TERMS: NET 30 DAYS FROM INVOICE DATE.*
*A SERVICE CHARGE OF 1 ½ % PER MONTH*
*WILL BE APPLIED TO ALL PAST-DUE BALANCES.*
*Please make your check payable to QnA Court Reporting, LLC.*

program: legal (legal)



# Court Reporting, LLC

QnA Court Reporting, LLC
Tax ID No. 20-4965730 . DUNS No. 614501620
776 East Riverside Drive, Suite 200 . Eagle, Idaho 83616
Phone: 208.484.6309 . Fax: 208.286.7426
realtimeQnA@msn.com . www.QnAcourtreporting.com

## INVOICE NO. LP-12-0265
Owner: Lori A. Pulsifer, CSR, CCR, RDR, CRR, CLR
Idaho CSR No. 354 . Washington CCR No. 3221 . Utah Certified Court Reporter 7609959-7801

MR. RICHARD ALAN EPPINK
ATTORNEY AT LAW
AMERICAN CIVIL LIBERTIES UNION OF IDAHO FOUNDATION
POST OFFICE BOX 1897
BOISE, IDAHO 83701-1897                          Invoice date: November 26, 2012

| DATE | CASE INFORMATION | CHARGES |
|------|------------------|---------|
| | EDWARD WATTERS, ET AL., VS. C.L. (BUTCH) OTTER, ET AL. U.S. DISTRICT COURT CASE NO. 1:12-cv-00076-BLW | |
| | REPORTER'S APPEARANCE FEE, 4.0 HOURS, $25 PER HOUR | WAIVED |
| 11.09.12 | *DEPOSITION OF STEPHEN T. RICHARDSON* REPORTER'S SERVICES RE: TRANSCRIPT PREPARATION, DEPOSITION OF STEPHEN T. RICHARDSON, SIGNATURE REQUESTED, ORIGINAL + ONE COPY + E-TRANSCRIPT + PDF 125 PAGES, $3.65 PER PAGE | $456.25 |
| | EXHIBITS, COPIED, INDEXED, SCANNED, EMAILED, AND DELIVERED ON CD, 93 PAGES, .30 PER PAGE | $ 27.90 |
| | **BALANCE DUE:** | **$484.15** |

*TERMS: NET 30 DAYS FROM INVOICE DATE.*
*A SERVICE CHARGE OF 1 ½ % PER MONTH*
*WILL BE APPLIED TO ALL PAST-DUE BALANCES.*

Please make your check payable to QnA Court Reporting, LLC.

## *Thank you for choosing QnA Court Reporting, LLC!*



# Court Reporting, LLC

QnA Court Reporting, LLC
Tax ID No. 20-4965730  .  DUNS No. 614501620
776 East Riverside Drive, Suite 200  .  Eagle, Idaho 83616
Phone: 208.484.6309  .  Fax: 208.286.7426
realtimeQnA@msn.com  .  www.QnAcourtreporting.com

## INVOICE NO. LP-12-0267

Owner:  Lori A. Pulsifer, CSR, CCR, RDR, CRR, CLR
Idaho CSR No. 354  .  Washington CCR No. 3221  .  Utah Certified Court Reporter 7609959-7801

MR. RICHARD ALAN EPPINK
ATTORNEY AT LAW
AMERICAN CIVIL LIBERTIES UNION OF IDAHO FOUNDATION
POST OFFICE BOX 1897
BOISE, IDAHO 83701-1897

Invoice date:  November 26, 2012

| DATE | CASE INFORMATION | CHARGES |
|------|------------------|---------|
| | **EDWARD WATTERS, ET AL., VS. C.L. (BUTCH) OTTER, ET AL.**<br>**U.S. DISTRICT COURT CASE NO. 1:12-cv-00076-BLW** | |
| | REPORTER'S APPEARANCE FEE, 1.0 HOUR, $25 PER HOUR | WAIVED |
| 11.14.12 | DEPOSITION OF MICHAEL GARCIA<br>REPORTER'S SERVICES RE: TRANSCRIPT PREPARATION,<br>DEPOSITION OF MICHAEL GARCIA,<br>SIGNATURE REQUESTED,<br>ORIGINAL + ONE COPY + E-TRANSCRIPT + PDF<br>47 PAGES, $3.65 PER PAGE | $171.55 |
| | EXHIBITS, COPIED, INDEXED, SCANNED, EMAILED,<br>AND DELIVERED ON CD, 19 PAGES, .30 PER PAGE | $ 5.70 |
| | **BALANCE DUE:** | $177.25 |

*TERMS: NET 30 DAYS FROM INVOICE DATE.*
*A SERVICE CHARGE OF 1 ½ % PER MONTH*
*WILL BE APPLIED TO ALL PAST-DUE BALANCES.*

*Please make your check payable to QnA Court Reporting, LLC.*

## *Thank you for choosing QnA Court Reporting, LLC!*

**Richard Alan Eppink**
**AMERICAN CIVIL LIBERTIES UNION**
**OF IDAHO FOUNDATION**
Idaho State Bar no. 7503
reppink@acluidaho.org
P.O. Box 1897
Boise, Idaho 83701
(208) 344-9750, ext. 1202
(208) 344-7201 (fax)

*Attorneys for the Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| EDWARD WATTERS *et al.*, | CASE NO.  1:12-cv-00076-BLW |
| Plaintiffs, | |
| vs. | **DECLARATION OF BRYAN K. WALKER IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY FEES AND COSTS** |
| C.L. (BUTCH) OTTER, in his official capacity as the Governor of the State of Idaho, *et al.*, | |
| Defendants. | |

I, Bryan K. Walker, declare under penalty of perjury as follows:

1.  I have been one of the lawyers assisting the plaintiffs in this case since it began and I make this declaration from my own personal knowledge.

2.  I am making this Declaration in support of the Plaintiffs' petition for an award of attorney's fees and costs in this matter.  I have attached to this Declaration, as "Exhibit A," my billing records, detailing my professional time incurred in representing the Plaintiffs herein.  I have carefully reviewed these records and attest that to the best of my knowledge, information, and belief these charges are accurate for the dates claimed, and reflect time that was reasonably spent in litigating this case.

DECLARATION OF BRYAN K. WALKER – Page 1

3.  I was awarded my *Juris Doctorate* from the University of Houston in May, 1994. Following matriculation, I sat for, and passed, the bar examinations for the State of Texas and the State of Idaho, and was duly licensed to practice law in those jurisdictions, November 1994 for Texas (inactive after 1996), and April 1995 for Idaho.  I have also been admitted to practice law in the United States District Court for the District of Idaho.

4.  In the summer of 1994, I returned to my home state of Idaho and began looking for work.  I initially volunteered for the Idaho Volunteer Lawyers Program, and shortly found work clerking for Idaho District Judge Wayne P. Fuller, who I assisted until January 1, 1995, when I began clerking for his elected successor, District Judge Stephen W. Drescher.  On January 1, 1996, I entered the private practice of law as an associate with Roberts & Robinson, in Caldwell, Idaho.  In May, 1996, Ken Roberts retired from the practice of law, and I then entered into partnership with Casey U. Robinson, now the Honorable Casey Robinson, magistrate judge in and for Gooding County.  That partnership continued until February 1998, when Mr. Robinson separated from the firm in connection with new employment in Twin Falls.  I thereafter continued in solo practice until October 2002, when I was recruited as the lead municipal prosecutor for the Nampa law firm, Hamilton, Michaelson & Hilty, LLP (HMH).  Among my duties and responsibilities as prosecutor, I was responsible for:  supervision and training of deputy prosecutors, victim-witness coordinators and administrative staff; media matters.; negotiation of contracts and development of budgets with city officials; development of standardized procedures for prosecutions in distinct municipalities; coordination of and assistance to law enforcement in execution of their functions in accordance with current statutes and case law; development and conduct of block training for Nampa PD and Caldwell PD; drafting, swearing and execution of warrants; charging reviews; motions and hearings; attending

DECLARATION OF BRYAN K. WALKER – Page 2

court and conducting jury/court trials; sentencing; and drafting and arguing appellate matters.  In the Fall of 2003, I was also employed as an adjunct professor for Boise State University's Criminal Justice program, a position I relinquished as my own divorce proceedings began in December of that year.  In 2005, I was certified as a civil case mediator and child custody mediator, and performed numerous mediations.  I continued handling the municipal contracts for the cities of Nampa, Caldwell, Parma, Notus and Middleton until 2005, at which point I transitioned to the civil litigation section of the firm.  In addition, I subsequently separated from HMH on May 1, 2009, when I renewed my solo practice.  I continued practicing as a solo practitioner until March 26, 2014, when I voluntarily resigned my license to practice law.

5.   When I initially entered private practice, I was tasked with duties primarily related to family law, criminal defense and general civil practice.  This focus continued into my early career, but I transitioned into mainly civil litigation as I built my solo practice.  Representative cases in the late '90s and early '00s included real estate litigation, construction defect & fraudulent/non-disclosure litigation, personal injury and wrongful death and other torts, insurance bad faith, and I continued a reduced practice in family law and criminal defense.  I was also appointed, for a brief period, as the interim Owyhee County Prosecuting Attorney, between the tenures of Lois Hart and Edward Yarbrough.  During my tenure with HMH as their lead municipal prosecutor, I handled thousands of infraction and misdemeanor cases annually for the municipalities stated above, as well as a number of felony prosecutions that were conflicted to me by Canyon County.  As criminal defense counsel, both before and after my prosecutorial experiences, I handled many felony and misdemeanor cases, and have achieved high rates of acquittal or dismissal in matters as diverse as burglary, aggravated battery, and substance-related offenses.  I have argued before the Idaho Supreme Court on five (5) occasions, related to appeals

DECLARATION OF BRYAN K. WALKER – Page 3

brought by the opposing party(ies) or my own clients.  My federal court experience has been substantially limited, prior to the instant case, to my representation of creditors in bankruptcy proceedings, and procedural (eg., removal) actions.  In addition to my professional legal work, I have served as the past Sec'y/Treasurer, past Vice-President and past President of the Third Judicial District Bar, I am a former member of the Idaho Trial Lawyers Association, and I was the 2006 recipient of the ISB Denise O'Donnell-Day Pro Bono Award for my work as an IVLP volunteer attorney.

6.   In preparing this Declaration, I have reviewed the Declaration of Ritchie Eppink in Support of Plaintiffs' Petition for Fees and Expenses.  In ¶ 17 thereof, Mr. Eppink briefly touches on the difficulty of this litigation, its immediacy and novelty, its duration, the complexity of the issues involved, and the manner in which the Defendants' own litigation strategies and tactics required extraordinary efforts by Plaintiffs' legal counsel to assert their rights to the disclosure of necessary and relevant evidence and documents.  Not only do I concur with Mr. Eppink's characterization of the litigation in these respects, but I would add that the Defendants' intransigence suffused the entirety of this litigation, and that is nowhere more visible than in the many attempts that I made on behalf of Occupy Boise to negotiate alternatives to preserve my clients' demonstration while still allowing the Defendants to conduct lawn maintenance at the vigil site.  (Please reference Dkt 26 and the correspondence submitted as exhibits therewith.)  It was my considered view by this point in the litigation that the Defendants desired to squelch the Occupy Boise demonstration under any circumstances, a view that was ultimately vindicated in this Court's ruling that the Defendants had targeted "political speech for suppression," and in so doing, had violated the First Amendment rights of the Plaintiffs.  (Dkt 140)

7. As Mr. Eppink further indicated in his Declaration (¶ 18), Occupy Boise did not have

DECLARATION OF BRYAN K. WALKER – Page 4

the financial wherewithal to retain legal counsel.  It was due solely to my agreement, and Mr. Eppink's, to undertake the representation on a contingency basis that legal representation was available at all to Occupy Boise and the individually named Plaintiffs.

8.  In my nineteen (19) years as a practicing attorney in Idaho, I have often admired those who undertook to engage the judicial process to protect and further human and civil rights. Those endeavors appeared to me to represent the most pristine of motives, in contrast with so much else I have observed during my time as an officer of the court.  However, I was never in the position, financially or professionally, to take on such work, and certainly to take on such work on a *pro bono* or contingency basis.  I have consulted with very many people over the years who desired to assert their legal rights as against deprivations of their civil rights, and without exception, I have *always* referred those people to other practitioners or entities … until I agreed to represent Occupy Boise.

9.  Similarly to the exposition in ¶ 21 of Mr. Eppink's declaration, but even more so, I worked on this case from a sparse set of resources.  As a solo practitioner, I had no assistants, no secretaries, and no paralegals to whom I could turn.  Everything that was typed, I typed myself.  I handled all phone calls, all e-mails, and all meetings, telephonic or otherwise, myself.  As I have made my practice, I have always discounted a substantial amount of my time out of a calculation that, had I the staff to prepare my legal pleadings and letters, the work would have been generated more rapidly.  Therefore, I actually spend substantially more time than staffed offices in generating the work, but I reduce my time accordingly.

10.  The Court will find, in reviewing my time records, that my billings for matters essentially disappeared between November 19, 2012 and February 26, 2013.  During this period of time, I received, reviewed and sometimes responded to e-mails, totaling 244 e-mails for that

DECLARATION OF BRYAN K. WALKER – Page 5

time period, for which I billed nothing whatsoever.  Similarly, I charged for no telephone conferences, no physical meetings, and no review, commenting or drafting of documents.  The reason for this was that I was moving toward shutting down my law practice, and during that period, I did not feel that my contributions to the prosecution of the case were sufficient to warrant charges on my clients' account.

11.   The Court will further note that there are a great deal of billing entries for which I charged no time.  In addition, there are certain categories of activity for which the Court will find little or no charges.  An example of such activity is something Mr. Eppink did charge for from time to time, but which I did not:  Occupy Boise General Assemblies.  Understood properly, a general assembly is the mechanism by which Occupy Boise (and other like consensus-based systems) discuss, debate and arrive at critical decisions affecting the community as a whole.  It is through the general assembly process that Mr. Eppink and I had to direct our legal advice and guidance, and to obtain client authorization for any actions relating to the goals and objectives of the litigation.  The procedure for this was that Mr. Eppink and I would determine that client input was required or desirable; we would formulate a summary proposal, or alternative proposals; we would then submit the proposal(s) to the GA Planning Group, who would then schedule the proposal on an agenda for the general assembly to consider; we would then attend the general assembly (usually on Tuesday or Thursday evenings) and present and explain the proposal, and answer questions raised.  Because such decisions required a quorum, I (usually) or Mr. Eppink (occasionally) would contact numerous key and involved members to disseminate the Legal Working Group's (LWG's) desire for quorum.  Therefore, there was substantial time and effort expended in properly informing, consulting with and obtaining authorization from our organizational client, and it is completely proper for Mr. Eppink to bill for his time in that regard.

DECLARATION OF BRYAN K. WALKER – Page 6

12.   In ¶ 25 of his declaration, Mr. Eppink addresses the media and public interest generated by Occupy Boise, not only locally, but statewide, nationwide and internationally.  I would just add that Occupy Boise also gained the attention of the state and national legal profession, as well.  I was interviewed by the ABA Journal, and quoted extensively regarding the instant litigation.  "*Occupy the Courts: The Nationwide Movement Has Left a Mixed Bag of Legal Results*;"  ABA JOURNAL, July 1, 2012, http://www.abajournal.com/magazine/article/occupy_the_courts_the_nationwide_movement_has_left_a_mixed_bag_of_legal_res/   Notably, one point I had communicated to the writer when interviewed was edited out of the article.  I told Mr. Hudson, "Certain common threads can be drawn from these disparate cases in the sense that they are addressing the parameters of protected political expression and assembly.  Unfortunately, as important as that work is, it does not get at the central message of the Occupy movement, which is the undue influence of corporate and financial interests upon the formation of public policy.  So far, the attorneys – including those of us with the National Lawyers Guild – have been fighting to simply preserve the rights of the Occupy movement to make their central message heard."  It is an unfortunate reality that the grievances that informed and motivated Occupy Boise's assembly are almost never going to be addressed in the judiciary.  Indeed, all the State need do to quash dissent is to – as was the case here – attack the ability of the aggrieved citizenry to voice their grievances at all.  Thus, Occupy Boise winds up fighting for the *right* to speak and examining the aesthetic priority of grass, and the core message they sought to express is subsumed in that struggle, their central points diluted, diffused, and ultimately ignored by the political elite.  It is in this way that the State, despite losing this lawsuit for their First Amendment violations, has prevailed in its central goal of suppressing dissent.  And that realization has been the most difficult aspect of this case.

DECLARATION OF BRYAN K. WALKER – Page 7

13. As to the remainder of Mr. Eppink's declaration, I would concur fully with his sworn statements therein, to the extent that they are coextensive with matters I am personally concerned with.

14. As to costs incurred in this action, it is my understanding that Mr. Eppink has disclosed deposition costs with his declaration. Those costs were paid out of funds held in my IOLTA trust account, and if further information is needed, I can provide that. Beyond that, Occupy Boise incurred the following additional costs;

(a) $30.00, paid with check # 94 on April 16, 2012, to the United States District Court, for a CD audio of the hearing held before the Court on 2/24/2012. Obtaining this audio was necessary because the Defendants' attorney's representations and statements during this oral argument became significant during the case to issues involving the State's need to maintain the Capitol Mall grounds and to whether the Defendants had ever committed themselves to a binding position on enforcement of the camping statute. This amount, paid before the ACLU of Idaho became involved with the case, was paid using funds Occupy Boise raised through donations.

(b) $20.00, paid with check # 96 on 5/14/2012, as a witness fee to Mike Dooley in connection with a subpoena for his anticipated deposition testimony. This fee was incurred because the Defendants named Mr. Dooley, a member of Occupy Boise, as one their witnesses, but would not divulge (despite informal request) what the nature of his anticipated testimony would be. The Defendants actually advised me they wished to depose Mr. Dooley themselves, but then did not take measures to schedule a deposition. I then scheduled a deposition, after which I learned that the Defendant were no longer planning to call Mr. Dooley as a witness. This amount was also paid before the ACLU of Idaho became involved in the case and was paid from funds Occupy Boise raised through donations.

DECLARATION OF BRYAN K. WALKER – Page 8

15.  As I have indicated previously, there were a vast number of activities related to this lawsuit which I did not enter into my billing system, for various reasons, some of which I have stated.       As   to   those   matters   I   entered   into   my   billing   system, I have billed a total of 177.16 hours, of which I have designated 10.9 hours non-chargeable or non-billable, which represents just over 6% of the time I entered.  The net billed amount, therefore, is 166.26 hours, and at $225.00/hour, I am seeking an award of fees to me on the net total amount of $37,408.50.

16.  As required by 28 U.S.C. § 1924 and the District of Idaho Local Civil Rules, I make this Certificate of Counsel, that such items identified in this declaration and its exhibits as attorney fees and costs are correct and were actually and necessarily performed and incurred in this action.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

DATED this 15th day of July, 2014.

/s/ Bryan K. Walker

DECLARATION OF BRYAN K. WALKER – Page 9

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on the 15th day of July, 2014, I caused the foregoing to be personally delivered, and transmitted by electronic mail the foregoing as well, to:

Clay Smith                        clay.smith@ag.idaho.gov
Carl J. Withroe              carl.withroe@ag.idaho.gov
Michael S. Gilmore      mike.gilmore@ag.idaho.gov
OFFICE OF THE ATTORNEY GENERAL OF IDAHO
954 W. Jefferson St.
Boise, Idaho  83702
*Attorneys for Defendants*

Tom Perry                       tom.perry@gov.idaho.gov
OFFICE OF THE GOVERNOR OF IDAHO
Idaho State Capitol Building
700 W. Jefferson St.
Boise, Idaho
*Attorney for Defendant C.L. "Butch" Otter*

DATED this 15th day of July, 2014.

/s/ Richard Alan Eppink

DECLARATION OF BRYAN K. WALKER – Page 10