Richard Alan Eppink
**AMERICAN CIVIL LIBERTIES UNION
OF IDAHO FOUNDATION**
Idaho State Bar no. 7503
reppink@acluidaho.org
P.O. Box 1897
Boise, Idaho  83701
(208) 344-9750, ext. 1202
(208) 344-7201 (fax)

*Attorneys for the Plaintiffs*

**UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO**

| | |
|---|---|
| EDWARD WATTERS *et al.*, | CASE NO.  1:12-cv-00076-BLW |
| Plaintiffs, | |
| vs. | **REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY FEES AND COSTS** |
| C.L. (BUTCH) OTTER, in his official capacity as the Governor of the State of Idaho, *et al.*, | |
| Defendants. | |

The State agrees that the plaintiffs are entitled to a fee award.  It agrees that counsels' hourly rates are reasonable.  It agrees that the amount of time counsel spent on every motion but one was reasonable, too.  Instead, in each of six objections the State stretches the record and the caselaw in an effort to avoid the point of § 1988.  None of the objections are justified.

**I. The Rules Challenges.**

    **A.  The plaintiffs did win on the merits of their challenges to the Rules.**

The plaintiffs filed a partial summary judgment motion asking this Court to hold that some of the rules the State used to restrict Occupy Boise's speech were unconstitutional.  The Court granted the plaintiffs' motion as to all of the most restrictive of those rules.  Solely because of that decision, the State immediately halted enforcement of the invalidated rules. (Dkt. 145-7

RELPY BRIEF IN SUPPORT OF MOTION FOR ATTORNEY FEES AND COSTS – Page 1

and 145-8 (noting defendant Luna's assurance that the State had halted enforcement).) When the Idaho legislature then, as a result, repealed all of those rules, the plaintiffs opposed the State's motion to dismiss the rules challenges as moot, but only to ensure two things: (1) that the invalidated rules would never be resurrected and (2) that the decision holding them unconstitutional would not be vacated. They won on both scores: the Court entered a declaratory judgment expressly intended to prevent revival of the repealed rules (Dkt. 140 at 2 n.1) and held unequivocally that "[t]he Court's prior opinions will not be withdrawn" (Dkt. 140 at 2 n.2). And then, resolving any doubt, the Court entered both a declaratory judgment and a permanent injunction both of which specifically and expressly require the State to comply with the Court's order holding the rules unconstitutional. (Dkt. 140 at 7–8; Dkt. 144 at ¶ 2.)

The very cases that the State cites show why the plaintiffs prevailed. *Buckhannon* itself explains that the ingredients that make a prevailing party are a "material alteration of the legal relationship of the parties" accompanied by some "judicial *imprimatur* on the change." 532 U.S. 598, 604, 605 (2001). The material alteration here is the State's halting enforcement of the rules held unconstitutional. The judicial imprimatur that forced that change was clear:

- the Court's formally entered decision and order holding those rules unconstitutional. (Dkt. 122.)

There is plenty of other judicial imprimatur to choose from, too:

- the Court's declaratory judgment expressly requiring the State to comply with that decision and order (Dkt. 140 at 7–8);

- the Court's permanent injunction expressly requiring the State to comply with that decision and order (Dkt. 144 at ¶ 2);

- the Court's formally delivered decision and order stating that it intends its declaratory judgment to prevent the State from reviving the unconstitutional rules (Dkt. 140 at 2 n.1);

- the Court's final, formal decision that the order holding the rules constitutional will not be withdrawn (Dkt. 140 at 2 n.2).

RELPY BRIEF IN SUPPORT OF MOTION FOR ATTORNEY FEES AND COSTS – Page 2

The case that the State repeatedly cites, *Citizens for Better Forestry v. USDA*, explains that is just these kinds of "[r]elief from the court in some formal fashion," that mean a party has prevailed, so long as it is "at least some relief *on the merits* . . . ." 567 F.3d 1128, 1134, 1131 (9th Cir. 2009) (emphasis added) (quoting, in second quotation, *Buckhannon*, 532 U.S. at 603).  The hangup for the plaintiffs in *Citizens* was that they never got *any* relief on the merits.  The only judicial imprimatur they could point to was a court decision that expressly stated: "We do not reach the merits of Citizens' appeal . . . because the district court did not reach the merits of the motion."  *Id.* at 1130.  Rather, the *Citizens* plaintiffs were held to have standing to challenge an administrative rule, but then their case mooted before any court ever ruled on the challenge itself. *Id.*  That's not what happened here.  Here, Occupy Boise got a decision on the merits, the Court permanently enjoined the State to comply with it, and the Court formally admonished that its judgment is meant to prevent the State from ever reviving those rules again.  All the plaintiffs need is a "judgment or something similar *formally* delivered in its favor to be considered 'prevailing.'" *Citizens*, 567 F.3d at 1131.  Occupy Boise got both a judgment plus "something similar"—a final decision holding the rules unconstitutional, which will never be withdrawn.

### B.  The Rules challenges are not entirely distinct from the other claims.

The State contends that the work that plaintiffs' counsel did on the rules challenges was unrelated to the work they did on the rest of the case, but it ignores the clear Ninth Circuit holdings that work is excluded for being unrelated only if the claims are "*entirely* distinct and separate," "*both* legally *and* factually." *Webb v. Sloan*, 330 F.3d 1158, 1169 (9th Cir. 2003) (emphasis added in first quotation) (internal quotation marks omitted).  Where claims involve either "a common core of facts *or* are based on related legal theories," then work on all claims should be included in a § 1988 fee award.  *Id.* at 1168.  The same judicial imprimatur that shows

the plaintiffs prevailed on the rules challenges also highlights the interrelatedness of those claims to the rest of the case: the Court's declaratory judgment (Dkt. 140 at 7–8) and permanent injunction (Dkt. 144 at ¶ 2) require compliance with the rules decision as integral to relief on the plaintiffs' challenges to the camping ban.  The State, moreover, offers no argument that those two components of this case are not based on both a common core of facts and essentially identical legal theories.  They are.

## II.  The Modification Motion.

The plaintiffs also indisputably won their as-applied challenges against the State.  They got both a preliminary injunction and a permanent injunction on them.  Yet the State asks this Court to exclude the time plaintiffs' counsel spent in between, arguing against a temporary, eight-week modification to the injunction.  The § 1988 caselaw demands a different result.  "[A] plaintiff who is unsuccessful at a stage of litigation that was a necessary step to her ultimate victory is entitled to attorney's fees even for the unsuccessful stage." *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir.1991).

It was necessary for Occupy Boise to oppose the State's modification motion because it was the State's last-ditch effort to suppress the protest completely.  The State falsely claims in its latest brief that "Occupy Boise *rejected* the State's numerous requests to temporarily vacate the property to allow the State to repair and maintain it."  (Dkt. 149 at 4 (emphasis added); *see also id.* at 7.)  Actually, Occupy Boise repeatedly offered to vacate the Capitol Annex and move the protest to a non-grassy site that did not need any groundskeeping.  (Dkt. 26-5[1] and 26-10[2].)  The

---

[1] "[M]y clients *are* willing to explore relocating the protest to accommodate the State's maintenance needs. . . . It is not strictly necessary, given the present camping ban, to locate the demonstration on a grassy area."

State would not accept this offer, and instead made plans to arrest protesters if they tried to move the tent city. (Dkt. 126-12 at 2[3] and 126-11.) It was making these arrest plans at the very same time that it was pursuing its modification motion to force Occupy Boise off of the old Ada County Courthouse grounds. The State used its alleged maintenance needs (which it wildly exaggerated[4]) as part of its persistent suppression of Occupy Boise's political speech. (*See* Dkt. 140 at 1 (finding that the State adopted "rules targeting Occupy"), 5 (finding that "the State did attempt to suppress Occupy's protests" and noting "the State's history of targeting Occupy").) The State did not want to water the grass nearly so much as it wanted to make Occupy Boise go away. Otherwise, there would have been no reason for the Department of Administration and State Police to plan arrests if Occupy Boise moved its protest to a paved plaza.

"Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war," the Ninth Circuit has repeatedly reminded in upholding § 1988 fee awards. *Cabrales*, 935

---

[2] "Occupy Boise will relocate its demonstration to paved/non-grassy areas of the Idaho Statehouse grounds for a continuous period during which the State is conducting grounds repair, maintenance and construction at the Capitol Annex location."

[3] "In the event that tents or other structures get put up at the Capitol or the LBJ this weekend, Security would have the ability to call ISP for enforcement. . . .

. . . . If they refuse to leave, the officer can ticket them, arrest them or physically remove them from the property.

[I]f they set up tents on the grounds indicated, then we have some reasonable action to take with or without the temporary rules."

[4] In its modification motion, the State exaggerated the costs of repair by thousands of dollars and well over 500%. It told this Court that it would take $2,500 to $15,000 to fix the Capitol Annex grounds. The entire work cost only $175 for supplies and $282 for labor, and was a "pretty easy operation." (Dkt. 84-31; Dkt. 84-18 at 38:13–25 and 40:11–41:25.) The State also exaggerated the time it would take to assess the work needed—*by over 33,000%*. It represented to this Court that the assessment alone would take about two weeks. (Dkt. 24-4 at ¶¶ 13, 15.) In fact, the assessment took "[l]ess than an hour." (Dkt. 84-18 at 34:11–35:10.)

RELPY BRIEF IN SUPPORT OF MOTION FOR ATTORNEY FEES AND COSTS – Page 5

F.2d at 1053. Even a plaintiff who unsuccessfully litigated *an entire appeal* against government defendants seeking to modify an injunction was still entitled to fees for all of that work—because the plaintiffs won the injunction in the first place. *Church of the Holy Light of the Queen v. Holder*, ___ Fed. Appx. ___, ___, No. 13-35058, 2014 WL 3809791, at *2 (9th Cir. Aug. 4, 2014). All that mattered for the purposes of a fee award in that case was that the plaintiffs "obtained an injunction prohibiting the government's unconstitutional conduct," *id.*, just as the plaintiffs did here. Twice. Even though the *Church of the Holy Light* plaintiffs lost the appeal and the injunction was modified, their counsels' work on appeal was necessary and the plaintiffs were entitled to a fee award that included that time. *Id.*

The State here is merely trying to "scalpel out attorney's fees for every setback, no matter how temporary, regardless of its relationship to the ultimate disposition of the case." *Cabrales*, 935 F.3d at 1053. As the Ninth Circuit keeps instructing: "This makes little sense." *Id.* The plaintiffs are entitled to fees for the time counsel spent on the modification motion.

### III. Summary Judgment on the Facial Validity of the Camping Ban.

In an exercise of billing judgment, plaintiff's counsel voluntarily deducted from their fee request all of the time they spent responding to the State's partial summary judgment motion about the facial validity of the camping statute. *See Gates v. Deukmejian*, 987 F.2d 1392, 1400 (9th Cir. 1992) (holding that courts need not "make findings as to each of defendants' specific objections to plaintiffs' billing judgment"). For the reasons explained in the first two parts of this brief, that work was related to the rest of the case and so the plaintiffs would be entitled to recover fees for that work even though they lost the motion. Yet, the State wants an even further, involuntary cut of a combined 2.5 hours that counsel spent reading the defendants' motion, reading the Court's decision, informing his clients about it, and then developing

litigation strategy based on the decision. (*See* Dkt. 150; *cf* Dkt. 149-3.) Counsel had to read the motion materials no matter what, for the State's motion could have been about the as-applied challenges or the rules challenges—there was no way for counsel to know until he read it. Likewise, reading the Court's decision, discussing it with the plaintiffs, and planning the rest of the case based on the Court's rationale was more than reasonable, especially considering the plaintiffs' ultimate victories. This is a $495 nitpick that the Court should rebuff.

### IV. "Block Billing."

What the State calls "block billing" is not block billing. As *Welch v. Metropolitan Life Insurance Co.* (the case the State cites) itself explains: "'[b]lock billing' is 'the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" 480 F.3d 942, 945 n.2 (9th Cir. 2007). Had plaintiffs' counsel submitted time records that said "2/17/12 *Watters* – 6 hours" the State might have a colorable objection. Instead, the State unconvincingly claims that it is "impossible to evaluate the reasonableness" of entries like: 3.1 hours to "Review response brief; research and draft reply brief"; or 36 minutes for a series of 11 phone calls, prior to filing a TRO motion, to the Attorney General's office and the Court's law clerk. (*See* Dkt. 149-4.) The Supreme Court made clear in *Hensley v. Eckerhart* that counsel "is not required to record in great detail how each minute of his time was expended." 461 U.S. 424, 437 n.12 (1983). All counsel must do is "identify the general subject matter of his time expenditures." *Id.* Plaintiffs' counsel has done that in every entry here, and all of these entries are sufficiently detailed that this Court can determine the reasonableness of the charges. *See Hounshel v. Battelle Energy Alliance, LLC*, No. 4:11-cv-00635-BLW, 2014 WL 4182680, at *4 (D. Idaho Aug. 21, 2014).

## V. Two Attorneys against Two Attorneys.

The State quibbles about five hours of time over more than two years of litigation that plaintiffs' co-counsel spent conferring with each other. (*See* Dkt. 149-5 (1/28/12, 2/24/12, 9/14/12, 4/24/13, and 4/28/13 entries).) The State also argues that plaintiffs' counsel should have only had one attorney work on the depositions, mediation, and hearings in this case, even though the State usually had *at least* two lawyers covering them. (*See* Dkt. 16 (three lawyers appearing for the State); Dkt. 52 (three); Dkt. 104 (two); Dkt. 141 (two); 2d Decl. Eppink (in support of fee petition) ¶ 3 and ex. B); *see also Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004) ("[A] lawyer who has worked on a case and will be working on it subsequently may need to observe argument to judge how to proceed later.") Either the State was "wasting the taxpayers' money" or it was reasonable for the plaintiffs' lawyers to help each other with depositions and hearings, just as the State's lawyers did. *Reed*, 388 F.3d at 1287.

The State even asks this Court to deduct the time each lawyer spent preparing for and attending the depositions that he himself took! (Dkt. 149-5; 2d Decl. Eppink (in support of fee petition) ¶ 2.[5]) The State also complains about one single hour that Bryan Walker spent interviewing a witness that the State said it was going to call at the preliminary injunction hearing. (Dkt. 149-5 (5/14/12 entry); Dkt. 40; *cf.* Dkt. 145-9 at ¶ 14(b).) The State also fails to mention the considerable amount of time (totaling over 120 hours and $22,000, and including entries for co-counsel communications) that the plaintiffs voluntarily deducted from their fee request. Two lawyers spending just four hours reviewing the State's document production

---

[5] Eppink took the Johnston, Richardson, and Garcia depositions. Walker took the Rice deposition. The State sent two lawyers to cover all except the Richardson deposition. (2d Decl. Eppink (in support of fee petition) ex. B.)

together (Dkt. 149-5 (5/30/12 entries)), helping each other with depositions, and infrequently conferring together is hardly unreasonable, duplicative, or unnecessary in case like this one.

### VI. Work on the Fee Petition.

Without identifying a single task that counsel shouldn't have done or should have spent less time on, the State tries to argue that "far more time was spent than necessary" on the plaintiffs' fee petition. (Dkt. 149 at 14.) It is the State's rebuttal burden to "provid[e] specific evidence that plaintiffs' hours were duplicative or inefficient" and the State has offered nothing at all. *Gates v. Gomez*, 60 F.3d 525, 535–536 (9th Cir. 1995). Thus this Court should "defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno v. City of Sacramento*, 534 F. 3d 1106, 1112 (9th Cir. 2008).

The fee petition here is a far cry from the one the State tries to compare it to in *Welch*. There, the court deducted time (in a case that settled in just six months) "because the motion's language was 'boilerplate'" and "much of the language in Welch's motion for fees was recycled from submissions to other courts." 480 F.3d 942, 944–945, 950. The fee petition here was not boilerplate and it wasn't a cut-and-paste job. Counsel endeavors in every filing to offer custom work that is as concise and helpful to this Court as possible, tailored specifically to the facts and legal issues involved. The fee motion and briefs in this case are no exception, and that takes time. The State's counsel must know this, too, as they needed an additional week to prepare their opposition. (Dkt. 147 and 148.) This is not to mention that the State tries to sneak into this deduction request time that counsel spent on things like submitting the proposed judgment (Dkt. 149-6, 6/27/14 entry) and notifying his clients of the permanent injunction (*id.*, 7/1/14 entry). The Court should reject these unjustified deductions.

**VII.   Additional Work that the State's Opposition Made Necessary.**

The State acknowledges, as the Ninth Circuit "has repeatedly held," that the plaintiffs are entitled to a fee award for the time spent seeking that award. *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992), *vacated in other part*, 98 F.2d 345 (9th Cir. 1993). The plaintiffs are likewise entitled to fees for the reply work done in support of a fee petition. *See Belcher v. Comm'r of Social Security*, 522 Fed. Appx. 401, 402 (9th Cir. 2013); *Vick v. Astrue*, No. 1:10-cv-00562, 2012 WL 4435290, at *2, *3 (D. Idaho Sept. 24, 2012). As set out in the accompanying declaration, Richard Eppink spent 14.2 hours preparing this reply brief and the accompanying declaration. Computed at the uncontested rate of $275 per hour for Mr. Eppink's work, that increases the requested fee award by $3,905 to a total of $179,803.50.

## CONCLUSION

The plaintiffs here "succeeded on the most significant issue of the litigation—they proved that their civil rights had been violated," both as to the camping ban and the administrative rules. *Rivera v. City of Riverside*, 763 F.2d 1580, 1582 (9th Cir. 1985). In a case like this one, the benefit to the named plaintiffs also "must be considered along with the benefits [conferred] on others throughout society by winning a civil rights claim." *Morales v. City of San Rafael*, 96 F.3d 359, 365 n.12 (9th Cir. 1996) (internal quotation marks omitted).

The Court should award the plaintiffs **$179,803.50 in fees** and **$2,411.75 in costs**.

Respectfully submitted this 29th day of August, 2014.

        AMERICAN CIVIL LIBERTIES UNION
         OF IDAHO FOUNDATION

        /s/ Richard Alan Eppink

        Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on the 29th day of August, 2014, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

  Clay Smith   clay.smith@ag.idaho.gov
  Carl J. Withroe  carl.withroe@ag.idaho.gov
  Michael S. Gilmore mike.gilmore@ag.idaho.gov
  OFFICE OF THE ATTORNEY GENERAL OF IDAHO

  Thomas C. Perry  tom.perry@gov.idaho.gov
  OFFICE OF THE GOVERNOR OF IDAHO
  *Attorneys for Defendants*

  Bryan K. Walker  walkeresq.bk@gmail.com
  OBSIDIAN LAW, PLLC
  *Attorney for Plaintiffs*

  DATED this 29th day of August, 2014.

              /s/ Richard Alan Eppink