DocuSign Envelope ID: DF960553-3AB6-4764-838E-62BB2D029141

Casey Parsons (ISB no. 11323)
Richard Eppink (ISB no. 7503)
David A. DeRoin (ISB no. 10404)
WREST COLLECTIVE
812 W. Franklin St.
Boise, ID 83702
Tel: (208) 742-6789
ritchie@wrest.coop
casey@wrest.coop
david@wrest.coop

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **EDWARD WATTERS, DEAN GUNDERSON, STEVEN FARNWORTH, MATTHEW ALEXANDER NEWIRTH**, individuals, and **OCCUPY BOISE**, an Idaho unincorporated non-profit,<br><br>*Plaintiffs*,<br><br>v.<br><br>**BRADLEY JAY LITTLE**, in his official capacity as the Governor of the State of Idaho, **STEVEN BAILEY**, in his official capacity as the Director of the Idaho Department of Administration, and **COL. KEDRICK R. WILLS**, in his official capacity as the Director of the Idaho State Police,<br><br>*Defendants*.[1] | Case No. 1:12-cv-0076-REB<br><br>**DECLARATION OF HANNAH TUCKER IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER, PRELMINARY INJUNCTION, FURTHER RELIEF, ORDER TO SHOW CAUSE, AND CONTEMPT** |

---

[1] Defendants in this action automatically substituted pursuant to F.R.C.P. 25(d).

DECLARATION OF HANNAH TUCKER – Page 1

1. I am involved with the Peoples' University, which has been organized on an ongoing basis at the site of the Capitol Annex in Boise, Idaho since May 3, 2024.

2. Before we established the Peoples' University on the grounds of the Capitol Annex, I and other people in our group have attempted to reach legislatures to communicate our message. We have demanded in-person meetings, have organized letter and postcard campaigns, have conducted shorter demonstrations in the form of marches and rallies, and organized phone banking to try and reach policymakers. None of those efforts have been successful and we have received no response from policymakers to date.

3. The Peoples' University established following a rally and march on May 3, 2024, from the Anne Frank Memorial through the streets of downtown Boise and established that evening on the grounds of the Capitol Annex. The primary motive of the group is to raise awareness about the ongoing destabilization and displacement faced by the people of Palestine as a result of military intervention, and to demand that the Idaho Legislature name and acknowledge that the ongoing violence is a genocide being perpetuated with funds and support from the United States of America.

4. On May 3, 2024, we erected tents on the site of the Capitol Annex for the purpose of making symbolically visible the violence, displacement, and houselessness faced by the people of Palestine. Those tents are crucial to our demonstration and the core-message of our group because they are intended to make visible the situation faced by the people of Palestine, where thousands of families have been

DECLARATION OF HANNAH TUCKER - Page 2

DocuSign Envelope ID: DF960553-3AB6-4764-838F-62BB2D029141

forced to relocate to tent cities because their homes have been destroyed by the violence there.

5. Since May 3, 2024, we have done our best to maintain a 24-hour, 7-day a week vigil in solidarity with the people of Palestine and to highlight to individuals and policymakers in Boise, Idaho the ongoing consequences of the genocide. Maintaining a constant, overnight vigil is also crucial to our message because the people of Palestine are unable to take down their tents and go home to sleep for the night: they are forced to live in those conditions constantly. If we are unable to maintain our vigil and are required to take down our tents and go home for the night, then we would not be able to effectively communicate and make visible the ongoing nature of the violence in Palestine.

6. We understand that, during our 24-hour vigil, individuals are not allowed to sleep at the site of the Capitol Annex or on State grounds. We have had several conversations as a group about the importance of not sleeping on the grounds, and to my knowledge nobody involved with the vigil has slept on the grounds of the Capitol Annex or Capitol Mall at all. In order to comply with the applicable Idaho Law, we have maintained a rotating shift of individuals to continuously staff the demonstration in 4-to-8-hour shifts. No individual associated with the vigil has been able to remain on site for its entire duration because we need to go home to sleep in order to comply with Idaho law.

7. In addition to symbolic purposes, the presence of tents and other temporary structures have been important to our right to assembly. We have used common

DECLARATION OF HANNAH TUCKER - Page 3

spaces under temporary structures to engage in continuing education about Palestine and the violence occurring there. On nights that it has rained, we would have been unable to continue our 24-hour vigil without a space to assemble out of the elements.

8. When we established the vigil site on May 3, 2024, approximately 30 law enforcement officers with the Boise Police Department and Idaho State Police were present at the site of the Capitol Annex. Boise Police Department officers instructed us that we must vacate the grounds of the Capitol Annex before dark on the basis that we were in a "city park," and that it is illegal to be in a city park after dark. It is my understanding that the grounds of the Capitol Annex are not a city park.

9. The next morning, on Saturday, May 4, 2024, I was present when Idaho State Police department officers returned to the site of the vigil and seized all of the tents that were present there, in addition to a bucket of water bottles and sanitary products such as tampons necessary to sustain the protest. I did not witness anybody sleeping on the site on May 3, 2024, and I do not believe that anybody did because we discussed the importance of not sleeping there.

10. On the evening of Tuesday, May 7, 2024, to comply with the request of the Idaho State Police to allow for maintenance of the grass at the Capitol Annex, we relocated our vigil to the west side of the apron of the steps of the Idaho State Capitol. In doing so, we took care to ensure that the tents themselves were flush with the west pillar to leave ample space for the pedestrian walkway on the west

DECLARATION OF HANNAH TUCKER - Page 4

    side of the steps. We also took care to ensure that the majority of the access to the steps themselves would remain accessible so that individuals would be readily able to enter or exit the building. Idaho State Police arrived on the scene and threatened to issue citations, stating that it was illegal to erect temporary structures in that location. No citations were issued.

11. At approximately 6:30 PM on Wednesday, May 8, 2024, we moved the site of the vigil to the east side of the apron of the Idaho State Capitol to allow maintenance of the grass of the Capitol Annex. As we were in the process of moving, we were greeted by approximately 30 Idaho State Police officers who informed us that we would not be permitted to erect temporary structures on the apron because they would block entrances and exits to the building. Again, we took careful steps to ensure that our symbolic and assembly tents were set up in such a way to permit ample space to enter and exit the building. We ensured that the tents were flush with the west side of the pillar marking the end of the steps used to exit the building. We were in the process of consolidating the materials used in the protest to ensure ample access to the pedestrian walkway to the east of the steps when Idaho State Police ordered us to step away and seized all of the property on the steps. That, of course, included the symbolic assembly tents themselves, but also included food, water, education materials, signs, and numerous other items. Idaho State Police did not, and still has not, provided us with an inventory list of the items they seized.

DECLARATION OF HANNAH TUCKER – Page 5

12. In the course of the enforcement action on May 8, 2024, I was standing on the outskirts of the vigil while Idaho State Police violently seized the items there, and held up my phone with video of what was happening in Palestine. While standing on the apron and out of the vicinity of the sweep, an Idaho State Police officer shoved me down the stairs.

13. We later moved our vigil back to the grass of the Capitol Annex because we could no longer comprehend where Idaho State Police would permit us to continue our 24-hour vigil using symbolic assembly tents or what guidelines that they wanted us to follow.

14. On Thursday, May 9, 2024, I was again present at approximately 11:30 PM when Idaho State Police and Boise Police Department officers returned to the site of the vigil at the grass of the Capitol Annex. While we were assembled on the grass, approximately a dozen police cars drove east down Jefferson street and stopped near the vigil. Approximately 30 to 40 law enforcement immediately stormed the grass, ordering everyone to get off of it, and again seized all of the property on the grass, including the symbolic assembly tents, signs, water, food, sanitary products, and other items necessary to sustain the 24-hour vigil. We tried to relocate the site of the vigil to the concrete memorial located in the center of the grass of the Capitol Annex, but were again informed that we would not be permitted continue our vigil using symbolic and assembly tents there, either. Law enforcement again did not provide us with an inventory list of the items seized, and still has not.

DECLARATION OF HANNAH TUCKER - Page 6

15. On Friday, May 10, 2024, we again set up our vigil on the grass of the Capitol Annex, having received no instruction from Idaho State Police regarding a place where we would be able to continue our vigil utilizing symbolic and assembly tents overnight. Again, at approximately 11:00 PM, law enforcement returned to the site, ordered everybody to get off the grass, and again seized all of the items on the grass, and again did not and still have not provided us with an inventory list of the items seized.

16. In the course of the enforcement action on May 10, 2024, I was walking to the sidewalk after Idaho State Police ordered us to get off the grass. I stopped briefly to pick up a painting that a friend of mine had produced to ensure that it was not taken or damaged. In the course of doing that, Idaho State Police approached and arrested me. They took me into the Capitol Annex building briefly before transporting me to the Ada County Jail. I informed the officers that I was invoking my right to remain silent and would not answer any questions.

17. At the Ada County Jail, law enforcement began to inventory my bag. The officer who drove me into the station asked me if my legal identification was in my bag, as he was already digging through it. I was silent for a moment, thinking my ID had been easily found in the main pocket. However, after this officer had supposedly not found it, I was brought into a holding cell by that officer along with 2 other jail staff. The three of them held me against a wall and told me that I would remain in this particular holding cell until I divulged information about my ID. I then promptly told them exactly where in my bag my ID was. At this point,

DECLARATION OF HANNAH TUCKER - Page 7

the jail staff proceeded to forcefully remove my shirt, socks and piercings from my face and ears. This was upsetting to me and the femme presenting guard then reminded me, "this is jail." She told me that I was not complying with the booking process and that I would remain in the holding cell until I was ready to give them the information that they needed. After about an hour of waiting in the holding cell, and despite explicitly communicating that I was ready to comply with said booking procedure, I was left to sit in that cell for an additional 1.5–2hrs having been told by another femme presenting staff member that "things have gotten too busy" for staff to proceed with my booking. At least once during this entire process, from arrest to booking, I believe I asked to speak to my attorney which I was not permitted to do. Eventually, I was brought out of the holding cell, booked, and finally allowed to make my phone calls. I was then able to quickly post bail and it was in that waiting period, between my bail being posted and being able to leave, that I finally received information from the jail staff that my attorney had tried to reach me.

18. I will testify in person and under oath about these facts before this Court if I am called as a witness.

Pursuant to 28 USC § 1746, I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED: 5/13/2024 .

DECLARATION OF HANNAH TUCKER – Page 8

*DocuSigned by:*
*Hannah Tucker*
D1FFE656F17143A...

Hannah Tucker

WREST COLLECTIVE

DATED: May 14, 2024

By: /s/ Casey Parsons
Casey Parsons
Attorneys for Plaintiff Matthew Alexander Newirth

DECLARATION OF HANNAH TUCKER – Page 9