RAÚL R. LABRADOR
ATTORNEY GENERAL

JOSHUA N. TURNER, ISB #12193
Chief of Constitutional Litigation
and Policy

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
josh.turner@ag.idaho.gov
james.craig@ag.idaho.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EDWARD WATTERS, et al.<br><br>*Plaintiffs,*<br><br>v.<br><br>BRADLEY JAY LITTLE, et al.,<br><br>*Defendants.* | Case No. 1:12-cv-0076-BLW<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND FURTHER RELIEF AND OPPOSITION TO PLAINTIFF'S OTHER MOTIONS** |

## INTRODUCTION

Over a decade ago, Plaintiff Matthew Alexander Neiwirth was part of the "Occupy Boise" protest on the Capitol Annex grounds. That protest involved a round-the-clock "tent city"—expressive conduct that the Court held was subject to reasonable time, place, and manner restrictions, such as periodic watering and lawn maintenance. The Occupy

Boise protest eventually faded, and this case was closed and dormant for years. That is, until Mr. Neiwirth and his counsel tried to enforce it as to different parties, unrelated enforcement actions, and a new protest.

But that is not how federal courts or the First Amendment operate. This Court's injunction was specific to the Occupy Boise protest; it depended on facts applicable to Mr. Neiwirth's political message in *that* protest; and it applied to the State's particular enforcement actions against the named Plaintiffs in *this* case. Cases are not empty vessels for holdover plaintiffs to repurpose at will with new facts, new claims, and new relief. That is particularly true in the First Amendment context, where the analysis is necessarily fact specific. Mr. Neiwirth cannot short-circuit the adjudicative process by dusting off an inapplicable injunction.

Aside from Mr. Neiwirth's defective—and inappropriate—motion practice, the State has not violated his First Amendment rights in the slightest. Of the approximately ten (or fewer) total hours that Mr. Neiwirth has been at the Capitol Annex or nearby Capitol grounds between May 4 and May 12, no one has prevented him from communicating whatever his message is. The State has taken no action against Mr. Neiwirth. And the laws and regulations the State has enforced are the very laws and regulations this Court upheld as constitutional time, place, and manner restrictions, and it has enforced those restrictions in a content-neutral way.

Accordingly, and as explained below more fully, the Court should deny Plaintiff's motions and decline his request to refashion the injunction to apply to what is plainly a new case.

**BACKGROUND**

Back when the country was still reeling from the Great Recession—in the days people walked around with iPods and Gangnam Style was overtaking the internet—a movement that became known as "Occupy Wall Street" took form. That movement spawned a number of local variants, including an "Occupy Boise" protest that began in February 2012. The "Occupy" protests often involved "tent cities" to symbolize income inequality, a feature that was also adopted by the Occupy Boise protest. The problem came when the Idaho legislature passed anti-camping laws, Idaho Code §§ 67-1613, -1613A, seemingly in response to the Occupy Boise protest, and the Governor directed enforcement of those laws against the protest in a way that appeared to discriminate on the basis of content. Even though the laws only prohibited camping and did not regulate the use of tents to communicate a political message (like a "tent city" vigil that involved no actual camping), the State initially threatened to remove and confiscate any tents used in the Occupy Boise protest. That action triggered Plaintiffs' filing of this lawsuit and their request for an injunction against enforcement of Idaho Code §§ 67-1613, -1613A.

The litigation developed a thorough factual record and progressed to summary judgment a year later. Dkt. #140. Based on that record, the Court held that the individually named Plaintiffs in this case, who were all participants in the Occupy Boise protest, and the Occupy Boise unincorporated entity were engaged in expressive conduct under the First Amendment. Dkt. #115 at 2, Dkt. #122 at 2. But the Court also held that Idaho Code §§ 67-1613 and 67-1613A were facially constitutional and that many of the State's time, place, and manner regulations were constitutional restrictions on Plaintiffs'

First Amendment activity. Dkt. #144. Specifically, the Court upheld the constitutionality of the chalking, staking, and grounds maintenance regulations. *Id.*; Dkt. #122 at 10-16. The result was that Plaintiffs could continue to protest on the Capitol Annex grounds, but they had to comply with the valid time, place, and manner regulations, even if that meant Plaintiffs had to temporarily remove or relocate their tent city. Dkt. #122 at 38-39. The Court's ruling was reduced to a permanent injunction on July 1, 2014, and the case was dismissed and closed. Dkt. #144.

The pending motions[1] before the Court were brought by Mr. Neiwirth—the only remaining Plaintiff from this case. Occupy Boise appears to have dissolved as a legal entity. Edward Watters is deceased, Dean Gunderson moved out of state, and Steven Farnsworth was in poor health back in 2012 and, even then, had only limited involvement with the Occupy Boise protest. Neiwirth Dep.9:20-11:6. Regardless of their status, none have brought the present motions, and Mr. Neiwirth has no ongoing relationship with them. Neiwirth Dep.9:20-13:8.

In 2012, Mr. Neiwirth took part in the Occupy Boise protest, but he has long since had no further involvement with the protest. Neiwirth Dep.11:7-12:20. And that protest

---

[1] The Court's notice of hearing references Dkt. #161 "First Ex Parte Motion for Temporary Restraining Order." Dkt. #165 (cleaned up). The State has not been provided file-stamped copies of documents filed at Dkt. #161. The State was provided unstamped copies of (1) a Motion for Temporary Restraining Order, Preliminary Injunction, and Further Relief; (2) a memorandum in support; (3) a declaration of Matthew Newirth (sic); (4) a declaration of Eric Gironda; and (5) a declaration of Casey Parsons. The State does not know what other documents exist. Further, the State is unclear why these documents were filed ex parte, and why they do not appear on the docket. *See Courthouse News Serv. v. Planet*, 947 F.3d 581, 589 (9th Cir. 2020) (noting presumptive First Amendment right of access to court documents).

is indisputably not the basis for Mr. Neiwirth's motions. His motions relate to a new protest that he has barely participated in. The new protest is apparently in support of liberating Palestine, which he joined midstream on May 4 after driving by the Capitol grounds and seeing people congregated. Neiwirth Dep.27:19-28:2. At the time, Mr. Neiwirth did not know who organized the protest, what groups were involved, the message of these other protestors, or the symbolic meaning of their tents. Neiwirth Dep.46:1-46:25. He still doesn't know these basic details. Neiwirth Dep.49:7-50:21; Neiwirth Dep.60:6-61:19.

That is unsurprising given Mr. Neiwirth's minimal involvement in the protest. By his own estimates, he has spent no more than ten hours at the protest in seven days. Neiwirth Dep.33:13-45:19. When Mr. Neiwirth joined the protest on May 4, he put up a tent, stayed a few hours, and then took down his tent and went back to his home. Neiwirth Dep.35:18-36:9. He returned a couple hours later to set up a different tent and placed a placard on it that someone else wrote. Neiwirth Dep.36:10-18; Neiwirth Dep.38:10-18. On May 5, Mr. Neiwirth did not go to the protest at all. Neiwirth Dep.39:22-25. On May 6, Mr. Neiwirth says he spent "[m]aybe a half hour, maybe an hour . . . [but] not much longer" at the protest for no other reason than to remove his tent. Neiwirth Dep.40:1-15. On May 7, Mr. Neiwirth again did not go to the protest. On May 8, Mr. Neiwirth returned to the protest to help move a large sign to the Capitol steps and stayed approximately two hours. Neiwirth Dep.43:14-44:20. As of May 9, Mr. Neiwirth has no plans to return to the protest. Neiwirth Dep.61:20-62:9.

One reason he has no plans to return is because he has become "a little burned out on this tactic." Neiwirth Dep.61:20-62:9. And he now believes that there are "other tactics . . . that would be less work" and "the best as far as raising awareness," "getting attention," and remaining "legal." Neiwirth Dep.62:10-63:13. Mr. Neiwirth does not know the plans or goals of any other protestors on the Capitol grounds. Neiwirth Dep.61:20-62:9. But as for his message, it does not appear to involve a 24/7 vigil or uninterrupted use of a tent. His own declaration does not even describe any message communicated by the tents but instead only describes their functional use as a shelter from the weather. Neiwirth Decl. ¶¶ 3, 6, 7; Neiwirth Dep.26:10-14; Neiwirth Dep.27:19-28:22.

Over the weekend of May 4, Mr. Neiwirth's counsel filed a motion for a "Temporary Restraining Order, Preliminary Injunction, and for Further Relief." *See supra* n.1. The title of that motion looks like something that would be filed with a new case, but that is not what Mr. Neiwirth did. He filed a motion that functionally asked the Court to provide fresh relief to new protestors with a new message by enforcing the permanent injunction from over a decade ago. Then, when Mr. Neiwirth was on his way out of town with no plan to return to the protest, his counsel filed another emergency motion—this time at 11:33 p.m. on May 9—and requested a hearing that night or the next day to again enforce the decade's-old injunction, this time obviously as to new protestors alone. The Court declined and stuck with the briefing schedule and hearing set for May 16 to resolve the pending motions.

**ARGUMENT**

I.  **This Case Is Not An Appropriate Vehicle To Provide Relief For Palestinian Protestors, Even Mr. Neiwirth.**

This case has nothing to do with the relief Plaintiff (and Plaintiff's counsel) is really seeking. They want the Court to cut and paste a context- and fact-specific holding and apply it to a new dispute. That is a wholly inappropriate use of this Court's Article III jurisdiction. No matter how applicable Plaintiff believes this case's holding is to the present dispute, the Court needs a new case to resolve the new controversy. One hasn't been filed, so Plaintiff's motions should be denied in full.

The injunction entered in this case was provided to Occupy Boise and a handful of individually named plaintiffs to address a specific injury based on specific facts. A remedy like an injunction must "be limited to the inadequacy that produced the injury in fact that the Plaintiff has established." *Gil v. Whitford*, 585 U.S. 48, 68 (2018). That is why "[i]njunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification." *Meinhold v. US. Dep't of Defense*, 34 F.3d 1469, 1480 (9th Cir. 1994). Here, the injunction provided Plaintiffs—of whom only Mr. Neiwirth remains—the right to demonstrate with a symbolic tent city on the Capitol Annex grounds, provided Plaintiffs complied with the lawful time, place, and manner restrictions. That holding followed a fact-intensive analysis that considered Plaintiffs' particular message, whether that message was protected under the First Amendment, the State's enforcement actions and whether its enforcement was content neutral, and how the time, place, and manner restrictions impacted the Occupy Boise protest. None of that

can be superimposed on the very different situation now at issue. And Plaintiff errs by expecting the Court to rejigger this case to provide a shortcut to new relief.

Mr. Neiwirth's involvement doesn't change this. He comes to the Court with entirely new allegations of a different First Amendment violation. He does not deny that his message has changed and that the enforcement against him, if any, is unrelated to the Occupy Boise protest. He, just like all federal court plaintiffs, must demonstrate a case or controversy sufficient to invoke this Court's Article III jurisdiction. And hijacking precedent that he was involved in establishing is no way to do that.

Indeed, what Plaintiff has effectively asked this Court to do is transform the permanent injunction from this case into a generalized and roving universal injunction. But the Supreme Court just got done making clear that injunctions of that sort are not allowed. *Labrador v. Poe*, 144 S. Ct. 921 (2024). An injunction is fact- and party-specific. *Id*. What Plaintiff seeks cannot be squared with *Poe*.

## II.    Plaintiff's Motions Also Independently Lack Merit.

Mr. Neiwirth is the only Plaintiff remaining in this case and by his own admission the State has not taken any action against him that violates the injunction. Neiwirth Dep.59:10-25. A finding for contempt requires him to establish by clear and convincing evidence that the State violated a court order "beyond substantial compliance, not based on good faith and reasonable interpretation of the order." *In re Dual-Deck Video Cassette Antitrust Lit.*, 10 F.3d 693, 695 (9th Cir 1993). That has not happened here.

As Mr. Neiwirth testified, the State has taken no enforcement action against him at all. He voluntarily removed his tent from the Capitol grounds on several occasions and

has no plans to put up another tent during this protest. Neiwirth Dep.38:10-39:5; Neiwirth Dep.61:20-62:9. Under these facts, Plaintiff cannot establish contempt.

Moreover, the State's enforcement of time, place, and manner restrictions is consistent with this Court's prior holdings. Dkt. #53 at 8 ("To allow Occupy Boise's vigil to continue 24 hours a day, seven days a week without allowing for routine maintenance and repairs would be wholly inimical to the State and public's interest in maintaining the Capitol Mall grounds."). The Court upheld the State's right to access the grounds of State property when conducting regular maintenance and to require removal of the Occupy Boise protest. Dkt. #53 at 10. As the Court explained, "regular maintenance and repair of State property is a substantial government interest." *Id.* Here, the protesters have set up tents on the grass at the Capitol Annex, and the State has required removal of the tents during periods of watering and lawn maintenance consistent with existing IDAPA regulations and this Court's holding in this case. But it has otherwise permitted the use of tents in the protest consistent with Idaho law and administrative rules.

When asked to vacate the property so that the sprinklers can operate properly, consistent with regularly scheduled maintenance, protestors have either refused to leave or will relocate their tents and other property onto sidewalks or stairs that inhibit the ingress and egress of State buildings, which violates IDAPA regulations and creates safety issues. *See, e.g.*, IDAPA 38.04.06.310.04; 38.04.08.311.04. The State's enforcement of the watering, maintenance, and ingress-and-egress regulations are valid time, place, and manner restrictions that apply to any protestor, regardless of message.

Mr. Neiwirth has also confirmed that the tents and canopies are being used for improper and constitutionally unprotected purposes, like cooking, storing personal property, and as a gathering place or shelter from weather. Neiwirth Dep.25:1-27:18. Storing personal property, cooking, and using tents as temporary living accommodations violates Idaho Code § 67-1613, which this Court held is constitutional. Dkt. #115; *see also* Dkt. #53 ("the State's ban on overnight sleeping is proper, as is the ban on personal belongings related to camping, along with cooking and fire building materials."). The same restrictions were also later upheld in *Fitzpatrick v. Little*, 2023 WL 129815, *7-8 (D. Idaho Jan. 9, 2023), by Judge Nye. Judge Nye stated, among other things, that Idaho Code § 67-1613 fulfills the State's significant interest in "maintaining the Capitol grounds in an attractive and safe condition" while also "ensuring the health and safety of its citizens, and providing unobstructed grounds and convenient access to the Capitol Mall area," all while affording the protestors "an abundance of alternative channels to communicate their views." *Id.* at *8. The State's recent enforcement of this statute on the Capitol grounds is necessary to prevent tents from interfering with regularly scheduled watering and maintenance as well as to prevent health and safety concerns posed by camping activities in non-designated spaces. Neiwirth Dep.22:6-13; Neiwirth Dep.25:18-26:9; Neiwirth Dep.27:3-28:2.

These motions should have never been filed in this case because the case is closed and unrelated to the present complaints. But they should also not have been filed because the State has lawfully accommodated Mr. Neiwirth's and the other protestors protected First Amendment activity. Law enforcement has acted with incredible restraint and

patience in the face of hostility and open disregard for the law. There has been no First Amendment violation of anyone's rights, and these motions, along with the repeated demands on the Court's time on an emergency basis, are taking a turn toward the frivolous.

## CONCLUSION

For the above reasons, the Court should deny Plaintiff's Motion for a Temporary Restraining Order, Preliminary Injunction, and Further Relief filed on May 4, 2024, the Motion for Order to Show Cause filed on May 4, 2024, and the Motion for Contempt and For Order to Show Cause filed on May 9, 2024.

DATED: May 14, 2024.

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL

By: /s/ *Joshua N. Turner*
Joshua N. Turner
Chief of Constitutional Litigation
and Policy

**CERTIFICATE OF SERVICE**

  I Hereby Certify that on May 14, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Casey Parsons
casey@wrest.coop

Richard Eppink
ritchie@wrest.coop

David A. DeRoin
david@wrest.coop

            By: /s/ *Joshua N. Turner*
              Joshua N. Turner
              Chief of Constitutional Litigation
              and Policy